RECEIVED

APR 11 2019

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

**"District Court of the United States"**
**District of Alaska**
**Anchorage, Alaska**

"David Gary Gladden"
P.O. Box 877109
Wasilla, Alaska [99687]

| | |
|---|---|
| **David Gary Gladden,** *in propria persona* ) | |
| Plaintiff ) | |
| ) | |
| *Versus* ) | **Case:** 3:19-cv-00099-MMS |
| ) | |
| **CHRISTINA L. REIGH, in her** *personal and* ) | |
| **Presumed Official Capacity** ) | |

## I. Complaint and the Nature of Quo Warranto

Comes now "**David Gary Gladden**" ("**Gladden**"), *in propria persona* with this

Compliant against "**CHRISTINA L. REIGH**" ("**REIGH**") in her personal and

Presumed Official Capacity for proceeding against Gladden after Gladden had given

**REIGH "actual notice"** that she was proceeding with a "clear absence of all

jurisdiction"[1] in the Case: 3DI-18-00002CI in Dillingham, Alaska under the "State Bar

Bylaws, Art. I § 6 Administrative Districts (3)"**Third Judicial District**" instead of the

constitutional Venue of the "**Third District**" as established by the Legislature of the

State of Alaska in 1959; and further, for **REIGH** proceeding against Gladden after

Gladden had given **REIGH "actual notice"** with a "clear absence of all jurisdiction" in

---

[1] *Stump v. Sparkman*, 435 U.S. 349, 349, 356-357 (1978) "Held: . . . (a) A judge will not
be deprived of immunity because the action he took was in error, was done maliciously,
or was in excess of his authority, but rather he will be subject to liability only when he
has acted in the "**clear absence of all jurisdiction**," *Bradley v. Fisher*, 13 Wall. 335, 351,
20 L.Ed. 646. Pp. 1104-1105 (1871),"

Alaska Bar Administrative Court being "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" instead of the constitutional "Superior Court of the State of Alaska" established by the Legislature of the State of Alaska in 1959.

## Table of Contents

I. Complaint and the Nature of Quo Warranto .................................................................... 1

A. Brief Overview. ............................................................................................................. 3

II. Initial Jurisdictional Statement .................................................................................... 5

III. Jurisdictional Definitions ............................................................................................ 5

  A. Public Officer Versus Mere Employees ...................................................................... 6

  B. Means ............................................................................................................................. 8

  C. Unambiguous Statues ................................................................................................ 10

    a. Supreme Court of the United States. ...................................................................... 10

    b. Congressional Intent. .............................................................................................. 12

    c. Federal Rules of Civil Procedure. ........................................................................... 13

    d. 9th Circuit. ................................................................................................................ 14

    e. Federal Circuit. ........................................................................................................ 14

    e. Inquiry Ceases if the Statutory Language is Unambiguous. .................................. 15

  D. Legislative History ..................................................................................................... 17

  E. Reviser's Notes ........................................................................................................... 19

  F. Actual Notice............................................................................................................... 20

  G. Civil Commissions in Alaska for Judges and Justices—A Bona Fide One ............ 24

    a. There are NO "Civil Commissions" in the Judicial Branch (sic) of the STATE OF ALASKA. ...................................................................................................................... 25

  H. Bogus "Appointment Letters" From the Governor for Venessa White and Fred Torrisi ............................................................................................................................... 25

I. Oaths of Office as Public Officers of the State of Alaska .......................................... 26

  a. Definition of "Office" According to the Common Law of England of Giles Jacobs Corrected by T.E. Tomlins in 1811. .......................................................................... 26

  b. Oath of Office for all Public Officers of the of the several States. ....................... 27

  c. Bogus "Oaths" of the Judges and Justices in Alaska. ............................................ 28

FIRST CAUSE OF ACTION ...................................................................................... 30

SECOND CAUSE OF ACTION ................................................................................... 30

THIRD CAUSE OF ACTION ....................................................................................... 31

FOURTH CAUSE OF ACTION ................................................................................... 31

FIFTH CAUSE OF ACTION ........................................................................................ 31

SIXTH CAUSE OF ACTION ....................................................................................... 31

SIXTH CAUSE OF ACTION ....................................................................................... 31

DAMAGES .................................................................................................................... 32

## A. Brief Overview.

1. This Complaint and the Nature of a Quo Warranto ("**Complaint**") has many Attachments, definitions and Case citations that are essential elements to this Complaint due to the duplicity of Constitutional jurisdiction of "**District Court of the United States**" arising under Article III Sections 1 and 2 exercising the "**judicial Power of the United States**" versus the "**United States District Court**" exercising on the "**judicial power of a district court** . . . by a single judge" codified in 28 U.S.C. § 132; and further, **REIGH** is operating *ultra vires* and in "clear absence of all jurisdiction"[2] exercising any "judicial Power" of any of the several States and by the actions of **REIGH**.

---

[2] *Stump v. Sparkman*, 435 U.S. 349, 349, 356-357 (1978) "Held: . . . (a) A judge will not

2. And further, due to the CON of the people of Alaska including **REIGH** that has absolutely not one scintilla of authority, duty or relationship in any capacity to Alaska as one of the several States to exercise any "judicial Power of Alaska."

3. And further, **REIGH** is merely an "employee of the STATE OF ALASKA" with the definition of "State" being as codified in 52 U.S.C. § 20502 (4) "the term "State" means a State of the United States and the District of Columbia."

4. And further, **REIGH** has not one scintilla of authority, duty or relationship in any capacity as a "public Office of the State of Alaska" with Alaska being one of the several States.

5. And further, **REIGH** is one hundred per cent only beholding to the Alaska Bar Association within the Alaska Bar "Administrative Districts".

6. And further, there extremely important essential elements as to Gladden's status and allegiance arising under the Constitution of the United States and the essential element being that there are no Elections for any public Officers of the State of Alaska, with Alaska being one of the several States as Alaska has Elections ONLY clothed with the National Voter Registration Act of 1993 (107 Stat. 77-109).

7. And further, many of the essential term definitions are included to eliminate the CON, to pinpoint the exclusive new term definitions with accuracy of this Complaint, for judicial efficiency and conserve judicial resources.

---

be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the "**clear absence of all jurisdiction**," *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646.  Pp. 1104-1105 (1871),"

## II. Initial Jurisdictional Statement

1. Jurisdiction arises under Article III Sections 1 and 2 in the "District Court of the United States" exercising the "judicial Power of the United States" and not in an "United States District Court" that is "exercising the judicial power of a district court . . . by a single judge" as codified in 28 U.S.C. § 132(c).

2. Jurisdiction is under 42 U.S.C. § 1983 for a "clear absence of all jurisdiction" for a total denial of "Due Process of Law" in an administrative district of the Alaska Bar Association for being the "Third Judicial District" and not in the "Third District" of the constitutional court of Alaska.

3. Jurisdiction is under 42 U.S.C. § 1983 for a "clear absence of all jurisdiction" for a total denial of "Due Process of Law" by using a Alaska Bar Administration court (sic) styles "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" instead of the "Superior Court of the State of Alaska established by the Legislature of the State of Alaska in 1959.

4. Jurisdiction arises under 28 U.S.C. § 1331 for a constitutional bona fide "District Court of the United States;" and, the "Constitution of the United States;" and, the "Laws of the United States."

## III. Jurisdictional Definitions

1. These term definitions with means, unambiguous statues and Cases in Support precedents are presented forthwith for this Complaint, *infra.*

**A. Public Officer Versus Mere Employees**

1. In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of the essential elements to be a "public Officer" of a civil nature in any of the several States and the requirements pertaining to the creation of an "Office" in any of the several States based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is ibid at 418, to wit:

> After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature:** (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government,** to be exercised for the benefit of the public; (3) the **powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority;** (4) the **duties must be performed independently and without control of a superior power, other than the law,** unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have some permanency and continuity,** and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority.** *[Emphasis added]*

2. This Court may not presume the existence that any of the Defendants are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, " . . . **we may not presume he is an officer; it must be shown.** * * * It must appear in the record" (citations omitted).

3. Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole,* 148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915)

which is based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence, but must be created, to wit:

> **An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it.** "All public offices must originally have been created by the sovereign as the foundation of government."

4. In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897), the distinction of a "position", i.e. mere employee is explicated from an [public] officer, to wit:

> "A **position**, the **duties** of which * * * **can be changed at the will of the superior,** * * * is not an office, but a mere employment, and the incumbent is not an officer, but a **mere employee.**" *[Emphasis added]*

5. And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating when a "position" is created not by force of law, but by a contract of employment, it isn't an "office", "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office."

6. A "public Officer" as distinguished from an "employee" must be invested by law with a portion of the state's sovereignty for the public benefit largely independent of the control of others and authorized to exercise functions either of executive, legislative, or judicial character. See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957); *State ex rel. Milburn v. Pethtel*, 90 N.E.2d 686, 689 (Sup. Ct. Ohio 1950); *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App. 1949); *Application of Barber*, 100

N.Y:.S.2d 668, 670 (Sup. Ct. Albany County, N.Y. 1951);  *Francis v. Iowa*, 98 N.W.2d

733, 735, 736 (Sup. Ct. Iowa);  *State ex rel. Dunn v. Ayers*, 113 P.2d 785,  787 (Sup. Ct.

Mont. 1941).

## B.  Means

1.  In *Verbie v. Morgan Stanley Smith Barney, LLC*, 148 F.Supp.3d 644, 651

(E.D.Tenn. 2015) "*See* 15 U.S.C. § 78u-6(a) (noting that the definition "shall apply"

throughout the section); *see also Burgess v. United States*, 553 U.S. 124, 131 n. 3 (2008)

(describing a **definition** that **uses** the term "**means**" as **exclusive** and a definition that

uses that term "**includes**" as **nonexclusive**)." * * * @ 656 "This conclusion is fortified by

the fact that when an **exclusive definition is intended the word 'means' is employed**".

In *Burgess v. United States*, 553 U.S. 124, 131 n. 3 (2008) ""[T]he word '**includes**' is

usually a term of enlargement, and not of limitation." 2A Singer § 47:7, p. 305 (some

internal quotation marks omitted). Thus "[a] term whose statutory definition declares

what it 'includes' is more susceptible to extension of meaning ... than where"—as in §

802(44)—"the definition declares what a term 'means.' " *Ibid*. See also *Groman v.*

*Commissioner,* 302 U.S. 82, 86 (1937) "[W]hen an exclusive definition is intended the

word 'means' is employed**, ... whereas here the word used is 'includes."

2.  In *Groman v. Commissioner*, 302 U.S. 82, 86 (1937) "This conclusion is

fortified by the fact that when an **exclusive definition is intended the word 'means' is**

**employed."** See also *In re Barnet*, 737 F.3d 238, 248 (2nd Cir. 2013); *Verbie v. Morgan*

*Stanley Smith Barney*, LLC, 148 F.Supp.3d 644, 653 (E.D.Tenn. 2015).

3. In *United States Navy-Marine Corps Court of Military Review v. Cheney*, 29 M.J. 98, 103 (C.M.A. 1989) "Where Congress intended a more **exclusive definition**, it used the word "**means**,." In *State v. Begay*, 225 P.3d 108, 111 (App.Ct.Ore. 2010). In *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 156 (2nd Cir. 2015) *see also United States v. DiCristina*, 726 F.3d 92, 99 (2d Cir.2013) (quoting *Groman v. Commissioner,* 302 U.S. 82, 86 (1937) ("When an **exclusive definition is intended the words means is employed**.")). See also *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") * * * "[W]hen an **exclusive definition is intended the word 'means' is employed....")"**

4. In *Haeger Potteries v. Gilner Potteries,* 123 F.Supp. 261, 267-268 (S.D.Cal. 1954) "Use of the phrase 'shall mean and include' indicates that the **statutory definition** was not intended to be restrictive or **exclusive**. *Athens Lodge No. 70 v. Wilson*, 1953, 117 Cal.App.2d 322, 255 P.2d 482."

5. In *Stenberg v. Carhart,* 530 U.S. 914, 942 (2000), to wit:

> **When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.** *Meese v. Keene,* 481 U.S. 465, 484–485, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) ("**It is axiomatic that the statutory definition of the term excludes unstated meanings of that term**"); *Colautti v. Franklin,* 439 U.S., at 392–393, n. 10, 99 S.Ct. 675 ("**As a rule, 'a definition which declares what a term "means" ... excludes any meaning that is not stated'** "); *Western Union Telegraph Co. v. Lenroot,* 323 U.S. 490, 502, 65 S.Ct. 335, 89 L.Ed. 414 (1945); *Fox v. Standard Oil Co. of N. J.,* 294 U.S. 87, 95–96, 55 S.Ct. 333, 79 L.Ed. 780 (1935) (Cardozo, J.)

6. See also *Burgess v. United States*, 553 U.S. 124, 130 (2008) citing *Colautti, ibid*; *McNamara v. Nomeco Bldg. Specialties, Inc.,* 26 F.Supp.2d 1168, 1174 (D.Minn. 1998) " In ascertaining the Intent of Congress from a plain reading of a statute, it is fundamental that " 'a statute should be interpreted so as not to render one part inoperative.' " *Mountain States Tel & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, (1985), quoting *Colautti v. Franklin,* 439 U.S. 379, 392 (1979).

7. In *Colautti v. Franklin*, 439 U.S. 392 n10 (1979) **"As a rule, 'a definition which declares what a term "means". . . excludes any meaning that is not stated'."**

8. In *Western Union Telegraph Co. v. Lenroot,* 323 U.S. 490, 502, (1945) "Of course statutory definitions of terms used therein prevail over colloquial meanings."

9. In *Fox v. Standard Oil Co. of New Jersey*, 294 U.S. 87, 95 (1935) "In such circumstances definition by the average man or even by the ordinary dictionary with its studies enumeration of subtle shades of meanings is not a substitute for the definition set before us by the law makers with instructions to apply it to the exclusion of all others." In *Price v. Commissioner of Revenue*, 1989 WL 158198, *3 (Minn.Tax Ct. 1989) "Moreover, where a statutory definition begins by stating what a defined term "means" rather than "includes," the definition excludes any meaning not specifically stated. *Colautti v. Franklin,* 439 U.S. 379, n. 10, (1979); *Meese v. Keene,* 481 U.S. 465, (1987)."

## C. Unambiguous Statues

### a. Supreme Court of the United States.

1. In *Jimenez v. Quarterman*, 555 U.S. 113, 113 (2009) it **held "This Court must**

enforce plain statutory language according to its terms. See, *e.g.*, *Larmie V. United States Trustee*, 540 U.S. 526, 534 (2004), *ibid @ 118*, "It is well established that, when the statutory language is plain, we must enforce it according to its terms. See, *e.g.*, *Dodd v. United States,* 545 U.S. 353, 359, 125 (2005); *Lamie, supra,* at 534, 124 S.Ct. 1023; *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, (2000); *Caminetti v. United States,* 242 U.S. 470, 485, (1917)."

2. In *Wyeth v. Levine*, 555 U.S. 555, 600 (2009) "This Court has repeatedly stated that when statutory language is plain, it must be enforced according to its terms. See *Jimenez v. Quarterman,* 555 U.S. 113, (2009); see also, *e.g., Dodd v. United States,* 545 U.S. 353, 359, (2005); *Lamie v. United States Trustee,* 540 U.S. 526, 534, (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, (2000).

3. In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240,241 (1989) "Rather, **as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."**

4. In *Howe v. Smith*, 452 U.S. 473, 480 (1981) "**As in every case involving the interpretation of a statute, analysis must begin with the language employed by Congress.** *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 702, 66 L.Ed.2d 633 (1981); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)."

> It was **held** in *Rubin v. United States*, 449 U.S. 424, 430 (1981), to wit:
> **When we find the terms of a statute unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.' "** *TVA v.*

*Hill*, 437 U.S. 153, 187, n. 33, 98 S.Ct. 2279, 2298, n. 33, 57 L.Ed.2d 117 (1978) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)). Accord, *Aaron v. SEC*, 446 U.S. 680, 695, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611 (1980); *Ernst & Ernst v. Hochfelder, supra*, at 214, n. 33, 96 S.Ct., at 1391 n. 33.

5. See *CSX Transp., Inc. v. Georgia State Bd. Of Equalization*, 552 U.S. 9, 20 (2007); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 222 N14 (1991); *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 643 (1990); *Crandon v. United States*, 494 U.S. 152, 168 (1990); *United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Industry of U.S. & Canada AFL-CIO, et al., v. Local 334, United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, et al.*, 452 U.S. 615, 628 (1981); *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008); *Desert Palace, Inc. v. Costa*, 5239 U.S. 90, 98 (2003); *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991).

### b. Congressional Intent.

1. In *Ardestani v. I.N.S.*, 502 U.S. 129, 135, 136 (1991), to wit:

The **"strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances,"** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981), **when a contrary legislative intent is clearly expressed.** *INS v. Cardoza-Fonseca,* 480 U.S. 421, 432, n. 12, 107 S.Ct. 1207, 1213, n. 12, 94 L.Ed.2d 434 (1987); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In this case, the legislative history cannot overcome the strong presumption " 'that the legislative purpose is expressed by the ordinary meaning of the words used.' " *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)(quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)).

2. In *Burlington Northern R. Co. v. Oklahoma Tax Com'n*, 481 U.S. 454, 461

(1987), to wit:

> **Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity,** but "[i]n the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.' " *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Unless exceptional circumstances dictate otherwise, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

3. In *United States v. James*, 478 U.S. 597, 606 (1986), to wit:

> We have repeatedly recognized that "[w]hen ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except 'in "rare and exceptional circumstances." ' " *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (citations omitted). **In the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive."** *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

### c. Federal Rules of Civil Procedure.

1. In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123

(1989), to wit:

> **We give the Federal Rules of Civil Procedure their plain meaning,** *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750, n. 9, 100 S.Ct. 1978, 1985 n. 9, 64 L.Ed.2d 659 (1980), **and generally with them as with a statute,** "[w]hen we find the terms ... unambiguous, judicial inquiry is complete," *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). The specific text of Rule 11 at issue here is the provision that requires a court, when a paper is signed in violation of the Rule, to **"impose upon the person who signed it ... an appropriate sanction."**

**d. 9th Circuit.**

1. In *Reeb v. Thomas*, 636 F.3d 1224, 1226, 1227 (9th Cir. 2011), to wit:

In determining whether 18 U.S.C. § 3625 precludes judicial review under the APA of individualized RDAP determinations, we first consider the **plain meaning of the statute's text.** *United States v. Nader*, 542 F.3d 713, 717 (9th Cir.2008) (citing *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir.2006)). **When the words of a statute are unambiguous " 'judicial inquiry is complete.' "** *Conn. Nat'l Bank v. Germain*,503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

There is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621–3624.

2. In *In re Price*, 353 F.3d 1135, 1140, 1141 (9th Cir. 2004), to wit:

In construing a statute, **"we begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'** " *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). If the statutory language is unambiguous, then our "judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

**e. Federal Circuit.**

3. In *Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed.Cir. 2010), to wit:
**"As always, the 'starting point in every case involving construction of a statute is the language itself.'** " *United States v. Hohri*, 482 U.S. 64, 68, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (quoting*Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). **When the terms of a statute are unambiguous, "judicial inquiry is complete, except 'in rare and exceptional circumstances.'** " *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill*, 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). **"Absent a clearly expressed legislative intention to the contrary, [the statute's plain] language must ordinarily be regarded as conclusive."** *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051,

64 L.Ed.2d 766 (1980).

4. In *Strategic Housing Finance Corp. of Travia County v. United States*, 608 F.3d 1317, 1324 (Fed. Cir. 2010) ""[W]hen the statutory language is plain, we must enforce it according to its terms. *Jimenez,* 129 S.Ct. at 685.""

**e. Inquiry Ceases if the Statutory Language is Unambiguous.**

**1. Supreme Court of the United States.**

1. In *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002), "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent" (Internal quotation marks omitted."

*Ibid.* @ 461, 462 (2002), to wit:

> **Our role is to interpret the language of the statute enacted by Congress.** This statute does not contain conflicting provisions or ambiguous language. Nor does it require a narrowing construction or application of any other canon or interpretative tool. "**We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'** " *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)) (citations omitted). **We will not alter the text in order to satisfy the policy preferences of the Commissioner.** These are battles that should be fought among the political branches and the industry. **Those parties should not seek to amend the statute by appeal to the Judicial Branch.**

2. See also *Millbrook v. United States*, 133 S.Ct. 1441, 1446 (2013), to wit:

> *Jimenez v. Quarterman,* 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009) ("**[W]hen the statutory language is plain, we must enforce it according to its terms**"); *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ("**The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent**" (internal quotation marks omitted)).

### 2. 9th Circuit.

1. In *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008), to wit:

**The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent."** *Barnhart v. Sigmon Coal Co.,* 534 US. 438 (2002) Internal citation omitted. The Supreme Ccorut has further noted that "[i]f a court, employing traditional tools of statutory construction, ascertains that **Congress had an intention on the precise questions at issue, that the intention is the law and must be given effect."** *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 n.9 (1984).

2. See also *Pacific Maritime Ass'n v. Local 63, Intern. Longshoremen's and Warehouseman's Union*, 198 F.3d 1078, 1081 (9th Cir. 1999).

3. In *Golden West Refining Co. v. Suntrust Bank*, 538 F.3d 1233, 1238 (9th Cir. 2008), to wit:

**We must give effect to the language of a statute if it is plain and unambiguous.** *See Texaco Inc. v. United States,* 528 F.3d 703, 707 (9th Cir.2008) (" 'The [interpretive] inquiry ceases **if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'** " quoting *Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)); *Catholic Mut. Relief Soc'y v. Superior Court,* 42 Cal.4th 358, 369, 64 Cal.Rptr.3d 434, 165 P.3d 154 (2007) ( "If the language of a statute is clear and unambiguous there is no need for construction, **nor is it necessary to resort to indicia of the intent of the Legislature."** (internal quotation marks, alteration, and citation omitted)); *Marsh v. City of Richmond,* 234 Va. 4, 11, 360 S.E.2d 163 (1987) (**"[I]f statutory language is not ambiguous but has a usual and plain meaning, rules of construction do not apply and resort to legislative history is both unnecessary and improper. Instead, we determine legislative intent from the plain meaning of the words used."**).

### 3. Federal Circuit.

1. In *Transcrpital Leasing Associates, 1990-II, L.P. v. United States*, 398 F.3d 1317, 1320, 1321 (Fed.Cir. 2005) "The **inquiry ceases if the statutory language is unambiguous** and the statutory scheme is coherent and

consistent." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal citations and quotations omitted)."

## D.  Legislative History

1.  In *Blum v. Stenson*, 465 U.S. 886, 896 (1984) "Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and **then to the legislative history** if the statutory language is unclear."  See also *Toibb v. Radloff*, 501 U.S. 157, 162 (1991):  *Public Employees Retirement system of Ohio v. Betts*, 492 U.S. 158, 185 (1989);  *Oklahoma v. New Mexico*, 501 U.S. 221, 234 FN5 (1991).

1.  In *Heinzelman v. Secretary of Health and Human Services*, 98 Fed.Cl. 808, 816 (2011), to wit:

> **Statutory interpretation begins with the plain meaning of the language of the statute.** *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 547, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978) ("The starting point in any case involving construction of a statute is the language itself."). **If "the language is clear and fits the case, the plain meaning of the statute will be regarded as conclusive."** *Norfolk Dredging Co. v. United States,* 375 F.3d 1106, 1110 (Fed.Cir.2004). **"When the language of the statute is not clear, canons of construction may be used to determine the meaning of the statute, if possible."** *Cherokee Nation of Okla. v. United States,* 73 Fed.Cl. 467, 476 (2006). One such fundamental canon of statutory construction is that "**the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."** *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Additionally, **if the statutory language is unclear, the Court will look to the legislative history of the statute.** *See, e.g., Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Allen v. Principi,* 237 F.3d 1368, 1375 (Fed.Cir.2001).

2.  See also *Adams v. United States*, 65 Fed.Cl. 217, 225 (U.S.Fed.Cl. 2005).

3.  In  *Zavislak v. United States*, 29 Fed.Cl. 525, 528-529, (U.S.Fed.Cl.1993), to

wit:

> Indeed, if a **statute is clear and unambiguous** on its face, "**that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.**" *Sullivan v. Stroop,* 496 U.S. 478, 480, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990) (quoting *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)); *see, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Darsigny v. Office of Personnel Management,* 787 F.2d 1555, 1557 (Fed.Cir.1986). However, when a statute can be read in more than one way, or when a statute is ambiguous on its face, **courts will resort to the legislative history to provide a meaning consistent with what Congress intended.** *Patterson v. Shumate,* 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) ("**courts appropriately may refer to a statute's legislative history to resolve statutory ambiguity**"); *Toibb v. Radloff,* 501 U.S. 157, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("**we first look to the statutory language and then to the legislative history if the statutory language is unclear**"); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

4, In *Osage Tribe of Indians of Oklahoma v. United States,* 68 Fed.Cl. 322

(U.S.Fed.Cl. 2005), to wit:

> It is a cardinal rule of statutory construction that "**no clause, sentence, or word shall be superfluous, void, or insignificant.**" *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ( "**It is our duty to give effect, if possible, to every clause and word of a statute ....**") (internal citations omitted); *James v. Santella,* 328 F.3d 1374, 1381 (Fed.Cir.2003) (acknowledging "**the general rule against construing a statute in a way that renders one of its parts inoperative**"); 2A *Sutherland: Statutes and Statutory Construction* § 46:06 (Norman J. Singer ed., 6th ed.2000).

5. In *Schwegmann Bros, et al. v. Calvert Distillers Corp,* 341 U.S. 384, 395

(1951), "Resort to legislative history is only justified where the **face of the Act is inescapably ambiguous,** and then I think we should not go beyond Committee reports,

which presumably are well considered and carefully prepared."

## E. Reviser's Notes

1. It is well settled that the reviser's notes are authoritative in interpreting the Code. See *United States v. National City Lines,* 337 U.S. 78, 81 (1949); *Stainback v. Mo Hock Ke Lok* Po, 336 U.S. 368 n. 12 (1949); *Aberdeen & Rockfish R. Co. v. Students Challenging Regulatory Agency*, 422 U.S. 289, 309 (1975); *Western Pac. R. Corp. v. Western Pac. R. Co.*, 345 U.S. 247, 254-255 (1953); *Pope v. Atlantic Coast Line R.Co.*, 345 U.S. 379, 384 (1953); *Tivoli Realty v. Paramount Pictures*, 80 F.Supp. 278, 280 (D. Del. 1950); *United States v. Thompson*, 319 F.2d 665, 669 (1963) (2nd Cir. 1963); *United States ex rel. Almeida*, 195 F.2d 815 (3rd Cir. 1952); *Adamowski v. Bard*, 193 F.2d 578, 581 (3rd Cir. 1952); *United States ex rel. Auld v. Warden of New Jersey State Penitentiary*, 187 F.2d 615 n. 1 (3rd Cir. 1951); *Lake v. New York Life Ins. Co.*, 218 F.2d 394, 398 (4th Cir. 1955); *Government Nat. Mortg. Ass/n v. Terry*, 608 F.2d 614, 618 n. 5 (5th Cir. 1979); *Acron Investments, Inc. v. Federal Sav. & Loan Ins. Corp.*, 363 F.2d 236, 240 (9th Cir. 1966); *Ragsdale v. Price*, 185 F.Supp. 263, 265 (M.D. Tenn. 1960); *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748, 752 (9th Cir. 1964); *Stauffer et al. v. Exley*, 184 F.2d 962, 964 (9th Cir. 1950); *King v. United States*, 390 F.2d 894, 913 (Ct.Cl. 1968) [28 U.S.C. 2201-02]; *Matter of Contest of General election on Nov. 8, 1977*, 264 N.W.2d 401, 405-405 (Sup. Ct. Minn. 1978); *United States v. Klock*, 100 F.Supp. 230, 233 (N.D. N.Y. 1951); *State ex rel. v. Shoemaker*, 39 N.W.2d 524, 528 (Sup. Ct. S.D. 1949); *Glenn v. United States*, 129 F.Supp. 914, 917 (S.D. Cal. 1955).

## F. Actual Notice

1. Gladden did give **Actual Notice** including the following to **REIGH** multiple times and did demand **REIGH's** Oath of Office as a public Officer;

2. And, Gladden demanded **REIGH's** Civil Commission of being appointed by the Governor of Alaska mandated by Article IV Section 5 and ©AS 39.05.035[3];

3. And, Gladden demanded **REIGH's** Authority for the "**Third Judicial District**," wherein Gladden only filed into the "**Third District**" which **REIGH** ignored;

4. And, Gladden demanded **REIGH**'s authority to filed Orders and Judgments only in the "**Third Judicial District**;" and, Gladden demanded Authority for **REIGH** to issue Orders only in "**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**" when initially and constitutional Courts of Alaska which Gladden filed being the "**Superior Court of Alaska**."

5. In *Jay E. Hayden Foundation, et al., v. First Neighbor Bank, N.A.*,610 F.3d 382, 385 (7th Cir. 2010), to wit:

> **A defendant who prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint that will withstand dismissal is forbidden, under the rubric of equitable estoppel, to plead the statute of limitations for the period in which the inquiry was thwarted.** *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 622 (7th Cir.2002); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-52 (7th Cir.1990); see also *Rotella v. Wood, supra*, 528 U.S. at 561, 120 S.Ct. 1075.

---

[3] © AS Sec. **39.05.035  Commission of office.** After each appointment of a state officer, the <u>governor shall execute a commission</u>, <u>which states that the person to whom it is issued is appointed and sets out the office to and the term for which the officer is appointed</u>. The attorney general shall prescribe the form of the commission. (ß 11-1-5 ACLA 1949) **Revisor's notes.** -- Formerly AS 39.05.120. Renumbered in 1984.

6. In *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 622 (7th Cir. 2002), to wit:

The doctrine of equitable estoppel, when invoked as a defense to the statute of limitations, requires the plaintiff to show that the defendant took steps deliberately to prevent the plaintiff from bringing a timely suit, **whether by concealing the existence of the plaintiff's claim** or by promising not to plead the statute of limitations. *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Hedrich v. Board of Regents,* 274 F.3d 1174, 1182 (7th Cir.2001); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450-52 (7th Cir.1990); *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 580-81 (D.C.Cir.1998).

7. In *Groseth v. Ness*, 421 P.2d 624, 630 (Sup.Ct.Ak. 1966), to wit:

Both federal and state authorities have established that the doctrine of equitable estoppel is available as a bar to inequitable reliance upon statutes of limitations. **FN16.** In *Glus v. Brooklyn E. Dist. Terminal,* **FN17,** the Supreme Court of the United States characterized this doctrine of estoppel in the following manner:

As Mr. Justice Miller expressed it * * * 'The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.' **FN18.**

> **FN16.** See Annot., 3 L.Ed.2d 1886-1887 (1959), where federal precedents giving recognition to the doctrine of equitable estoppel as a bar to reliance upon statutes of limitations are collected. In Annot., 24 A.L.R.2d 1413 (1952), at 1417-18, state authorities are collected. See also *Demmert v. City of Klawock,* 199 F.2d 32, 34 (9th Cir. 1952), for an instance of pre-statehood recognition of this doctrine.
> **FN17.** *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231 (1959).
> **FN18.** See also the concurring opinion of Judge Magruder in *Bergeron v. Mansour,* 152 F.2d 27, 33 (1st Cir. 1945).

8,  In *SD3 II LLC v. Black & Decker (U.S.) Incorporated*, 888 F.3d 98, 108-109, 112 115-116 (4th Cir. 2018), to wit:

> **Actual notice** is a straightforward concept to which we have long applied the standard that the plaintiff knew the " '**fraudulently concealed facts, which are the basis of a claim.**' " *Go Comput.*, 508 F.3d at 178 (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) ); *accord Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (holding that to prove fraudulent concealment the plaintiff must demonstrate that the defendant "**fraudulently concealed *facts that are the basis of the plaintiff's claim***" (emphasis added) ). Thus, a plaintiff is on **actual notice** if it has "**sufficient facts to identify a particular cause of action.**" *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). **Mere "hints, suspicions, hunches or rumors"** are not enough to put a plaintiff on **actual notice**. *Hobson*, 737 F.2d at 35. Instead, the plaintiff must be able to plead the factual allegations necessary to withstand a motion to dismiss, including "both the injury that g[ave] rise to [its] claim and the injurer." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010).
>
> * * *
>
> [112] **Actual notice**" means notice of **sufficient facts**, "which are the **basis of a claim,**" *Go Comput.*, 508 F.3d at 178, including identification of the injury, the injurer, and the type of injury
>
> * * *
>
> [155-166] For more than 40 years, this Court has been unwavering in our articulation of what **actual notice** requires: **awareness of sufficient facts to state a claim**. *See Go Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (explaining that antitrust plaintiff may not invoke fraudulent concealment if he has **discovered "facts which are the basis of a claim**"); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) ("**facts that are the basis of the plaintiff's claim**"); *116 *Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 218 (4th Cir. 1987) ("**facts which are the basis of a claim**"); *Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976) ("**facts which are the basis of his cause of action**").

It is axiomatic that the "facts which are the basis of a claim" or "cause of action" are those which enable a party to bring a valid suit. *See* Cause of Action, *Black's Law Dictionary* (10th ed. 2014) ("A group of operative

facts giving rise to one or more bases for suing; a factual situation that entitles one person to *obtain a remedy in court from another person*." (emphasis added) ). Thus, as the majority opinion correctly explains, for a plaintiff to be on **actual notice**, it "**must be able to plead the factual allegations necessary to withstand a motion to dismiss.**" *Ante* at 109.

This rule is consistent with the approach taken by our sister circuits. *See, e.g., Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010) ("A defendant who prevents a plaintiff from obtaining information that he needs *in order to be able to file a complaint that will withstand dismissal* is forbidden ... to plead the statute of limitations for the period in which the inquiry was thwarted." (emphasis added) ); *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 504 (9th Cir. 1988) (**holding** that **actual notice** requires "**knowledge [that] would ... justify the filing of a complaint**"); *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984) (holding that **actual notice** requires "**awareness of sufficient facts to identify a particular cause of action**" and "**to file suit**"), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

And this long-standing and widely embraced rule—that a plaintiff is on **actual notice** *only* **when it is aware of sufficient facts to state a claim that withstands a motion to dismiss**—balances the interests served by the fraudulent concealment doctrine: obliging plaintiffs to file suit in a timely fashion once they are aware, or should be aware, of facts sufficient to state a claim that can withstand a motion to dismiss, while preventing wrongdoers from avoiding liability by concealing their wrongdoing. *See Marlinton*, 71 F.3d at 122 ("The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from concealing a fraud, or ... committing a fraud in a manner that concealed itself until the defendant could plead the statute of limitations to protect it." (internal quotation marks omitted) ). To that end, any rule that would treat a plaintiff as being on **actual notice** under a standard more favorable to defendants—in situations when the plaintiff lacks knowledges of sufficient facts to state a claim that would withstand dismissal—would wrongly "creat[e] the anomalous situation of *requiring persons to file suit on a hunch*, only to be dismissed for failure to state a claim." *Hobson*, 737 F.2d at 39 (emphasis added). As the majority opinion correctly states, "[m]ere 'hints, suspicions, hunches or rumors' are not enough to put a plaintiff on **actual notice**." *Ante* at 109 (quoting *Hobson*, 737 F.2d at 35). Accordingly, a plaintiff is on **actual notice** when it knows of "enough factual information from which [it] could plead [its] cause of action for Rule 12(b)(6) purposes." *Id.* at 112.

9. In *Perry v. O'Donnel*, 749 F.2d 1346 (9th Circuit 1984) "[A]ctual notice means that that which a person actually **knows or could discover by making a reasonable investigation**. *See United States v. Certain Parcels of Land,* 85 F.Supp. at 1002 n. 13."

10. In *United States v. Certain Parcels of Land Situate in San Bernardino County*, 85 F.Supp 986, 1002 FN13 (9th Cir. 1949), to wit:

> **FN13**  In *Burdine v. White*, 173 Ky. 158, 190 S.W. 687, 689 (Ct.App.Ky. 1917); it is said that notice is actual, constructive, implied and presumptive, while actual notice is susceptible of subdivisions such as information which of itself gives actual notification and that which, if prosecuted with ordinary diligence, would furnish information of the fact. Notice is actual or constructive. **Actual notice is that which consists in express information of a fact, and constructive notice is that which is implied by law.** *Prouty v. Davin*, 50 P. 380, 381 (Sup.Ct.Ca. 1897).

### G.  Civil Commissions in Alaska for Judges and Justices—A Bona Fide One

1.  A bona fide Civil Commission is mandated to be issued if appointed by the Governor of Alaska in compliance with Article IV Section 5[4] and ©AS 39.05.035[5].  A copy of a bona fide Civil Commission is evidenced by **Attachment 1—Civil Commission ("Attach 1—Civil Commission")**.

---

[4] **SECTION 5. NOMINATION AND APPOINTMENT.** The governor shall fill any vacancy in an office of supreme court justice or superior court judge by **appointing** one of two or more persons **nominated by the judicial council.**

[5] © AS **Sec. 39.05.035  Commission of office.** After each appointment of a state officer, the **governor shall execute a commission, which states that the person to whom it is issued is appointed and sets out the office to and the term for which the officer is appointed**.  The attorney general shall prescribe the form of the commission. (ß  11-1-5 ACLA 1949) **Revisor's notes.** -- Formerly AS 39.05.120. Renumbered in 1984.

### a. There are NO "Civil Commissions" in the Judicial Branch (sic) of the STATE OF ALASKA.

1. As Evidenced by the this Letter being **Attachment 2—There Are No Civil Commissions Per FOIA and Response in the Letter for Judges and Justices of the Alaska Dated September 7, 2011 ("Attach 2—(1) No Civil Commissions Letter")** *flows a fortiori* that **REIGH** has no Civil Commission to exercise any "judicial Power of Alaska," with Alaska being one of the several States.

2. Confirmed in a second Letter dated July 16, 2012 that there are no Civil Commissions for judges and justices evidenced by **Attachment 3—There Are No Civil Commissions Per FOIA and Response in the Letter for Judges and Justices Dated July 16, 2012 ("Attach 3—(2) No Civil Commissions Letter") ")** *flows a fortiori* that **REIGH** has no Civil Commission to exercise any "judicial Power of Alaska," with Alaska being one of the several States.

### H. Bogus "Appointment Letters" From the Governor for Venessa White and Fred Torrisi

1. In a Public Records Request Dated July 15, 2011 for All of the "Copies of all **Appointment Letters** for all the current sitting judges and justice in Alaska" is the Letter and an example of just two being Vanessa White (Palmer Superior Court Judge (sic) ("White") and Fred Torissi (Dillingham Superior Court Judge (sic) ("Torrisi") evidenced by **Attachment 4—Vanessa White and Fred Torrisi Appointment Letter ("Attach 4––Appointment Letters."**

2. Take judicial Notice that these two examples in **Attach 4—Appointment Letters** state "I am pleased you have accepted the appointment," *i.e.*, is the unassailable

fact that Governor Murkowski and Governor Knowles are ONLY **congratulating** White and Torrisi therein *flows a* fortiori that these Appointment as mandated by Article IV Section 5 and ©AS 39.05.035 are **NOT Civil Commissions.**

## I. Oaths of Office as Public Officers of the State of Alaska

### a. Definition of "Office" According to the Common Law of England of Giles Jacobs Corrected by T.E. Tomlins in 1811.

1. T.E. Tomlins in 1811 Corrected and Enlarged the English Common Law "**The LAW-DICTIONARY: explaining the Rise, Progress, and the Present State, of the English Law; Defining and Interpreting The Terms Or Words of Art; and Comprising Copious Information on the Subjects of LAW, TRADE, AND GOVERNMENT Originally Compiled by Giles Jacob; Corrected and Greatly Enlarged, by T.E. Tomlins, of the Inner Temple, Barrister at Law—The first American from the second London edition**" ("**English Common Law—Tomlins**") adapted to the several States in the Union of States.

3. The several States of the Union of States have adopted the English Common Law with modifications for America as a Rule of Law.

4. As evidenced in excerpt **Attachment 5—English Common Law—Tomlins Definition of Office (Attach 5—English Common Law—Office")**, with just a couple of examples of the **GREAT importance** of "**Office**,", to wit:

> [Pg. 2] It is said, that the word *officium* principally implies a duty, and in the next place the charge of such duty; and that it is a rule, **that where one man hath to do with the another's affairs against his will, and without his leave, that this is an Office, and he who is in it is an officer.**

> [Pg, 7] It is laid down in general, that if an **officer acts contrary to the**

nature and duty of his Office, or <u>if he refused to act at all,</u> that in these cases the <u>Office is forfeited.</u>

[Pg. 8]  **As to refusal, he says, that <u>in all cases</u> where an <u>officer is bound upon request to exercise his Office, if he does not do it upon request, he forfeits it.</u>"**

[Pg. 9]   All officers are punishable for corruption and oppressive proceedings, according to the nature of the offence, either by indictment, attachment, <u>**action at the suit of the party injured, loss of their Office.**</u>

5.   Gladden filed in the ONLY remedy available in the Courts of Alaska requesting that **REIGH** "act" as a bona fide "public Officer" in the "Superior Court of Alaska" in the "Third District" even though **RIEGH is merely a Black Robed Alaska Bar Member with her ONLY allegiance to the Alaska Bar.**

6.  Gladden gave **REIGH "Actual Notice" several times during the CON of the very first Complaint and subsequent filing in the "alleged" Bench Trial** of REIGH's "clear absence of all jurisdiction,"  but she just proceeded unchanged and did not recuse herself either.

**<u>b.  Oath of Office for all Public Officers of the of the several States.</u>**

1.  Jurisdiction arises under 1 Stat. 1 (1789) as the very first Statue of the United States **mandates** with this unambiguous statue limited to only <u>**public Officers**</u> of the "several States" to hold public Office as evidenced by this excerpt being "**all** executive and **judicial offers of the <u>several States</u>** . . . "<u>**before they proceed** to execute their duties of their respective offices</u>, **take the foregoing oath** or affirmation" and "**shall cause a record or certificate** thereof to be made . . . or they shall be directed to **record** and **certify the oath**" as evidenced **Attachment 6—1 Stat. 1—An Act to regulate the Time and manner of administering certain Oath" ("Attach 6—Oaths"),** to wit:

And the members of the **several State** legislatures, and **all executive and judicial officers of the several States**, who shall be chosen or appointed after the said first day of August, shall, **before they proceed to execute the duties of their respective offices, take the foregoing oath or affirmation**, which shall be administered by the person or persons, who by the law of the State shall be authorized to administer the **oath of office;** and the person or persons so administering the oath hereby required to be taken, **shall cause a record or certificate thereof to be made**, in the same manner, as, **by the law of the State**, he or **they shall be directed to record or certify the oath of office**.

### c. Bogus "Oaths" of the Judges and Justices in Alaska.

1. All of the judges and justices in Alaska[6] are impersonating being a "public Officer" exercising the "judicial Power of Alaska" and NONE of the judges and justices have the forty-one ("41") words that are in quotation marks as an "Oath of Office as a public Officer" in the public record as found in the "**Constitution for[7] the State of Alaska**" in Article XII Section 5, to wit:

> **SECTION 5. OATH OF OFFICE. All public officers**, before entering upon the duties of their offices, **shall take and subscribe** to the following oath or affirmation: **"I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of Alaska, and that I will faithfully discharge my duties as . . . . . . . . to the best of my ability."** The legislature may prescribe further oaths or affirmations.

And, also required for all "superior court judges" is the "oath of office required by all officers **under the constitution [Article XII Section 5]** in ©AS § 22.10.110—"Each superior court judge, upon entering office, **shall take and subscribe** to an **oath of office**

---

[6] Ralph Kermit Winterrowd 2nd has all of the "Oaths" of the judges and justices until a couple of years ago but now no one will provide documents with a FOIA for the current imposters.

[7] Preamble—We the people of Alaska, grateful to God and to those who founded our nation and pioneered this great land, in order to secure and transmit to succeeding generations our heritage of political, civil, and religious liberty within the Union of States, do ordain and establish this **constitution for the State of Alaska**

**required of all officers under the constitution** and any further oath or affirmation as may be prescribed by law.

2.   Venessa White [Palmer judge (sic)] only has an **"Employee Affidavit"** admitting therein that "White" is merely just a lowly **"court employee"** evidenced by **Attachment 7—Employee Affidavit of Venessa White ("Attach 7—White Employee Affidavit")**, wherein also within the **Attach 7—White Employee Affidavit** there had been requested if any other "Oath" existed as the first FOIA only produced the "Employee Affidavit and then in **Attach 7—White Employee Affidavit** in the reply was **"Judge Vanessa White has not signed a new Oath of Office"** therein *flows a fortiori* that "Judge Vanessa White's" only public record "Oath."

3.   And therein *flows a fortiori* that "Judge Vanessa White" of the unassailable fact that she is merely a "court employee" as admitted under her signature remembering that the forty-one (41) are exactly correct evidenced by **Attach 7—White Employee Affidavit.**

4.   Vanessa White does not have an **"Oath of Office"** as a public officer as mandated by Article XII Section 5 and ©AS § 22.10.110 in the public record as July 16, 2012 evidenced by **Attach 7—White Employee Affidavit.**

5.   As **REIGH** has the exactly the same "title" (sic) in Dillingham as Vanessa White does in Palmer therein *flows a fortiori* that **REIGH** has an "Employee Affidavit" and is also just merely a "court employee."

6. As **REIGH** has the exactly the same "title" (sic) in Dillingham as Vanessa White's "title" in Palmer therein *flows a fortiori* that **REIGH** does not have an "Oath of Office" as a public Officer as mandated by Article XII Section 5 and ©AS § 22.10.110.

7. Ralph Kermit Winterrowd 2nd has the employee affidavits of most of the judges pre-2012 which can be provided if requested but every judge and justice when copying and inspecting them at the Anchorage House with Steve Collier (he was a Notary Public so many are notarized) **all had Employee Affidavits** but many did not have the bogus "Oaths of Office."

8. A sample of the Alaska "<u>Employee Affidavit</u>" is evidenced in **Attachment 8– –Employee Affidavit Sample ("Attach 8—Employee Affidavit Sample")**, and take Notice that all of the forty-one (41) word of Article XII Section 5 are exactly correct.

## FIRST CAUSE OF ACTION

The Plaintiff repleads the facts and allegations contained in Sections I, II and III and all subsections that **REIGH** did proceed in the Instant Case of *David Gary Gladden v. JAMES HENRY BINGMAN, SR.*, 3DI-18-0002CI ("Superior Court of Alaska" "Third District" Dillingham, Alaska) with a "clear absence of all jurisdiction,"

## SECOND CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the First Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative District knows as "Third Judicial District" instead of the "Third District" established by the Legislature of the State of Alaska in 1959.

### THIRD CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Second Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court knows as "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" instead of the "Superior Court of the State of Alaska" established by the Legislature of the State of Alaska in 1959.

### FOURTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Third Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court as merely an "undersigned jurist.

### FIFTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Fourth Cause of Actions that **REIGH** did preside over an Alaska Bar Administrative Court with No "Oath of Office as a public Officer" in the public record.

### SIXTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Fifth Cause of Actions that **REIGH** did preside over an Alaska Bar Administrative Court having never been appointed by the Governor of Alaska with a bona fide "Civil Commission" as mandated by both statute of Alaska and the Constitution of Alaska.

### SIXTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Sixth Cause of Actions that **REIGH** did preside over an Alaska Bar Administrative Court being "Actual Notice" more that once, ignoring all "Actual Notices."

## DAMAGES

**WHEREFORE,** the Plaintiff seeks damages as follows from **REIGH for her proceeding forward against with a "clear absence of all jurisdiction"** in Case 3DI-18-00002CI in Dillingham, Alaska:

A) Actual damages of $22,704.60 to date minus interest and other fees.

B) General damages in the amount to be determined later; and,

C) Compensatory Damages in the amount to be determined later; and,

D) Special Damages in the form of filing fees, mailing, and process fees; and,

E) Punitive Damages in the sum of two million dollars and to be adjusted by jury of my peers being "citizens of Alaska" or by a bona fide Article III Judge of the United States" if a Bench Trial for the intentional, willful, and malicious actions against Gladden in "clear absence of all jurisdiction" and damage to the reputation of Gladden future work on Airplanes by **REIGH**; and,

F) All other just relief as the Court may deem appropriate.

My Hand,

*David Gerry Gladden*