"District Court of the United States"
District of Alaska
Anchorage, Alaska

RECEIVED

MAY 0 1 2019

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

"David Gary Gladden"
P.O. Box 877109
Wasilla, Alaska [99687]

David Gary Gladden, *in propria persona*  )
    Plaintiff  )
      )
    *Versus*  )  **Case: 3:19-cv-99**
      )
CHRISTINA L. REIGH, in her *personal and* )
    **Presumed Official Capacity**  )

## I.  Amended Complaint and in the Nature of Quo Warranto

### A.  Overview

**Notice:**  this Amended Complaint and in the Nature of a Quo Warranto ("Complaint") is quite lengthy but the CON is quite complicated and for judicial efficiency there are terms and definitions with Memorandums otherwise this instant Case will drag on for many months and years or be dismissed.  Gladden is fully aware of challenging the Alaska Bar Association and any alleged Judge will bring forth all of the resources of the **"STATE OF ALASKA" ("SOA") and the Alaska Bar Association**, therein is the justification for a "well pleaded Complaint."

The **"State of Alaska"** means when used in this Complaint that Alaska is one of the several States of the Union of States in the Constitution of the United States including Amendments 1-12.

And when the **"STATE OF ALASKA" ("SOA")** is used in this Complaint it

i

means the definition of "State" in 52 U.S.C. § 20502(4) "the term "State" means a State of the United States and the District of Columbia," wherein the only Elections in Alaska is only for "citizens of the United States[1]" under the "National Voter Registration Act of 1993" ("NVRA") and is limited to only "Federal Officers"—52 U.S.C. § 20502(2) "the term "Federal Office" has the meaning stated in section 30101(3) of this title" which definition is found in 52 U.S.C. § 30101(3) "the term "Federal Office" means the office of the President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress."

Attachments will follow as evidence after this Overview as there are many interlocking issues in this Complaint.

## Table of Contents

I. Amended Complaint and in the Nature of Quo Warranto ............................................... i

  A. Overview ....................................................................................................................... i

II. Initial Jurisdictional Statement ............................................................................... 4

III. Jurisdictional Definitions ....................................................................................... 5

  A. Public Officer Versus Mere Employees ..................................................................... 5

  B. Means ........................................................................................................................... 8

    a. "Term" ...................................................................................................................... 10

  C. Unambiguous Statues ................................................................................................. 12

    a. Supreme Court of the United States. ....................................................................... 12

    b. Congressional Intent. .............................................................................................. 13

    c. Federal Rules of Civil Procedure ............................................................................ 14

---

[1] 52 U.S.C. § 20501(a)(1).

Complaint—Case: 3:19-cv-99          ii

d. 9th Circuit. ..................................................................................15

e. Federal Circuit. ..............................................................................15

e. Inquiry Ceases if the Statutory Language is Unambiguous. ................16

    1. Supreme Court of the United States. ....................................16

    2. 9th Circuit. ....................................................................17

    3. Federal Circuit. .............................................................18

D. Legislative History ..........................................................................18

E. Actual Notice ..................................................................................20

F.   Requirement of an "Office" Established by the Legislature or the Constitution
otherwise there is No *"De Jure Officer"* or *"De facto Officer."* ................24

    a. 1St Circuit Court of Appeals Citing *Norton v. Shelby County.* ..............26

    b. 8th Circuit Court of Appeals Citing *Norton v. Shelby County* ...............26

    c. 9th Circuit Court of Appeals Citing *Norton v. Shelby County.* ..............27

    d. State of Alaska..........................................................................27

    e. State of Massachusetts................................................................27

    f. State of North Carolina. ..............................................................28

    g. Other Jurisdictions.....................................................................29

G. REIGH is Deemed to Know the Law........................................................32

III. SOAe Essential Issues of "citizens of the United States"..........................35

A. The Fourteenth Amendment Doesn't Apply To "citizens of the United States" in the
District of Columbia or to the District of Columbia. ....................................37

B. The Fifteenth Amendment Does not Confer any Right of Suffrage on Anyone.......38

C. A "citizen of the United States" Has No Rights of Suffrage....................38

D. A "citizen of the United States" even in Foreign Country Such as Old Mexico is bound by the "benefit" and his property and income is subject taxation to the United States. ...................................................................................................................39

E. The "citizens of the United States" fill out the same Form 1040s, the same 1099s, the same W4 and have the same W2 for the "Federal Income Tax" in the District of Columbia and in the "United States." ...........................................................................40

F. Public Salary Tax Act of 1939, 53 Stat. 574-577, on "Federal Income Tax" referencing *Helvering v. Gerhardt*, 304 U.S. 405, 418 w/FN6 [extensive details] (1938) Precludes Gladden Jurisdictionally. ...............................................................................40

G. The "STATE OF ALASKA" Is NOT the Government of Alaska, One of the several States; and, is Using the "National Voter Registration Act of 1993" for "Federal Offices" Only for Elections; Therein, There are no Constitutional Courts of Alaska Exercising the "judicial Power of Alaska"—"there is an absence of available State corrective process;" and, "circumstances exist that render such process ineffective to protect the rights of the applicant." ...................................................................................44

H. The "STATE OF ALASKA" Elections are Limited to Only "citizens of the United States" that Have No Right of the Elective Franchise or the Right of Suffrage PRECLUDING the "citizens of Alaska" from Exercising Right of the Elective Franchise and the Right of Suffrage. ...........................................................................46

I. The "citizens of the United States" After the Fourteenth Amendment Flipped to where the Source of Citizenship if from being a "citizen of the United States" and not being one of the citizens of the several States. ...............................................................50

J. Federal Enclaves such as the District of Columbia the Same as "Federal Areas" under the Buck Act of 1940 and 1946 for "citizens of the United States. .....................50

K. The Tenth Amendment Provides NO Protections to the several States or to the People of the several States Against the Statutory "citizens of the United States". .......52

IV. Jurisdiction Is in the "District Court of the United States and NOT the "United States District Court" ...................................................................................................................56

A. District Court of the United States Means. ...............................................................57

Complaint—Case: 3:19-cv-99                    iv

B. Subject Matter Jurisdiction. ................................................................58

C. "United States District Court" under 28 U.S.C. § 132 is NOT the "judicial Power of the United States" but the "judicial power of a district court." ...................59

D. Reviser's Notes .................................................................................61

E. 28 U.S.C. Organization of Court—Chapter 5—1948 Chapter 646—Pubic Law 773; and, 28 U.S.C. § 451 Definitions 1948 Chapter 646—Pubic Law 773 .........................62

F. "citizens of the United States" Can Be Tried Before a Non- Article III Section 1 and 2 Judge ...................................................................................................68

G. Inquisitions versus Adversarial ........................................................69

V. Parties. ....................................................................................................75

A. David Gary Gladden ("Gladden") ....................................................75

B. CHRISTINA L. REIGH ("REIGH") ..................................................76

   a. "For" means on "Behalf of" or for the "Benefit of" or "Representing" the "STATE OF ALASKA" ("SOA") ..................................................80

   b. Warning of NOT having "Independent Judges" by Chief Justice Marshall .........80

   c. "Behalf of" meaning ..................................................................80

C. "State of Alaska," being one of the several States with "Districts." .........................82

   a. "Districts" established the Venue and "Offices" of "judicial Officers." ...............82

   b. "STATE OF ALASKA" ("SOA") Used by REIGH that has NO "Office" Enacted by the "Legislature of the State of Alaska." ...............................................82

     1. ORDER One of REIGH ..................................................................83

     2. ORDER Two of REIGH ..................................................................83

     3. ORDER Three of REIGH ................................................................83

     4. ORDER Four of REIGH ..................................................................83

     5. ORDER Five of REIGH ..................................................................83

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 5 of 104

6. ORDER Six of REIGH ..................................................................................83

7. ORDER Seven of REIGH ..............................................................................84

8. ORDER Seven of REIGH ..............................................................................84

9. Source of REIGH's "Third Judicial District" is the Alaska Bar Association Bylaws, Art. I, Section 6 "CREATED" the "Third Judicial District", not the "Legislature of the State of Alaska." .....................................................................84

10. Venessa White (Superior Court Judge – Palmer) signed an Order Stating She was merely an "Undersign Jurist" When Pressed to Produce Her "Oath of Office as a Public Officer and her "Civil Commission.....................................................85

11. All of these Alleged Judges are merely Employees of the SOA .....................86

12. REIGH has a Rule 5 with Oath and a Rule 64 Filed in the Alaska Bar Association .................................................................................................................86

13. Jacobs Corrected by T.E. Tomlins in 1811. .................................................87

14. Oath of Office for all Public Officers of the of the several States. .....................88

VI. The "United States" is also the same as the "United States of America is a sovereign body politic." ..........................................................................................................89

FIRST CAUSE OF ACTION ..........................................................................................93

SECOND CAUSE OF ACTION ......................................................................................94

THIRD CAUSE OF ACTION ..........................................................................................94

FOURTH CAUSE OF ACTION ......................................................................................94

FIFTH CAUSE OF ACTION ..........................................................................................94

SIXTH CAUSE OF ACTION ..........................................................................................95

SEVENTH CAUSE OF ACTION ....................................................................................95

EIGHTH CAUSE OF ACTION ......................................................................................95

NINTH CAUSE OF ACTION.............................................................................................95

TENTH CAUSE OF ACTION ..........................................................................................95

ELEVENTH CAUSE OF ACTION ..................................................................................95

DAMAGES......................................................................................................................96

Complaint—Case: 3:19-cv-99      vii

1. Comes now "**David Gary Gladden**" ("**Gladden**"), *in propria persona* with this Compliant against "**CHRISTINA L. REIGH**" ("**REIGH**") in her personal and Presumed Official Capacity for proceeding against Gladden after Gladden had given **RIEGH "actual notice"** that she was proceeding with a "clear absence of all jurisdiction"[2] in the Case: 3DI-18-00002CI in Dillingham, Alaska under the "State Bar Bylaws, Art. I § 6 <u>Administrative</u> Districts (3)"**Third Judicial District**"[3] **was "created" by the Alaska Bar**[4] **(Not the Legislature of the State of Alaska or the Constitution <u>for</u> the State of Alaska)** instead of the constitutional Venue of the "**Third District**"[5] as established by the **Legislature of the State of Alaska** in 1959 in Chapter 50 16.[6]

2. And further, **REIGH** has been knowingly and intentionally proceeding against Gladden after Gladden had given **RIEGH "actual notice"** with a "clear absence of all

---

[2] *Stump v. Sparkman*, 435 U.S. 349, 349, 356-357 (1978) "Held: . . . (a) A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the "**clear absence of all jurisdiction**," *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646. Pp. 1104-1105 (1871),"

[3] State Bar Bylaws, Art. XIII. Definitions—Section 1. Definitions (5) *"District"* means an administrative district of Alaska, as **defined in Article I, Section 6.**

[4] State Bar Bylaws, Art. I, **Section 6. Administrative Districts.** For the purpose of the administration of the Act, these Bylaws, the Rules, and the Policies and Regulations promulgated under them, **four administrative districts, based in part upon the judicial districts existing in 1973, <u>are created</u> as follows:**

[5] SLA 1959, ch. 50, § 16 codified today in ©AS § 22.10.010—Establishment of Superior Court.

[6] SLA 1959, ch. 50, § 16 codified today in ©AS § 22.10.010—Establishment of Superior Court.

1

jurisdiction" using the Alaska Bar Administrative Court being "**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**" instead of the constitutional "**In the Superior Court of the State of Alaska**" established by the Legislature of the State of Alaska in 1959—SLA 1959, ch. 50, § 16 codified today in ©AS § 22.10.010—Establishment of Superior Court.

3. And further, **REIGH** has been proceeding after "actual notice" against Gladden with no "Office" established by the Constitution **for** the State of Alaska or the Legislature of the State of Alaska therein *flows a fortiori* that **REIGH** is not a "de jure officer" or a "de facto officer" as there must exist a "office" established by the Constitution **for** the State of Alaska or by the Legislature of the State of Alaska.[7]

4. And further, **REIGH**, has been proceeding after "actual notice" against Gladden with no "Office" established by the Constitution **for** the State of Alaska or by the Legislature of the State of Alaska but has been proceeding within the "Third Judicial District" **"created"** by the Alaska Bar Association that is NOT being established by the Legislature of the State of Alaska or the Constitution **for** the State of Alaska therein there is no protection of the "*de facto* doctrine" for **REIGH**, as there is no "Office."

5. And further, there are no Elections for any "public Officers of the State of Alaska" definitely since the passing of the "National Voter Registration Act of 1993"

---

[7] In *Norton v. Shelby County*, 118 U.S. 425, 445 (1886) "As said by Mr. Justice Manning, of the supreme court of Michigan, in *Carleton v. People*, 10Mich. 269: **"[W]here there is no office there can be no officer *de facto*, for the reason that there can be none *de jure*.**"

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 9 of 104

("NVRA") as Alaska has bound itself NRVA for Elections only for "federal offices."[8]

6. And further, the qualifications for in the State of Alaska to "vote" is only for "citizens of the United States" that has no right of suffrage or elective franchise.

7. And further, there are no elections to vote if you are a "citizen of Alaska" to exercise your right of the elective franchise and your right of suffrage to be a qualified elector to elect "public officers of the State of Alaska."

8. And further, there are no elections for any "public officers of the State of Alaska" with Alaska being one of the several States.

9. And further, there are no "trial by jury" in Alaska except that you to be a "citizen of the United States" instead of a 'citizen of Alaska.

10. And further, This Complaint has many Attachments, definitions and Case citations that are essential elements to this Complaint due to the duplicity of Constitutional jurisdiction of "**District Court of the United States**" arising under Article III Sections 1 and 2 exercising the "**judicial Power of the United States**" versus the "**United States District Court**" exercising on the "**judicial power of a district court** . . . by a single judge" codified in 28 U.S.C. § 132.

11. And further, **REIGH** is operating *ultra vires* and in "clear absence of all jurisdiction"[9] exercising any "judicial Power" of any of the several States and evidenced by all of the actions and filings of **REIGH**.

---

[8] 107 Stat. 77-100, May 20, 1993 as amended Codified in 52 U.S.C. Sections 20501-20511; and 52 U.S.C. § 30101(3) Definition of the term "Federal Office."

[9] *Stump v. Sparkman*, 435 U.S. 349, 349, 356-357 (1978) "Held: . . . (a) A judge will not be deprived of immunity because the action he took was in error, was done maliciously,

Complaint—Case: 3:19-cv-99                    3

12. And further, due to the CON of the people of Alaska including **REIGH** that has absolutely not one scintilla of authority, duty or relationship in any capacity to Alaska of an "Office" established by the Legislature of the State of Alaska or the Constitution **for** the State of Alaska as one of the several States to exercise any "judicial Power of Alaska."

13. And further, **REIGH** is merely an "employee of the STATE OF ALASKA" with the definition of "State" being as codified in 52 U.S.C. § 20502 (4) "the term "State" means a State of the United States and the District of Columbia."

14. And further, **REIGH** has not one scintilla of authority, duty or relationship in any capacity as a "public Office of the State of Alaska" with Alaska being one of the several States.

15. And further, **REIGH** is one hundred per cent only beholding to the Alaska Bar Association within the Alaska Bar "Administrative Districts" validated by her Rule 5 and Oath and Rule 64.

## II. Initial Jurisdictional Statement

1. Jurisdiction arises under Article III Sections 1 and 2 in the "District Court of the United States" exercising the "judicial Power of the United States" and not in an "United States District Court" that is "exercising the judicial power of a district court . . . by a single judge" as codified in 28 U.S.C. § 132(c).

---

or was in excess of his authority, but rather he will be subject to liability only when he has acted in the **"clear absence of all jurisdiction,"** *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646. Pp. 1104-1105 (1871),"

Complaint—Case: 3:19-cv-99            4

2. Jurisdiction is under 42 U.S.C. § 1983 for a "clear absence of all jurisdiction" for a total denial of "Due Process of Law" in an administrative district of the Alaska Bar Association for being the "Third Judicial District" and not in the "Third District" of the constitutional court of Alaska.

3. Jurisdiction is under 42 U.S.C. § 1983 for a "clear absence of all jurisdiction" for a total denial of "Due Process of Law" by using an Alaska Bar Administration court (sic) styles "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" instead of the "Superior Court of the State of Alaska established by the Legislature of the State of Alaska in 1959.

4. Jurisdiction arises under 28 U.S.C. § 1331 for a constitutional bona fide "District Court of the United States;" and, the "Constitution of the United States;" and, the "Laws of the United States" including "usurpation" with no "Office" established under any of the Laws of the State of Alaska by either the Constitution **for** the State of Alaska or the Legislature of the State of Alaska.

### III. Jurisdictional Definitions

1. These term definitions and Cases are in Support precedents are presented forthwith for this Complaint, *infra*, for a "well pleaded Complaint" and for "judicial efficiency.

### A. Public Officer Versus Mere Employees

1. In the adjudged decision of *State v. Hawkins*, 257 P. 411, 413-418 (Sup. Ct. Mont. 1927) is an exhaustive examination of the essential elements to be a "public Officer" of a civil nature in any of the several States and the requirements pertaining to

Complaint—Case: 3:19-cv-99                    5

the creation of an "Office" in any of the several States based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, and this holding is ibid at 418, to wit:

> After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it **a public office of a civil nature**: (1) It **must be created by the Constitution or by the Legislature** or created by a municipality or other body through authority conferred by the Legislature; (2) it **must possess a delegation of a portion of the sovereign power of government**, to be exercised for the benefit of the public; (3) the **powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority**; (4) the **duties must be performed independently and without control of a superior power, other than the law**, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it **must have SOAe permanency and continuity**, and not be only temporary or occasional. In addition, in this state, **an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority. *[Emphasis added]***

2. This Court may not presume the existence that any of the Defendants are in fact either judicial Officers of the several States or executive Officers of the several States, *ibid* at 414, " . . . **we may not presume he is an officer; it must be shown**. * * * It must appear in the record" (citations omitted).

3. Another extensively researched case on "public Officer" and the requirement of the creation of an "Office" is *State v. Cole*, 148 P. 551, 552 *et seq.* (Sup. Ct. Nev. 1915) which is based upon the holdings of many decisions of numerous courts of the several States which are omitted for brevity, but are relied upon, held *ibid* at 552 an Office can't spring into existence, but must be created, to wit:

An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the Constitution, by legislative enactment, or by SOAe municipal body, pursuant to authority delegated to it. "All public offices must originally have been created by the sovereign as the foundation of government."

4. In the adjudged decision in *Hawkins, supra.* at 415 citing the holding of *State v. Spaulding*, 72 N.W. 288, 291 (Sup. Ct. Iowa 1897), the distinction of a "position", i.e. mere employee is explicated from an [public] officer, to wit:

"A **position**, the **duties** of which * * * **can be changed at the will of the superior,** * * * is not an office, but a mere employment, and the incumbent is not an officer, but a **mere employee**." *[Emphasis added]*

5. And further, in the adjudged decision of *Hawkins, supra.*, at 417 explicating when a "position" is created not by force of law, but by a contract of employment, it isn't an "office", "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office."

6. A "public Officer" as distinguished from an "employee" must be invested by law with a portion of the state's sovereignty for the public benefit largely independent of the control of others and authorized to exercise functions either of executive, legislative, or judicial character. See *State Ex rel. Newman v. Skinner*, 191 N.E. 127, 128 (Sup. Ct. Ohio 1934); *City of Groves v. Ponder*, 303 S.W. 485, 488 (Tex. Civ. App. 1957); *State ex rel. Milburn v. Pethtel*, 90 N.E.2d 686, 689 (Sup. Ct. Ohio 1950); *Dunbar v. Brazoria County*, 224 S.W.2d 738, 740 (Tex. Civ. App. 1949); *Application of Barber*, 100 N.Y:.S.2d 668, 670 (Sup. Ct. Albany County, N.Y. 1951); *Francis v. Iowa*, 98 N.W.2d 733, 735, 736 (Sup. Ct. Iowa); *State ex rel. Dunn v. Ayers*, 113 P.2d 785, 787 (Sup. Ct. Mont. 1941).

**B. Means**

1. In *Verbie v. Morgan Stanley Smith Barney, LLC*, 148 F.Supp.3d 644, 651 (E.D.Tenn. 2015) "*See* 15 U.S.C. § 78u-6(a) (noting that the definition "shall apply" throughout the section); *see also Burgess v. United States*, 553 U.S. 124, 131 n. 3 (2008) (describing a **definition** that **uses** the term **"means"** as **exclusive** and a definition that uses that term **"includes"** as **nonexclusive**)." * * * @ 656 "This conclusion is fortified by the fact that when an **exclusive definition is intended the word 'means' is employed**". In *Burgess v. United States*, 553 U.S. 124, 131 n. 3 (2008) ""[T]he word **'includes'** is usually a term of enlargement, and not of limitation." 2A Singer § 47:7, p. 305 (SOAe internal quotation marks omitted). Thus "[a] term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning ... than where"—as in § 802(44)—"the definition declares what a term 'means.' " *Ibid*. See also *Groman v. Commissioner,* 302 U.S. 82, 86 (1937) "[W]hen an **exclusive definition is intended the word 'means' is employed**, ... whereas here the word used is 'includes."

2. In *Groman v. Commissioner*, 302 U.S. 82, 86 (1937) "This conclusion is fortified by the fact that when an **exclusive definition is intended the word 'means' is employed."** See also *In re Barnet*, 737 F.3d 238, 248 (2nd Cir. 2013); *Verbie v. Morgan Stanley Smith Barney*, LLC, 148 F.Supp.3d 644, 653 (E.D.Tenn. 2015).

3. In *United States Navy-Marine Corps Court of Military Review v. Cheney*, 29 M.J. 98, 103 (C.M.A. 1989) "Where Congress intended a more **exclusive definition**, it used the word **"means,."** In *State v. Begay*, 225 P.3d 108, 111 (App.Ct.Ore. 2010). In *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 156 (2nd Cir. 2015) *see also United States v.*

Complaint—Case: 3:19-cv-99                    8

*DiCristina,* 726 F.3d 92, 99 (2d Cir.2013) (quoting *Groman v. Commissioner,* 302 U.S. 82, 86 (1937) ("When an **exclusive definition is intended the words means is employed.**")). See also *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") * * * "[W]hen an **exclusive definition is intended the word 'means' is employed....")"**

4. In *Haeger Potteries v. Gilner Potteries,* 123 F.Supp. 261, 267-268 (S.D.Cal. 1954) "Use of the phrase 'shall mean and include' indicates that the **statutory definition** was not intended to be restrictive or **exclusive.** *Athens Lodge No. 70 v. Wilson,* 1953, 117 Cal.App.2d 322, 255 P.2d 482."

5. In *Stenberg v. Carhart,* 530 U.S. 914, 942 (2000), to wit:

> **When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.** *Meese v. Keene,* 481 U.S. 465, 484–485, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) ("**It is axiomatic that the statutory definition of the term excludes unstated meanings of that term**"); *Colautti v. Franklin,* 439 U.S., at 392–393, n. 10, 99 S.Ct. 675 ("**As a rule, 'a definition which declares what a term "means" ... excludes any meaning that is not stated'** "); *Western Union Telegraph Co. v. Lenroot,* 323 U.S. 490, 502, 65 S.Ct. 335, 89 L.Ed. 414 (1945); *Fox v. Standard Oil Co. of N. J.,* 294 U.S. 87, 95–96, 55 S.Ct. 333, 79 L.Ed. 780 (1935) (Cardozo, J.)

6. See also *Burgess v. United States*, 553 U.S. 124, 130 (2008) citing *Colautti, ibid; McNamara v. Nomeco Bldg. Specialties, Inc.,* 26 F.Supp.2d 1168, 1174 (D.Minn. 1998) " In ascertaining the Intent of Congress from a plain reading of a statute, it is fundamental that " 'a statute should be interpreted so as not to render one part

inoperative.' " *Mountain States Tel & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, (1985), quoting *Colautti v. Franklin,* 439 U.S. 379, 392 (1979).

7. In *Colautti v. Franklin*, 439 U.S. 392 n10 (1979) **"As a rule, 'a definition which declares what a term "means"... excludes any meaning that is not stated'."**

8. In *Western Union Telegraph Co. v. Lenroot,* 323 U.S. 490, 502, (1945) "Of course statutory definitions of terms used therein prevail over colloquial meanings."

9. In *Fox v. Standard Oil Co. of New Jersey*, 294 U.S. 87, 95 (1935) "In such circumstances definition by the average man or even by the ordinary dictionary with its studies enumeration of subtle shades of meanings is not a substitute for the definition set before us by the law makers with instructions to apply it to the exclusion of all others." In *Price v. Commissioner of Revenue*, 1989 WL 158198, *3 (Minn.Tax Ct. 1989) "Moreover, where a statutory definition begins by stating what a defined term "means" rather than "includes," the definition excludes any meaning not specifically stated. *Colautti v. Franklin,* 439 U.S. 379, n. 10, (1979); *Meese v. Keene,* 481 U.S. 465, (1987)."

**a. "Term"**

1. In Black's 4th Law Dictionary, 1968, pg. 1639 "**Term**  A word or phrase, an expression; particularly one which possesses a **fixed and known meaning** in SOAe science, art, or professions."

2. In Webster's Third New International Dictionary Unabridged 1993, pg. 2358 "**Term.** A word or expression that has a **precisely limited meaning** in SOAe uses or is peculiar to a science, art, profession, trade or special subject <technical ~> <**legal** ~>."

3. In Funk & Wagnalls New Standard Dictionary Unabridged 1941, pg. 2486

**Term**, to wit:

**1.** A word or expression used to **express or designate SOAe fixed or definite thing**; a **word having a limited and specific meaning**, naming and characterizing SOAe particular object, quality, state, or the like; especially, a technical word or expression, as in the sciences, arts, trades, and the like; as, the *term* man; chemical *terms*; assumpsit is a law *term*.
\* \* \*

**3.** *Logic.* A word, or a combination of words, such as may be the **subject or the predicate** of a proposition.
\* \* \*

In **logic** a *term* is **one of the essential members of a proposition**, the boundary of statement in SOAe one direction. This in general use *term* is more restricted than *word, expression,* or *phase; a term* in a word that **limits meaning to a fixed point of statement** or **to a special class of subjects**; as, when we speak of the definition of *terms*, that is of the key-*words* in any discussion or we say that is a legal or scientific *term*.
\* \* \*

**3(b)(2).** One of the three component elements of the syllogism, each of which is used twice. The **middle term** is the term through comparison of the other terms with which the conclusion embodying their agreement is reached. The **major term** is the predicate of the conclusion, and is compared with the middle term in the major premise. The **minor p=term** is the subject of the conclusion, and is compared with the middle term in the minor premise.
See Syllogism—Complete *term*, a term composed of two or more terms united so as to qualify each other and form a new term.
**Common term. 1.** A designation given to things having a set of common characteristics. **Complete term.** A term composed of two or more terms united so as to qualify each other and form a new term.

4. "**Term**" in *Porter v. Mapleton Elec. Light Co.* 183 N.W. 803, 805

(Sup.Ct.Iowa 1921), to wit:

To "**define**" a **term** is to state its connotation or **to enumerate the attributes** which it implies, and **it must take account of the whole class to which it belongs and nothing but the class**. A "**definition**," then, is such a description of the thing defined, **including all essential elements and excluding all nonessential, as to distinguish it from all other things and classes.**

### C. Unambiguous Statues

#### a. Supreme Court of the United States.

1. In *Jimenez v. Quarterman*, 555 U.S. 113, 113 (2009) it **held "This Court must enforce plain statutory language according to its terms**. See, *e.g.*, *Larmie V. United States Trustee*, 540 U.S. 526, 534 (2004), *ibid @ 118*, **"It is well established that, when the statutory language is plain, we must enforce it according to its terms.** See, *e.g., Dodd v. United States,* 545 U.S. 353, 359, 125 (2005); *Lamie, supra,* at 534, 124 S.Ct. 1023; *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, (2000); *Caminetti v. United States,* 242 U.S. 470, 485, (1917)."

2. In *Wyeth v. Levine*, 555 U.S. 555, 600 (2009) "This Court has repeatedly stated that when statutory language is plain, it must be enforced according to its terms. See *Jimenez v. Quarterman,* 555 U.S. 113, (2009); see also, *e.g., Dodd v. United States,* 545 U.S. 353, 359, (2005); *Lamie v. United States Trustee,* 540 U.S. 526, 534, (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, (2000).

3. In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240,241 (1989) "Rather, **as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."**

4. In *Howe v. Smith*, 452 U.S. 473, 480 (1981) "**As in every case involving the interpretation of a statute, analysis must begin with the language employed by Congress.** *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 702, 66 L.Ed.2d

633 (1981); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60

L.Ed.2d 931 (1979)."

> It was **held** in *Rubin v. United States*, 449 U.S. 424, 430 (1981), to wit:
> **When we find the terms of a statute unambiguous, judicial inquiry is**
> **complete, except "in 'rare and exceptional circumstances.' "** *TVA v.*
> *Hill*, 437 U.S. 153, 187, n. 33, 98 S.Ct. 2279, 2298, n. 33, 57 L.Ed.2d 117
> (1978) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75
> L.Ed. 156 (1930)). Accord, *Aaron v. SEC*, 446 U.S. 680, 695, 100 S.Ct.
> 1945, 1955, 64 L.Ed.2d 611 (1980); *Ernst & Ernst v. Hochfelder, supra*, at
> 214, n. 33, 96 S.Ct., at 1391 n. 33.

> 5. See *CSX Transp., Inc. v. Georgia State Bd. Of Equalization*, 552 U.S. 9, 20

(2007); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992); *King v. St.*

*Vincent's Hosp.*, 502 U.S. 215, 222 N14 (1991); *Adams Fruit Co., Inc. v. Barrett*, 494

U.S. 638, 643 (1990); *Crandon v. United States*, 494 U.S. 152, 168 (1990); *United Ass'n*

*of Journeymen & Apprentices of Plumbing and Pipefitting Industry of U.S. & Canada*

*AFL-CIO, et al., v. Local 334, United Ass'n of Journeymen and Apprentices of the*

*Plumbing & Pipefitting Industry of the United States and Canada, et al.*, 452 U.S. 615,

628 (1981); *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008); *Desert*

*Palace, Inc. v. Costa*, 5239 U.S. 90, 98 (2003); *Demarest v. Manspeaker*, 498 U.S. 184,

190 (1991).

> **b. Congressional Intent.**

> 1. In *Ardestani v. I.N.S.*, 502 U.S. 129, 135, 136 (1991), to wit:

> The **"strong presumption" that the plain language of the statute**
> **expresses congressional intent is rebutted only in "rare and exceptional**
> **circumstances,"** *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698,
> 701, 66 L.Ed.2d 633 (1981), **when a contrary legislative intent is clearly**
> **expressed.** *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432, n. 12, 107 S.Ct.
> 1207, 1213, n. 12, 94 L.Ed.2d 434 (1987); *Consumer Product Safety*

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 20 of 104

*Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In this case, the legislative history cannot overcome the strong presumption " 'that the legislative purpose is expressed by the ordinary meaning of the words used.' " *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)(quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962)).

2. In *Burlington Northern R. Co. v. Oklahoma Tax Com'n,* 481 U.S. 454, 461 (1987), to wit:

**Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but "[i]n the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.' "** *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Unless exceptional circumstances dictate otherwise, **"[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete."** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

3. In *United States v. James*, 478 U.S. 597, 606 (1986), to wit:

We have repeatedly recognized that **"[w]hen ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except 'in "rare and exceptional circumstances." ' "** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (citations omitted). **In the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive."** *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

### c. Federal Rules of Civil Procedure.

1. In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989), to wit:

**We give the Federal Rules of Civil Procedure their plain meaning,** *Walker v. Armco Steel Corp.,* 446 U.S. 740, 750, n. 9, 100 S.Ct.

Complaint—Case: 3:19-cv-99          14

1978, 1985 n. 9, 64 L.Ed.2d 659 (1980), **and generally with them as with a statute, "[w]hen we find the terms ... unambiguous, judicial inquiry is complete,"** *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). The specific text of Rule 11 at issue here is the provision that requires a court, when a paper is signed in violation of the Rule, to **"impose upon the person who signed it ... an appropriate sanction."**

### d. 9th Circuit.

1. In *Reeb v. Thomas,* 636 F.3d 1224, 1226, 1227 (9th Cir. 2011), to wit:

In determining whether 18 U.S.C. § 3625 precludes judicial review under the APA of individualized RDAP determinations, we first consider the **plain meaning of the statute's text.** *United States v. Nader,* 542 F.3d 713, 717 (9th Cir.2008) (citing *Jonah R. v. Carmona,* 446 F.3d 1000, 1005 (9th Cir.2006)). **When the words of a statute are unambiguous " 'judicial inquiry is complete.' "** *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

There is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621–3624.

2. In *In re Price,* 353 F.3d 1135, 1140, 1141 (9th Cir. 2004), to wit:

In construing a statute, **"we begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.' "** *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). If the statutory language is unambiguous, then our "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

### e. Federal Circuit.

3. In *Wyeth v. Kappos,* 591 F.3d 1364, 1369 (Fed.Cir. 2010), to wit:
**"As always, the 'starting point in every case involving construction of a statute is the language itself.' "** *United States v. Hohri,* 482 U.S. 64, 68, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) (quoting *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). **When the terms of a**

statute are unambiguous, "judicial inquiry is complete, except 'in rare and exceptional circumstances.' " *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). "**Absent a clearly expressed legislative intention to the contrary, [the statute's plain] language must ordinarily be regarded as conclusive.**" *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

4. In *Strategic Housing Finance Corp. of Travia County v. United States,* 608 F.3d 1317, 1324 (Fed. Cir. 2010) ""[W]hen the statutory language is plain, we must enforce it according to its terms. *Jimenez,* 129 S.Ct. at 685.""

### e. Inquiry Ceases if the Statutory Language is Unambiguous.

#### 1. Supreme Court of the United States.

1. In *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002), "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent" (Internal quotation marks omitted."

*Ibid.* @ 461, 462 (2002), to wit:

**Our role is to interpret the language of the statute enacted by Congress.** This statute does not contain conflicting provisions or ambiguous language. Nor does it require a narrowing construction or application of any other canon or interpretative tool. "**We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'** " *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)) (citations omitted). **We will not alter the text in order to satisfy the policy preferences of the Commissioner.** These are battles that should be fought among the political branches and the industry. **Those parties should not seek to amend the statute by appeal to the Judicial Branch.**

2. See also *Millbrook v. United States,* 133 S.Ct. 1441, 1446 (2013), to wit:

*Jimenez v. Quarterman*, 555 U.S. 113, 118, 129 S.Ct. 681, 172 L.Ed.2d 475 (2009) ("**[W]hen the statutory language is plain, we must enforce it according to its terms**"); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ("**The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent**" (internal quotation marks omitted)).

### 2. 9th Circuit.

1. In *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008), to wit:

**The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.**" *Barnhart v. Sigmon Coal Co.*, 534 US. 438 (2002) Internal citation omitted. The Supreme Ccorut has further noted that "[i]f a court, employing traditional tools of statutory construction, ascertains that **Congress had an intention on the precise questions at issue, that the intention is the law and must be given effect.**" *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984).

2. See also *Pacific Maritime Ass'n v. Local 63, Intern. Longshoremen's and Warehouseman's Union*, 198 F.3d 1078, 1081 (9th Cir. 1999).

3. In *Golden West Refining Co. v. Suntrust Bank*, 538 F.3d 1233, 1238 (9th Cir. 2008), to wit:

**We must give effect to the language of a statute if it is plain and unambiguous.** *See Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir.2008) (" 'The [interpretive] inquiry ceases **if the statutory language is unambiguous and the statutory scheme is coherent and consistent.**' " quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)); *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal.4th 358, 369, 64 Cal.Rptr.3d 434, 165 P.3d 154 (2007) ( "If the language of a statute is clear and unambiguous there is no need for construction, **nor is it necessary to resort to indicia of the intent of the Legislature.**" (internal quotation marks, alteration, and citation omitted)); *Marsh v. City of Richmond*, 234 Va. 4, 11, 360 S.E.2d 163 (1987) (**"[I]f statutory language is not ambiguous but has a usual and plain meaning, rules of construction do not apply and resort to legislative history is both unnecessary and improper. Instead, we determine legislative intent from the plain meaning of the words used.**").

Complaint—Case: 3:19-cv-99     17

### 3. Federal Circuit.

1. In *Transcrpital Leasing Associates, 1990-II, L.P. v. United States*, 398 F.3d 1317, 1320, 1321 (Fed.Cir. 2005) "The **inquiry ceases** if the **statutory language is unambiguous** and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal citations and quotations omitted)."

### D. Legislative History

1. In *Blum v. Stenson*, 465 U.S. 886, 896 (1984) "Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and **then to the legislative history** if the statutory language is unclear." See also *Toibb v. Radloff,* 501 U.S. 157, 162 (1991); *Public Employees Retirement system of Ohio v. Betts*, 492 U.S. 158, 185 (1989); *Oklahoma v. New Mexico*, 501 U.S. 221, 234 FN5 (1991).

2. In *Heinzelman v. Secretary of Health and Human Services*, 98 Fed.Cl. 808, 816 (2011), to wit:

> **Statutory interpretation begins with the plain meaning of the language of the statute.** *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 547, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978) ("The starting point in any case involving construction of a statute is the language itself."). **If "the language is clear and fits the case, the plain meaning of the statute will be regarded as conclusive."** *Norfolk Dredging Co. v. United States,* 375 F.3d 1106, 1110 (Fed.Cir.2004). **"When the language of the statute is not clear, canons of construction may be used to determine the meaning of the statute, if possible."** *Cherokee Nation of Okla. v. United States,* 73 Fed.Cl. 467, 476 (2006). One such fundamental canon of statutory construction is that **"the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."** *Davis v. Mich. Dep't of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d

891 (1989). Additionally, **if the statutory language is unclear, the Court will look to the legislative history of the statute.** *See, e.g., Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Allen v. Principi,* 237 F.3d 1368, 1375 (Fed.Cir.2001).

3. See also *Adams v. United States,* 65 Fed.Cl. 217, 225 (U.S.Fed.Cl. 2005).

4. In *Zavislak v. United States,* 29 Fed.Cl. 525, 528-529, (U.S.Fed.Cl.1993), to

wit:

> Indeed, if a **statute is clear and unambiguous** on its face, "**that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.**" *Sullivan v. Stroop,* 496 U.S. 478, 480, 110 S.Ct. 2499, 2502, 110 L.Ed.2d 438 (1990) (quoting *K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)); *see, e.g., Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Darsigny v. Office of Personnel Management,* 787 F.2d 1555, 1557 (Fed.Cir.1986). However, when a statute can be read in more than one way, or when a statute is ambiguous on its face, **courts will resort to the legislative history to provide a meaning consistent with what Congress intended.** *Patterson v. Shumate,* 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) ("**courts appropriately may refer to a statute's legislative history to resolve statutory ambiguity**"); *Toibb v. Radloff,* 501 U.S. 157, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("**we first look to the statutory language and then to the legislative history if the statutory language is unclear**"); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

5. In *Osage Tribe of Indians of Oklahoma v. United States,* 68 Fed.Cl. 322

(U.S.Fed.Cl. 2005), to wit:

> It is a cardinal rule of statutory construction that **"no clause, sentence, or word shall be superfluous, void, or insignificant."** *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ( **"It is our duty to give effect, if possible, to every clause and word of a statute ...."**) (internal citations omitted); *James v. Santella,* 328 F.3d 1374, 1381 (Fed.Cir.2003) (acknowledging "**the general rule against construing a statute in a way that renders one of its parts inoperative**");

Complaint—Case: 3:19-cv-99                    19

2A *Sutherland: Statutes and Statutory Construction* § 46:06 (Norman J. Singer ed., 6th ed.2000).

6. In *Schwegmann Bros, et al. v. Calvert Distillers Corp*, 341 U.S. 384, 395 (1951), "Resort to legislative history is only justified where the **face of the Act is inescapably ambiguous**, and then I think we should not go beyond Committee reports, which presumably are well considered and carefully prepared."

## E. Actual Notice

1. Gladden did give **Actual Notice** including the following to **REIGH** multiple times and did demand **REIGH's** Oath of Office as a public Officer;

2. And, Gladden demanded **REIGH's** Civil Commission of being appointed by the Governor of Alaska mandated by Article IV Section 5 and ©AS 39.05.035[10];

3. And, Gladden demanded **REIGH's** Authority for the "**Third Judicial District**," wherein Gladden only filed into the "**Third District**" which **REIGH** ignored;

4. And, Gladden demanded **REIGH**'s authority to filed Orders and Judgments only in the "**Third Judicial District**;" and, Gladden demanded Authority for **REIGH** to issue Orders only in "**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**" when initially and constitutional Courts of Alaska which Gladden filed being the "**Superior Court of Alaska.**"

---

[10] © AS **Sec. 39.05.035 Commission of office.** After each appointment of a state officer, the governor shall execute a commission, which states that the person to whom it is issued is appointed and sets out the office to and the term for which the officer is appointed. The attorney general shall prescribe the form of the commission. (ß 11-1-5 ACLA 1949) **Revisor's notes.** -- Formerly AS 39.05.120. Renumbered in 1984.

5. In *Jay E. Hayden Foundation, et al., v. First Neighbor Bank, N.A.*,610 F.3d

382, 385 (7th Cir. 2010), to wit:

> **A defendant who prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint that will withstand dismissal is forbidden, under the rubric of equitable estoppel, to plead the statute of limitations for the period in which the inquiry was thwarted.** *Beckel v. Wal-Mart Associates, Inc.,* 301 F.3d 621, 622 (7th Cir.2002); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450-52 (7th Cir.1990); see also *Rotella v. Wood, supra,* 528 U.S. at 561, 120 S.Ct. 1075.

6. In *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 622 (7th Cir. 2002), to

wit:

> The doctrine of equitable estoppel, when invoked as a defense to the statute of limitations, requires the plaintiff to show that the defendant took steps deliberately to prevent the plaintiff from bringing a timely suit, **whether by concealing the existence of the plaintiff's claim** or by promising not to plead the statute of limitations. *Glus v. Brooklyn Eastern District Terminal,* **359 U.S. 231**, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *Hedrich v. Board of Regents,* 274 F.3d 1174, 1182 (7th Cir.2001); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450-52 (7th Cir.1990); *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 580-81 (D.C.Cir.1998).

7. In *Groseth v. Ness*, 421 P.2d 624, 630 (Sup.Ct.Ak. 1966), to wit:

> Both federal and state authorities have established that the doctrine of equitable estoppel is available as a bar to inequitable reliance upon statutes of limitations. **FN16.** In *Glus v. Brooklyn E. Dist. Terminal*, **FN17,** the Supreme Court of the United States characterized this doctrine of estoppel in the following manner:

> As Mr. Justice Miller expressed it * * * 'The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up

and relied on to defeat the ends of justice or establish a dishonest claim.'
**FN18.**

> **FN16.** See Annot., 3 L.Ed.2d 1886-1887 (1959), where federal precedents giving recognition to the doctrine of equitable estoppel as a bar to reliance upon statutes of limitations are collected. In Annot., 24 A.L.R.2d 1413 (1952), at 1417-18, state authorities are collected. See also *Demmert v. City of Klawock*, 199 F.2d 32, 34 (9th Cir. 1952), for an instance of pre-statehood recognition of this doctrine.
> **FN17.** *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959).
> **FN18.** See also the concurring opinion of Judge Magruder in *Bergeron v. Mansour*, 152 F.2d 27, 33 (1st Cir. 1945).

8, In *SD3 II LLC v. Black & Decker (U.S.) Incorporated*, 888 F.3d 98, 108-109, 112 115-116 (4ᵗʰ Cir. 2018), to wit:

> **Actual notice** is a straightforward concept to which we have long applied the standard that the plaintiff knew the " 'fraudulently concealed facts, which are the basis of a claim.' " *Go Comput.*, 508 F.3d at 178 (quoting *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) ); *accord Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (holding that to prove fraudulent concealment the plaintiff must demonstrate that the defendant "fraudulently concealed *facts that are the basis of the plaintiff's claim*" (emphasis added) ). Thus, a plaintiff is on **actual notice** if it has "**sufficient facts to identify a particular cause of action.**" *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Mere "**hints, suspicions, hunches or rumors**" are not enough to put a plaintiff on **actual notice.** *Hobson*, 737 F.2d at 35. Instead, the plaintiff must be able to plead the factual allegations necessary to withstand a motion to dismiss, including "both the injury that g[ave] rise to [its] claim and the injurer." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010).
>
> \* \* \*
>
> [112] **Actual notice**" means notice of **sufficient facts**, "which are the **basis of a claim,**" *Go Comput.*, 508 F.3d at 178, including identification of the injury, the injurer, and the type of injury
>
> \* \* \*
>
> [155-166] For more than 40 years, this Court has been unwavering in our articulation of what **actual notice** requires: **awareness of sufficient facts to state a claim.** *See Go Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170,

178 (4th Cir. 2007) (explaining that antitrust plaintiff may not invoke fraudulent concealment if he has **discovered "facts which are the basis of a claim"**); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir. 1995) ("**facts that are the basis of the plaintiff's claim**"); *116 *Pocahontas Supreme Coal Co. v. Bethlehem Steel,* 828 F.2d 211, 218 (4th Cir. 1987) ("**facts which are the basis of a claim**"); *Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.,* 546 F.2d 570, 574 (4th Cir. 1976) ("**facts which are the basis of his cause of action**").

It is axiomatic that the "facts which are the basis of a claim" or "cause of action" are those which enable a party to bring a valid suit. *See* Cause of Action, *Black's Law Dictionary* (10th ed. 2014) ("A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to *obtain a remedy in court from another person.*" (emphasis added) ). Thus, as the majority opinion correctly explains, for a plaintiff to be on **actual notice**, it "**must be able to plead the factual allegations necessary to withstand a motion to dismiss.**" *Ante* at 109.

This rule is consistent with the approach taken by our sister circuits. *See, e.g., Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 385 (7th Cir. 2010) ("A defendant who prevents a plaintiff from obtaining information that he needs *in order to be able to file a complaint that will withstand dismissal* **is forbidden** ... to plead the statute of limitations for the period in which the inquiry was thwarted." (emphasis added) ); *Conmar Corp. v. Mitsui & Co.,* 858 F.2d 499, 504 (9th Cir. 1988) (**holding** that **actual notice** requires "**knowledge [that] would ... justify the filing of a complaint**"); *Hobson v. Wilson,* 737 F.2d 1, 35 (D.C. Cir. 1984) (holding that **actual notice** requires "**awareness of sufficient facts to identify a particular cause of action**" and "**to file suit**"), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993).

And this long-standing and widely embraced rule—that a plaintiff is on **actual notice *only* when it is aware of sufficient facts to state a claim that withstands a motion to dismiss**—balances the interests served by the fraudulent concealment doctrine: obliging plaintiffs to file suit in a timely fashion once they are aware, or should be aware, of facts sufficient to state a claim that can withstand a motion to dismiss, while preventing wrongdoers from avoiding liability by concealing their wrongdoing. *See Marlinton,* 71 F.3d at 122 ("The purpose of the fraudulent concealment tolling doctrine is to prevent a defendant from concealing a fraud, or ... committing a fraud in a manner that concealed itself until the defendant could plead the statute of limitations to protect it." (internal quotation

Complaint—Case: 3:19-cv-99          23

marks omitted) ). To that end, any rule that would treat a plaintiff as being on **actual notice** under a standard more favorable to defendants—in situations when the plaintiff lacks knowledges of sufficient facts to state a claim that would withstand dismissal—would wrongly "creat[e] the anomalous situation of *requiring persons to file suit on a hunch*, only to be dismissed for failure to state a claim." *Hobson*, 737 F.2d at 39 (emphasis added). As the majority opinion correctly states, "[m]ere 'hints, suspicions, hunches or rumors' are not enough to put a plaintiff on **actual notice**." *Ante* at 109 (quoting *Hobson*, 737 F.2d at 35). Accordingly, a plaintiff is on **actual notice** when it knows of "enough factual information from which [it] could plead [its] cause of action for Rule 12(b)(6) purposes." *Id.* at 112.

9. In *Perry v. O'Donnel*, 749 F.2d 1346 (9ᵗʰ Circuit 1984) "[A]ctual notice means that which a person actually **knows or could discover by making a reasonable investigation**. *See United States v. Certain Parcels of Land,* 85 F.Supp. at 1002 n. 13."

10. In *United States v. Certain Parcels of Land Situate in San Bernardino County*, 85 F.Supp 986, 1002 FN13 (9ᵗʰ Cir. 1949), to wit:

> **FN13** In *Burdine v. White*, 173 Ky. 158, 190 S.W. 687, 689 (Ct.App.Ky. 1917); it is said that notice is actual, constructive, implied and presumptive, while actual notice is susceptible of subdivisions such as information which of itself gives actual notification and that which, if prosecuted with ordinary diligence, would furnish information of the fact. Notice is actual or constructive. **Actual notice is that which consists in express information of a fact, and constructive notice is that which is implied by law.** *Prouty v. Davin*, 50 P. 380, 381 (Sup.Ct.Ca. 1897).

## F. Requirement of an "Office" Established by the Legislature or the Constitution otherwise there is No *"De Jure Officer"* or *"De facto Officer."*

1. In *Ocean Beach Heights v. Brown-Crummer Inv. Co.*, 302 U.S. 614, 619 (1938), to wit:

> **In the absence of a law authorizing the creation of a municipality de jure there can be none de facto.** McQuillan, Municipal Corporations, 2d Ed., s 175; City of Guthrie v. Wylie, 6 Okl. 61, 66, 55 P. 103 (Sup.Ct.Terr.Okla 1896); *Norton v. Shelby County,* 118 U.S. 445 (1886); Shapleigh v. San Angelo, 167 U.S. 646, 655, (1897); *Tulare Irrigation*

Complaint—Case: 3:19-cv-99          24

*District v. Shepard*, 185 U.S. 1, 13, (1902); *United States v. Royer*, 268 U.S. 394, 397, 45 S.Ct. 519, 520, 69 L.Ed. 1011; Evenson v. Ellingson, 67 Wis. 634, 646, 31 N.W. 342; Duke v. Taylor, 37 Fla. 64, 77, 19 So. 172, 31 L.R.A. 484, 53 Am.St.Rep. 232.

2. In *Case of Tweed*, 83 U.S. 504.518-519 (1872), to wit:

**Neither an officer nor an agent can properly be said to have acted under color of a law which neither gave him nor any other person authority to do the act in question, nor can an officer be said to have acted under the authority of his office unless <u>he has SOAe appearance of right to it and is in possession and acting in that capacity</u>, <u>as the acts of a mere intruder or usurper of an office, without any colorable title, are undoubtedly wholly void both as to individuals and the public</u>. <u>FN12</u> Whenever a person sued sets up a defense that he was an officer or an employée of the government acting under color of law, it plainly <u>devolves upon him to show that the law which he invokes authorized the act in question to be done</u>, and that he acted in good faith.**

**FN12.** *Plymouth v. Painter*, 17 Connecticut, 593 (Sup.Ct.ErrorsConn. 1846); *People v. White*, 24 Wendell, 525; *Carleton v. People*, 10 Michigan, 258 (Sup.Ct.Mich. 250, 259 (1862); *People v. Hopson*, 1 Denio, 579 (Sup.Ct.N.Y 1845).

3. In *Norton v. Shelby County*, 118 U.S. 425, 445 (1886) "As said by Mr. Justice Manning, of the supreme court of Michigan, in *Carleton v. People*, 10Mich. 269:

**"[W]here there is no office there can be no officer *de facto*, for the reason that there can be none *de jure*."**

4. Cases citing *Norton v. Shelby County*, 118 U.S. 445 (1886)—See *United States v. United States Coin and Currency*, 401 U.S. 715, 741 (1971); *Linkletter v. Walker*, 381 U.S. 618, 623 (1965); *United States v. Royer*, 268 U.S. 394, 397 (1925) "Of course, there can be no incumbent *de facto* of an office if there be no office to fill. *Norton v. Shelby County*, 118 U.S. 425, 445 (1886);" *Chicago, I. & L.R. Co. v. Hackett*, 228 U.S. 559, 566 (1913) "That act was therefore as inoperative as if it had never been passed, for an

unconstitutional act is not a law, and can neither confer a right or immunity nor operate to

supersede any existing valid law. *Norton v. Shelby County*, 118 U. S. 425, 442, (1886);

*Ex parte Siebold,* 100 U. S. 371, 376, (1879). *McClaughry v. Deming*, 186 U.S. 49, 64

(1902) "The officers composing the **alleged court were not** *de facto* **officers therefore,**

**for there was no court,** and **therefore** **it could not have** *de facto* **officers.** *Norton v.*

*Shelby County,* 118 U.S. 445 (1886);" *Tulare Irr. Dist. v. Shepard*, 185 U.S. 1, 14

(1902); *Shapleigh v. City of San Angelo*, 167 U.S. 646, 658 (1897); In *United States v.*

*Royer*, 268 U.S. 394, 397 (1925), **"Of course, there can be no incumbent de facto of an**

**office if there be no office to fill.** *Norton v. Shelby County,* 118 U.S. 445 (1886)."

### a. 1st Circuit Court of Appeals Citing *Norton v. Shelby County.*

1. In *Annoni v. Bias Nadal's Heirs*, 94 F.2d 513, 515 (1st Cir. 1938) "We think he

was not. In order that there may be a de facto judge, there must be a de jure office to be

filled. *Norton v. Shelby County,* 118 U.S. 445 (1886); *United States v. Royer*, 268 U.S.

394, 397, (1925); *Anniston Mfg. Co. v. Davis*, 87 F.2d 773, 780 (5th Cir. 1937).

### b. 8th Circuit Court of Appeals Citing *Norton v. Shelby County*

1. In *Speer v. Board of Com'rs of Kearney County*, 88 F. 749, 764 (Cir.Ct.of U.S.

1898); In *Chicot County Drainage Dist. v. Baxter State Bank*, 103 F.2d 847, 848 (1939),

to wit:

> **If the decree was void, it could not be successfully pleaded as res**
> **judicata.** *McDonald v. Mabee*, 243 U.S. 90,(1917). The act which
> purported to confer jurisdiction, **being unconstitutional, was void and in**
> **legal contemplation was inoperative.** *Chicago, I. & L.R. Co. v. Hackett*,
> 228 U.S. 559, 566 (1913); *Norton v. Shelby County*, 118 U.S. 445 (1886);
> *Security Savings Bank v. Connell*, 200 N.W. 8, (Sup.Ct.Iowa 1924),
> *Servonitz v. State*, 113 N.W. 277 (Sup.Ct.Wis. 1907); 1 Black on

Judgments, Sec. 216.

2.  See also *Rodgers v. Mabelvale Extension Road Imp. Dist. No. 5 of Saline County*, 103 F.2d 844 (1939); *Chicot County Drainage Dist. v. Baxter State Bank*, 103 F.2d 847, 848 (8th Cir. 1939)

### c. 9th Circuit Court of Appeals Citing *Norton v. Shelby County*.

1.  In *United States v. Nunoz-Flores*, 863 F.2d 654, 663, (9th Cir. 1988), to wit:

As such, the special assessment is "not a law; it confers no rights; it imposes no duties; it affords no protection; **it creates no office**; it is, in legal contemplation, **as inoperative as though it had never been passed.**" *Norton v. Shelby County,* 118 U.S. 445 (1886).

### d. State of Alaska

2,  In *State ex rel. Tamminen v. City of Eveleth*, 249 N.W. 184, 186, (1933), to wit:

**The rule generally adhered to is that there can be no de facto officer unless there is a de jure office for him to fill.** *Norton v. Shelby County*, 118 U.S. 445 (1886); *Lang v. City of Bayonne*, 68 A. 90, 91 (Ct.Err.&App.N.J. 1907) * * * Where, however, there is no law or ordinance even attempting to create an office, or where the law or ordinance creating such an office has been held unconstitutional or has been repealed, no one can become an officer de facto by assuming to act in a wholly non-existing office. *In re Quinn, 46* N. E. 175 175 (Ct.App. N.Y 1897) "We think that here can be no de facto officer when there is no office to fill;" *Daniel v. Hutcheson*, 22 S.W. 278, 281 (Ct.CivilApp.Tx. 1893); *People v. Welsh*, 225 Ill. 364, 80 N. E. 313; *Gorman v. People*, 31 P. 335, 336 (Sup.Ct.Colo. 1892) "**But this rule presupposes the existence of an office *de jure*. There is no principle of law under which a *de facto* court can be sustained.** *Norton v. Shelby County*, 118 U.S. 445 (1886).

3.  See also *Lowe v. City of Boling Green*, 247 S.W.2d 386 (Ct.App.Ky. 1952);

### e. State of Massachusetts

1.  *In re Opinion of Justices*, 168 N.E. 536, 538 (Sup.Jud.Ct.Mass 1929), to wit:

It was said in *Ex parte Siebold*, 100 U. S. 371, 376, (1879) 'An

unconstitutional law is void, and is as no law.' In Norton v. Shelby County, 118 U. S. 425, 442, (1886) are found these words: '**An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.**' In *Chicago, Indianapolis & Louisville Railway v. Hackett*, 228 U. S. 559, 566 (1913) it was declared that a statute held to be unconstitutional was 'as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law.'

## f. State of North Carolina.

1. In *American Mfrs. Mut. Ins. Co. v. Ingram*, 271 S.E.2d 46 (Sup.Ct.N.C. 1980),

to wit:

It is a rule of statutory construction that a statute declared unconstitutional is void ab initio and has no effect. *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E.2d 749 (1953); *Idol v. Street,* 233 N.C. 730, 65 S.E.2d 313 (1951); *Sessions v. Columbus County*, 214 N.C. 634, 200 S.E. 418 (1939); State v. Williams, 146 N.C. 618, 61 S.E. 61 (1908). This rule was best stated in *Norton v. Shelby* County, 118 U.S. 425, 442, (1886), where Justice Field, speaking for the Court, said: "**An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.**"

2. See also *Idol v. Street*, 65 S.E.2d 313, 316 (Sup.Ct.N.C. 1950); *Debnam v. Chitty*, 43

S.E. 3, 9-10 (Sup.Ct.N.C. 1902);  *State v. Godwin*, 31 S.E. 221, 222 (Sup.Ct.N.C. 1898);

In *State v. Shuford*, 38 S.E. 808 (Sup.Ct.N.C. 1901), to wit:

"There can be no officer, either de jure or de facto, if there be no office to fill." *Carleton v. People*, 10 Mich. 250, 259 (Sup.Ct.Mich. 1862) "While there may be de facto officers, there can be no de facto office in a constitutional government," says the United States supreme court (Field, J.) in *Norton v. Shelby Co*., 118 U. S. at pages 441-449, 6 Sup. Ct., at pages 1125-1129, and 30 L. Ed., at pages 185-188. "**For the existence of a de facto officer, there must be an office de jure.**" In *Ex parte Snyder*, 64 Mo. 58, 62 (Sup.Ct.Mo. 1876), it was held that **a** *de facto* **officer presupposes a** *de jure* **office**, and, where the office of judge did not legally

exist, the acts of one acting under a commission as **judge were null and void.** "There can be no de facto officer when there is no office de jure," was held in Re *In re Hinkle,* 3 P. 531, 533 (Sup.Ct.Ks 1884)., and accordingly one held in custody by the judgment of one thus acting as a judicial officer was discharged on habeas corpus. Here, as already shown, there was no such officer as "judge of the Sixteenth judicial district,"

**g. Other Jurisdictions.**

1. In *Coquillard Wagon Works v. Melton,* 125 S.W. 291, 292 (Ct.App.Ky. 1910),

to wit:

> There is a radical and fundamental distinction between a **de facto office** and a **defacto officer.** The former cannot exist except in case of revolution, a complete overturning of constitutional authority, and the usurpation of all power of government by occupants exercising a force superior to the constitutional authorities. Such was decided in *Hildreth v. McIntire,* 1 J. J. Marsh. 206, 19 Am. Dec. 61 (Ct.App.Ky. 1829), where Judge Robertson said, interalia: "There might be under our Constitution, and there have been, **de facto officers**. But there never was and never can be under the present Constitution a **de facto office**."

2. In *Brown v. Hoblitzell,* 307 S.W.2d 739 (Ct.App.Ky. 1956) "[T]here can be no **de facto officer** where there is no legal office or court nor where a judicial office is **not recognized by the Constitution.** *Hildreth's Heirs v. Mcintire's Devisee,* 24 J.J. Marsh 206 (Ct.App.Ky. 1829); 30 Am.Jur."

3 See also *Lowe v. City of Bowling Green,* 247 S.W.2d 386, 388 (Ct.App.Ky. 1952); *Lile v. City of Powderly,* 612 S.W.2d 762, 764 (Ct.App.Ky. 1981); *Scheible v. Bacho,* 41 Ala. 423, 435 (Sup.Ct.Ala. 1868); *Thomas v. People, for Use of Joiner,* 107 Ill. 517, 520 (Sup.Ct.Ill. 1883) "[T]here can not be a *de facto officer* unless there is a *de jure office*,—in other words, there can not be such a thing as a **de facto office**. *Hildreth v. McIntire,* 1 J.J. Marsh. 206 (Ct.App.Ky. 1829)."; *Lebanon & Royalton Gravel Road*

*Co. v. Adair*, 85 Ind. 244, 247 (Sup.Ct.Ind. 1882); *School Dist. No. 25, Stafford County v. State*, 29 Kan. 57, 63 (Sup.Ct.Ks. 1882); *Pennywit v. Foote*, 27 Ohio St. 600, 640 (Sup.Ct.Ohio 1875); *State ex rel. Simmons v. John*, 81 Mo. 13, 15 (Sup.Ct.Missouri 1883);

4. In *Ayers v. Lattimer*, 57 Mo.App. 78, 83 (Ct.App.Mo. 1894) "The general rule unquestionably is that there can not be an officer *de facto*, where there is no office *de jure. Ex parte Snyder*, 64 Mo. 58; *State v. O'Brian*, 68 Mo. 153; *Jester v. Spurgeon*, 27 Mo. App. 477."

5. In *Welch v. Ste. Genevieve*, 29 F.Cas. 608, 610 (Cir.Ct.D.Missouri 1871), to wit:

> To say that an officer is **one de facto, when the office itself is not created or authorized by the legislature, is an political solecism, having no foundation in reason nor support in law.** *Decorah v. Bullis*, 25 Iowa, 12, 16 (Sup.Ct.Iowa 1868); *Hildreth's Heirs v. Mcintire's Devisee*, 24 J.J. March 206 (Ct.App.Ky. 1829); *People v. White*, 24 Wend. 520, 540.

> In *Brown v. O'Connell*, 36 Conn. 432 456 (Sup.Ct.Errors.Conn. 1870), to wit:

> The constitutional court of appeals **held** in the case of *Hildreth's Heirs v. M'Intire's Devisee*, 1 J. J. Marsh., 206, that although the new legislative tribunal "assumed the functions of judges, and clerks, and attempted to act as such, **their acts in that character were totally null and void, unless they had been regularly appointed under and according to the constitution.**" * * * "They were not the encumbents **of de jure or de facto offices, nor were they <u>de facto officers of de jure offices</u>. They had no official rights and powers.**

6. In *Walker v. Phoenix Ins. Co.* , 62 Mo.App. 209, 224 (Kan.City.Ct.App.Mo. 1895), to wit:

> [B]ecause his office, as a mineral spring town justice, had been abolished by the act of 1887 (Session Acts, 1887, p. 206), so that he was not a justice

at the time Bram made his certificate. After the repealing act of 1887 went into effect, the justice's office, to which Atrobus had been appointed, ceased to exist. **He was not thereafter a justice** *de facto,* **for the reason the law did not recognize such an office. There was no longer any legal office for him to fill.** *Ex parte Babe Snyder,* 64 Mo. 58; *State v. O'Bryan,* 68 Mo. 153; *Ayres v. Latimer,* 57 Mo. App. 79; *Jester v. Spurgeon,* 27 Mo. App. 477.

In *Ex parte Synder*, 64 Mo. 58, 62 (Sup.Ct.Mo. 1876), to wit:

But an officer of that description necessarily pre-supposes *an office* which the law recognizes. And a quite extensive research has failed to discover an instance where an incumbent has been held an officer *de facto,* unless there was a *legal office* to fill; and all the cases cited from our own reports were of that sort. * * * In relation to the third point, **the law is well settled, that if the petitioner has been committed by a court or person having** *absolutely no jurisdiction*, then the validity of the commitment may be **determined on** *habeas corpus*. (Hurd on Hab. Corp., 331 *et seq,* and cas. cit.)

7. Citing *Ex parte Synder*, 64 Mo. 58, 62 (Sup.Ct.Mo. 1876)—See *Kavanaugh v. Gordon*, 149 S.W. 587, 591 (Sup.Ct.Mo. 1912), "But an [de facto] officer of that description necessarily presupposes an officer which the law recognizes * * * unless there was a legal office to fill * * * the conviction of the petitioner was altogether *coram non judice*."; *State v. Butler*, 77 S.W. 560, 578 (Sup.Ct.Mo. 1903);

8. *In Ayers et al. v. Lattimer*, 57 Mo.App. 78, 78. 83 (St.LouisCt.App.Mo. 1894), to wit:

**There can not be an officer** *de facto* **where there is no** *de jure* **office to fill**. *Ex parte Snyder,* 64 Mo. 58, 62 (Sup.Ct.Mo. 1876); *State v. O'Brian,* 68 Mo. 153, 153 (Sup.Ct.Mo. 1878); *Jester v. Spurgeon,* 27 Mo. App. 477, 479 (St.LouisCt.App.Mo. 1887) **"There can be no officer** *de facto* **filling an office which has no legal existence;"** *Daniel v. Hutcheson,* 22 S. W. Rep. 278, 281 (Ct.CivilApp.Tx. 1893); *Norton v. Shelby County,* 118 U. S. 425; *\*80 Hildreth v. McIntire,* 1 J. J. Marsh. 206; *Strickland v. Griffin,* 70 Ga. 546; *State v. Duffel,* 32 La. Ann. 653; *In re Hinkle,* 3 P. 531, 533 (Sup.Ct.Ks 1884). * * * The general rule unquestionably is that there can not be an officer *de facto,* where there is no

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 38 of 104

office *de jure.; Ex parte Snyder*, 64 Mo. 58; *State v. O'Brian*, 68 Mo. 153; *Jester v. Spurgeon*, 27 Mo. App

In *Daniel v. Hutcheson*, 22 S.W. 278, 281 (Ct.CivilApp.Tx. 1893), to wit:

**Offices are created by force of law, and none can exist except by sanction of law. <u>Where there is no lawful office, there can be no officer, either de jure or de facto.</u>** *Norton v. Shelby Co.*, 118 U. S. 425 (1886); *Hildreth's Heirs v. McIntire's Devisee*, 1 J. J. Marsh. 206; *Strickland v. Griffin*, 70 Ga. 546; *State v. Duffel*, 32 La. Ann. 653.

9. In *Carleton v. People*, 10 Mich. 250, 259 (Sup.Ct.Mich. 1862) **"Where there is no office there can be no officer *de facto*, for the reason that there can be none *de jure*."**

10. In *Clapp v. Otoe County, Neb.* 104 F. 473, 477 (Cir.Ct.App. 8th Cir. 1900) "[T]hese warrants were void because the law under which Kearney township was organized was unconstitutional, and therefore neither the township nor its officers ever had any existence, either *de facto* or *de jure*. *Atchison, T. & S.F.R. Co. v. Board of Com'rs of Kearney Co.* 48 Pac. 583 (Sup.Ct.Ks. 1897)."

## G. REIGH is Deemed to Know the Law.

1. Even though **RIEGH** is an usurper at best, she has a Law Degree and is Deemed to know the Law and this is evidenced with following cases.

2. AS pronounced in *Inb Groh v. Ramirez*, 540 U.S. 551, 563, 564 (2004) "If the law was clearly established . . . a reasonably competent public official should know the law governing his conduct." Citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982); *State of Ohio v. Davis*, 584 N.E.2d 1192, 1196 (Sup.Ct. Ohio 1992) **"<u>Judges</u>, unlike juries, <u>are presumed to know the law</u>."**; *Leary v. Gledhill*, 84 A.2d 725, 728 (Sup.Ct.

NJ 1951) "A court will in general take judicial notice of and apply the law of its own jurisdiction without pleading or proof thereof, the judges being deemed to know the law or at least where it is to be found."

3. In *Cannon v. University of* Chicago, 441 U.S. 677, 696-697 (1979)s "**It is always appropriate to assume that our elected representatives, like other citizens, know the law.**" In *Traynor v. Trunage*, 485 U.S. 535, 546 (1988) "It is always appropriate to assume that our elected representatives, **like other citizens, know the law.**" *Cannon v. University of Chicago*, 441 U.S. 677, 696–697 (1979)." *Bowsher v. Synar*, 478 U.S. 714, 738 **FN1** (1986) "Just as it is "always appropriate to assume that our elected representatives, **like other citizens, know the law**," *Cannon v. University of Chicago*, 441 U.S. 677, 696–697, (1979), so too is it appropriate to assume that our elected representatives, **like other citizens, will respect the law.**" *Offshore Logistica, Inc. Tailentire*, 477 U.S. 207, 228 (1986) "*Cannon v. University of Chicago*, 441 U.S. 677, 696–697, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979) ("It is always appropriate to assume that our elected representatives, **like other citizens, know the law**"). In *Lowe v. S.E.C.*, 472 U.S. 181, 205 **FN50** (1985), to wit:

> "It is always appropriate to assume that our elected representatives, like other citizens, know the law." *Cannon v. University of Chicago*, 441 U.S. 677, 696-697, 99 S.Ct. 1946, 1957-58, 60 L.Ed.2d 560 (1979). Moreover, "[i]n areas where legislation might intrude on constitutional guarantees, we believe that Congress, which has always sworn to protect the Constitution, would err on the side of fundamental constitutional liberties when its legislation implicates those liberties." *Regan v. Time, Inc.*, 468 U.S. 641, 697, 104 S.Ct. 3262, 3292, 82 L.Ed.2d 487 (1984) (STEVENS, J., concurring in part and dissenting in part).

4. In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 836 "Because it "is always

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 40 of 104

appropriate to assume that our elected representatives, like other citizens, know the law

**FN10** *Cannon v. University of Chicago,* 441 U.S. 677, 696–697, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979). In *Director, Office of Workers'Compensation Programs, U.S. Dept. of Labor v. Perini North River Assoc.,* 459 U.S. 297, 319 (1983) "We may presume "that our elected representatives, like other citizens, know the law." *Cannon v. University of Chicago,* 441 U.S. 677, 696–697, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979)." In *Albernaz v. United States,* 450 U.S. 333, 341 (1981), to wit:

> But, as we have previously noted, Congress is **"predominantly a lawyer's body,"** *Callanan v. United States,* 364 U.S. 587, 594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961), and it is appropriate for us **"to assume that our elected representatives ... know the law."** *Cannon v. University of Chicago,* 441 U.S. 677, 696–697, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979). As a result, if anything is to be assumed from the congressional *342 silence on this point, it is that Congress was aware of the Blockburger rule and legislated with it in mind. **It is not a function of this Court to presume that "Congress was unaware of what it accomplished...."** *Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

5. In *Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980) "Finally, we disagree with the District Court's conclusion that Congress was unaware of what it accomplished." In *Watt v. Alaska,* 451 U.S. 259, 284-285 (1981), to wit:

> The Court today is bothered because the literal meaning of a statute altered prevailing law.**FN8** But usually the very point of new legislation is to alter prevailing law. **"Every act is made, either for the purpose of making a change in the law, or for the purpose of better declaring the law; and its operation is not to be impeded by the mere fact that it is inconsistent with SOAe previous enactment."** T. Sedgwick, The Interpretation and Construction of Statutory and Constitutional Law 104 (2d ed. 1874). **Congress does not have the affirmative obligation to explain to this Court why it deems a particular enactment wise or necessary, or to demonstrate that it is aware of the consequences of its action. FN9** See *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 592, 100 S.Ct. 1889, 1897,

64 L.Ed.2d 525. And "[i]t *285 is not a function of this Court to presume that 'Congress was unaware of what it accomplished.' " Albernaz v. United States, 450 U.S. 333, 342, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (quoting U.S. Railroad Retirement Board v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368.

In *Garett v. United States*, 471 U.S. 773, 793-794 (1985), to wit:

"[The defendants] read much into nothing. Congress cannot be expected to specifically address each issue of statutory construction which may arise. But, as we have previously noted, Congress is 'predominantly a lawyer's body,' ... and it is appropriate for us 'to assume that our elected representatives ... know the law.' ... As a result if anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the Blockburger rule and legislated with it in mind. It is not a function of this Court to presume that *794 'Congress was unaware of what it accomplished.' " Id., 450 U.S., at 341-342, 101 S.Ct., at 1143-44.

### III. SOAe Essential Issues of "citizens of the United States"

1. Gladden is a "citizen of Alaska" and has his unalienable rights secured in the Constitution of Alaska and the Constitution of the United States. Gladden is NOT a "citizen of the United States" under 14 Stat. 27 (1866) memorialized in the 14th Amendment that are using the "public rights" doctrine[11] with no "judicial determination" of issues concerning "taxpayers" with no remedies in any constitutional adversarial Court.

2. The Court shall take Judicial Notice of the Political Status, Citizenship and Allegiance of David Gary Gladden as evidenced by the public record under Oath in Attachment 1—Certificate of Political Status, Citizenship and Allegiance Recorded in Palmer, Alaska Recording District 311 number "2015-012507-0" ("A1—Status") that is self-authenticating under Evidence 901(7).

---

[11] *Kuretski v. C.I.R.*, 755 F.3d 929, 939-940 (D.C.Cir. 2014).

3. And further, the Court shall take Judicial Notice of David Gary Gladden's Right of his elective franchise, *i.e.* Suffrage in Alaska as a "citizen of Alaska" as evidenced by **Attachment 2—Qualified Elector Registration of Alaska as a "citizen of Alaska" ("A2—Elector").**

4. The question arises where is the right or privilege of the elective franchise arise under: The Constitution of the United States or the constitution of one of the several States, *i.e.*, being the Constitution of Alaska? The answer is found in *United States v. Anthony*, 24 F.Cas. 829, 829, 830 (Cir.Ct. N.D.N.Y. 1873), to wit:

> The thirteenth, fourteenth and fifteenth amendments were designed mainly for the protection of the newly emancipated negroes, but full effect must, nevertheless, be given to the language employed.
> * * *
> The **right of voting,** or the privilege of voting, is a right or privilege **arising under the constitution of the state,** and **not under the constitution of the United States**; and second, that a right of the character here involved is not one connected with **citizenship of the United States.**
> * * *
> [I]f rights of a citizen are thereby violated, they are of that fundamental class, **derived from his position as a citizen of the state, and not those <u>limited rights belonging to him as a citizen of the United States</u>**; and such was the decision in *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823).

In *Kineen v. Wells*, 11 N.E. 916, 918, 919 (Sup.Jud.Ct.Mass. 1887), to wit:

> If the legislature can impose certain restrictions upon one class of voters, and exempt another, what is the limit to its discretion?
> * * *
> The **right or privilege of voting is a right or privilege arising under the constitution of each state**, and **not under the constitution of the United States.** The voter is entitled to vote in the election of officers of the United States by reason of the fact that he is a voter in the state in which he resides. He exercises this right because he is entitled to by the laws of the state where he offers to exercise it, and not because he is a citizen of the United States. *United States v. Anthony*, 24 F.Cas. 829, 830 (Cir.Ct. N.D.N.Y. 1873)

Complaint—Case: 3:19-cv-99          36

5. In *Corfield v. Coryell*, 6 F.Cas. 546, 551, 552 (1823), a case the Circuit Court of the United States [a bona fide Article III Court] has described the privileges and immunities of the citizens of the several States in great detail including this excerpt to which SOAe additional protections under fourteenth Amendment were overlaid but the fundamental right of the elective franchise is still posited in the constitution of one of the several States, to wit:

> [M]ay be mentioned as SOAe of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges **deemed to be fundamental**: to which may be added, the **elective franchise, as regulated and established by the laws or constitution of the state in which it is to be exercised.**

## A. The Fourteenth Amendment Doesn't Apply To "citizens of the United States" in the District of Columbia or to the District of Columbia.

1. In *Neild v. District of Columbia*, 110 F.2d 246, 250 FN10 (1940) citing the holding of *Wright v. Davidson*, 181 US. 371, 384 (D.C. Cir. 1940), to wit:

> [H]olding the **Fourteenth Amendment inapplicable to the District of Columbia. <u>On the other hand, the rights and liberties protected by the bill of rights (Amendments I to VIII) against encroachment by the national government have been held applicable to the District although not to the states.</u>** Thus, the provisions of the Fourth Amendment are not applicable to the states (*National Safe Deposit Co. v. Stead,* 232 U.S. 58, 34 S.Ct. 209, 58 L.Ed. 504; *Ohio ex rel. Lloyd v. Dollison,* 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062), although they are to the District. *United States v. Mattingly*, 52 App.D.C. 188, 285 F. 922

2. A "citizen of the United States" in the District of Columbia's Statutes is a "qualified elector" as found in DC ST § 1-1001.02 (2) "The term **"qualified elector"** means a person who . . . (B) is a **citizen of the United States**." A "citizen of the United States" outside of the District of Columbia under the

Complaint—Case: 3:19-cv-99                37

Fourteenth Amendment is a fiction in law—"All of this is a fiction in law[12]" and has the same rights a "corporation, which is included in the Fourteenth Amendment definition of "person" as found in *Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936) and *First National Bank of Boston v. Bellotti*, 436 U.S. 765, 780 FN15 (1978). Also this "citizen of the United States" in 14 Stat. 27 (1866) codified today in 42 U.S.C. §§ 1981, 1982 and 1988 that has the same rights as a "white citizen" is memorialized in the 14th Amendment.

**B. The Fifteenth Amendment Does not Confer any Right of Suffrage on Anyone.**

    1. The holding in the Supreme Court of the United States holds that the 15th Amendment does not confer any Right of Suffrage on anyone *Le Grand v. United States*, 12 F. 577, 578, 579 (Cir.Ct. E.D.Tx. 1882) in opposition to AG Green's denial, to wit:

> The fifteenth amendment can have no application. **That amendment relates to the right of citizens of the United States to vote. It does not confer the right of suffrage on any one.** It merely invests citizens of the United States with the constitutional right of exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. *U.S. v. Reese*, 92 U.S. 214 (1875); *United States v. Reese*, 92 U.S. 214 (1875); S.C. 1 Woods, 322 (Cir.Ct. D. La. 1874) affirmed in *United States. v. Cruikshank*, 92 U.S. 542 (1875).

**C. A "citizen of the United States" Has No Rights of Suffrage.**

    A1. "citizen of the United States" has no rights of Suffrage remembering that only "citizens of the United States" are within the District of Columbia and this was held in *Heald v. District of Columbia*, 259 U.S. 114, 124 (1922), to wit:

    2. Finally it is earnestly contended that the act is void, because it subjects

---

[12] *McDonald v. City of Chicago*, 130 S.C. 3020, 3062 (2010).

Complaint—Case: 3:19-cv-99        38

the residents of the District to taxation without representation. **Residents of the District lack the suffrage and have politically no voice in the expenditure of the money raised by taxation.** Money so raised is paid into the treasury of the United States, where it is held, not as a separate fund for the District, but subject to the disposal of Congress, **like other revenues raised by federal taxation.** The objection that the tax is void, because of these facts, is fundamental and comprehensive. It is not limited in application to the tax on intangibles, **but goes to the validity of all taxation of residents of the District.** If sound, it would seem to apply, not only to taxes levied upon residents of the District for the support of the government of the District, but also to those taxes which are levied upon them for the support generally of the government of the United States. It is sufficient to say that the objection is not sound. **There is no constitutional provision which so limits the power of Congress that taxes can be imposed only upon those who have political representation.** And the cases are many in which laws levying taxes for the support of the government of the District have been enforced during the period in which its residents have been without the right of suffrage. **FN2.**

> **FN2.** Compare *Gibbons v. District of Columbia*, 116 U. S. 404, 6 Sup. Ct. 427, 29 L. Ed. 680; *Metropolitan Railroad Co. v. District of Columbia*, 132 U. S. 1, 8, 10 Sup. Ct. 19, 33 L. Ed. 231; *Shoemaker v. United States*, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170; *Bauman v. Ross*, 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; *Wilson v. Lambert*, 168 U. S. 611, 18 Sup. Ct. 217, 42 L. Ed. 599; *Parsons v. District of Columbia*, 170 U. S. 45, 50, 18 Sup. Ct. 521, 42 L. Ed. 943; *District of Columbia v. Brooke*, 214 U. S. 138, 29 Sup. Ct. 560, 53 L. Ed. 941.

**D. A "citizen of the United States" even in Foreign Country Such as Old Mexico is bound by the "benefit" and his property and income is subject taxation to the United States.**

1. A "citizen of the United States" with any of the several States (within the United States) and even in a foreign country such as old Mexico is bound by the "benefit" and his property and income are subject taxation to the United States as pronounced in *Cook v. Tait*, 265 U.S. 47, 56, to wit:

> In other words, the principle was declared that the government, by **its very nature, benefits the citizen** and his **property wherever found**, and therefore has the **power to make the benefit complete**. Or, to express it

another way, the basis of the power to tax was not and cannot be made dependent upon the situs of the property in all cases, **it being in or out of the United States, nor was not and cannot be made dependent upon the domicile of the citizen,** that being in or out of the United States, but upon **his relation as citizen to the United States and the relation of the latter to him as citizen.** The consequence of the relations is that the native **citizen who is taxed may have domicile, and the property from which his income is derived may have situs, in a foreign country and the tax be legal-the government having power to impose the tax.**

**E. The "citizens of the United States" fill out the same Form 1040s, the same 1099s, the same W4 and have the same W2 for the "Federal Income Tax" in the District of Columbia and in the "United States."**

1. The "citizens of the United States" fill out the same forms as evidenced in the **excerpt** of the "2018 District of Columbia (DC) individual Income Tax Forms and Instructions for the D-40EZ single and Joint Filers with No Dependents and D-40 All other Individual Income Tax Filers" being **Attachment 3—D.C. Instructions for D-40EZ and D-40. (Attach 3—D.C. Income Tax").**

2. The forms of W2, W4, 1099 and 1040 are mentioned, *passim*, in the twenty-four (24) page excerpt of **Attach 3—D.C. Income Tax.**

3. The phrase **"Federal Income Tax"** in **Attach 3—D.C. Income Tax** is found on pages 3, 5, 15, 23 and 24.

**F. Public Salary Tax Act of 1939, 53 Stat. 574-577, on "Federal Income Tax" referencing *Helvering v. Gerhardt*, 304 U.S. 405, 418 w/FN6 [extensive details] (1938) Precludes Gladden Jurisdictionally.**

1. The **SOA** did not disclose the Public Salary Tax Act of 1939, 53 Stat. 574-577 and the application of the **"Federal Income Tax"** jurisdictional limitations to only **"State employees"** and **"Federal Employees"** to tax each other by statute to Gladden in prior Cases another one of **REIGH's "Superior Court Judges" in Dillingham** by the name

Complaint—Case: 3:19-cv-99                    40

of "Judge Torissi" in Case No. 3DI-08-53 CI.

2. The Public Salary Tax Act of 1939, 53 Stat. 574-577 is included to provide evidence that Gladden is not a "citizen of the United" subject to the "**Federal Income Tax**" that has been found in this same "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" in Case No. 3DI-08-53 CI.

3. In the Public Salary Tax Act of 1939, 53 Stat 574-577, where Congress by Statute agreed that the Federal Employees would pay State Income Taxes and the State Employees would pay Federal Income Taxes as there were exemptions because there was no "statutory authority" creating a uniform obligation for "Federal Income Tax" and "State Income Tax". In **Attachment 4—House Report No. 26, Feb. 7, 1939 on The Public salary Tax Act of 1939 ("Attach 4—H.R. No. 26"), Pg. 1-2**, to wit:

> The bill subjects to **Federal income tax** for taxable years beginning after December 31, 1938, the **compensation of all State and local officers and employees**; grants consent to the **States to tax the compensation** received after December 31, 1938, **by Federal officers and employees**; and, in accordance with the President's message, relieves from Federal income taxation for taxable years commencing prior to January 1, 1939, the compensation of certain State and local officers of Federal officers and employees from income taxes imposed under the authority of the various States has been widely condemned and employees.
>
> For many years the <u>exemption</u> **from Federal income taxes of State and local officers and employees** has aroused widespread public criticism .and disapproval. Similarly, the <u>exemption</u> **of the compensation of Federal officers and employees from income taxes imposed under the authority of various states has been widely condemned.**

4. This Public Salary Tax Act of 1939 was comprehensive to cover "States," the "District of Columbia" (which has only "citizens of the United States"), any Territory (which has only "citizens of the United States"), or possession (which has only "citizens

of the United States"), or political subdivision thereof; and, other taxing authorities of local government units— **Attach 4—H.R. No. 26, Pg. 4**, to wit:

> Section 3: In order to **facilitate** reciprocal taxation as **between State and Federal Governments,** your committee believes that the **United States should expressly consent to the taxation of the compensation of its officers and employees**. Section 3 of the bill therefore provides that the United States consents to the taxation of compensation received after December 31, 1938, for personal service **as an officer or employee of the United States, any Territory or possession or political subdivision thereof, the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, by any duly constituted taxing authority having jurisdiction to tax such compensation,** if such taxation does not discriminate against such officer or employee because of the source of such compensation. **It will be noted that the consent extends to taxation not only by the State but also by other duly constituted taxing authorities, of the compensation of Federal officers and employees**. Under this provision **if any local governmental units have authority to and do impose income taxes, tax may be imposed upon such compensation subject to the jurisdiction of such units. * * ***

> **Pg. 5**—This title affords relief to employees of States of the Union and their local governments **who have not been paying Federal income tax and in many cases have not even filed returns.**

5. A further clarification of the Public Salary Act of 1939 for **"Federal Income Tax"** as the Federal employees were exempt from State income taxes; and, the State and local employees were exempt from Federal income tax as stated in **Attachment 5—1939 Public Salary Act Senate Report No. 112, Feb. 24, 1939 ("Attach 5—Sen.Rpt. No. 112"), Pg. 3**, to wit:

> At the present time, **Federal employees are subject to <u>Federal income taxes,</u> but are <u>exempt</u> from <u>State income taxes</u>. State and local employees**, on the other hand, are **subject to State income taxes, but are <u>exempt</u>** from <u>Federal income taxes,</u> **unless engaged in proprietary functions.**
> * * *
> **Pg. 8**—It is true that the Supreme Court in several cases, notably in *Evans*

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 49 of 104

*v. Gore,* 253 U.S. 245 [1920], has said that the sixteenth amendment did not extent the taxing power of the Congress, but merely removed the need for apportionment.

6. In **Attach 5—Sen.Rpt. No. 112 pg. 7**—**"The taxpayers are citizens of the United States and bound to contribute to tis support."**

7. The application of the "**Federal Income Tax**" was **clarified** as evidenced in **Attach 5—Sen.Rpt. No. 112 Pg. 14, referencing** *Helvering v. Gerhardt,* **304 U.S. 405, 418 w/FN6 (1938) ("Attach 5—Sen.Rpt. 112 Public Salary Act") pg. 14,** to wit:

It should be noted that included in the classes of employees to whom the Commissioner may give relief under this section will be employees of the type involved in the case of *Helvering v. Therrell,* **303 U. S. 218,** since the decision in the Gerhardt case **clarified and restated the basis for the liability for such persons for Federal income tax.**

8. Contained with the *Gerhaldt* case being "**clarified and restated basis for the liability for such person for Federal income tax**" that **DOES NOT include Gladden,** being in *Helvering v. Gerhardt,* 304 U.S. 405, 418 FN6 (1938), to wit:

In these cases the function has been either held or assumed to be of such a character that its performance by the state is immune from direct federal interference; **yet the individuals who personally derived profit or compensation from their employment in carrying out the function were deemed to be subject to federal income tax.** **FN6**

FN6— The **following classes of taxpayers have been held subject to federal income tax** notwithstanding its possible economic burden on **the state: Those who derive income or profits from their performance of state functions as independent engineering contractors,** *Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384, **or from the resale of state bonds,** *Willcuts v. Bunn,* 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260; **those engaged as lessees of the state in producing oil from state lands, the royalties from which, payable to the state, are devoted to public purposes,** *Group No. 1 Oil Corporation v. Bass,* 283 U.S. 279, 51 S.Ct. 432, 75 L.Ed. 1032; *Burnet v. A. T. Jergins Trust,* 288 U.S. 508, 53 S.Ct. 439, 77 L.Ed. 925; *Bankline Oil Co. v.*

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 50 of 104

*Commissioner*, 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897, and *Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907, both decided March 7, 1938, overruling Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815. **Similarly federal taxation of property transferred at death to a state or one of its municipalities was upheld in** *Snyder v. Bettman*, 190 U.S. 249, 23 S.Ct. 803, 47 L.Ed. 1035, cf. Greiner v. Lewellyn, 258 U.S. 384, 42 S.Ct. 324, 66 L.Ed. 676; **and a federal tax on the transportation of merchandise in performance of a contract to sell and deliver it to a county was sustained in** *Wheeler Lumber Bridge & Supply Co. v. United Sta*tes, 281 U.S. 572, 50 S.Ct. 419, 74 L.Ed. 1047; cf. *Indian Motocycle Co. v. United States*, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277. **A federal excise tax on corporations, measured by income, including interest received from state bonds, was upheld in** *Flint v. Stone Tracy Co.*, 220 U.S. 107, 162, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, et seq.; see *National Life Insurance Co. v. United States*, 277 U.S. 508, 527, 48 S.Ct. 591, 595, 72 L.Ed. 968**; compare the discussion in** *Educational Films Corp. v. Ward*, 282 U.S. 379, 389, 51 S.Ct. 170, 172, 75 L.Ed. 400, 71 A.L.R. 1226, and in *Pacific Co., Ltd., v. Johnson*, 285 U.S. 480, 490, 52 S.Ct. 424, 426, 76 L.Ed. 893.

9.   Gladden  is not clothed or subject to **the classes clarified** and restated in

*Helvering v. Gerhardt*, 304 U.S. 405, 418 FN6 (1938), *supra.* of ANY "**Federal Income**

**Tax**," *i.e.*. **Gladden is jurisdictionally EXCLUDED and this was not disclosed to**

**Gladden by the SOA.**

**G.   The "STATE OF ALASKA" Is NOT the Government of Alaska, One of the several States; and, is Using the "National Voter Registration Act of 1993" for "Federal Offices" Only for Elections; Therein, There are no Constitutional Courts of Alaska Exercising the "judicial Power of Alaska"—"there is an absence of available State corrective process;" and, "circumstances exist that render such process ineffective to protect the rights of the applicant."**

10.  And further, the "STATE OF ALASKA" ("SOA") wherein **REIGH** that is an

allegedly "independent judge" "exercising the Judicial Power of Alaska" in  Gladden's

Case No. 3DI-18-2 CI  is not exercising jurisdiction of the "judicial Power of Alaska,"

being one of the several States of the Union of States within the Constitution of the

Complaint—Case: 3:19-cv-99                    44

United States, but this SOA is a **"State of the United States and the District of Columbia"**[13] as defined in the National Voter Registration Act of 1993 ("NVRA"), 107 Stat. 77-109 evidenced by **Attachment 6—National Voter Registration Act of 1993 ("Attach 6—NVRA Stat.")** currently codified in 52 U.S.C. §§ 20501-20511 of which the SOA uses exclusively only the NVRA for all elections.[14] With this definition of 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia" therein: (1) "State of the United States;" and (2) District of Columbia where Congress has Plenary Power over the "citizens of the United States" is a *sine qua non* that Congress has plenary Power over the "citizens of the United States" in the **SOA that is a "State of the United States." In reality a "State of the United State" is a municipal entity UNDER the "United States" being the current SOA; and** further, **it is an unassailable fact that this SOA is not the constitutional government of Alaska, being one the several States of the Union of States of the Constitution of the United States.**

11. The **Attach 6—NVRA Stat** limits the elections in the SOA to only a **"Federal Office,"** as held in *Pree v. District of Columbia Bd. of Elections & Ethics*, 645 A.2d. 603, 605 (Ct.App.D.C. 1994), to wit:

> [B}y its terms applies only to elections **"for Federal office,"** *see, e.g.,* 42 U.S.C.A. § 1973gg–3, which is expressly defined (*id.,* § 1973gg–1(2)) by reference to 2 U.S.C. § 431(3) (1988) as meaning **"the office of President or Vice President, or of Senator or Representative in, or Delegate or**

---

[13] 52 U.S.C. § 20502—Definitions "(4) the term "State" means a State of the United States and the District of Columbia."

[14] M.S.A. § 201.071—Registration Applications.

Complaint—Case: 3:19-cv-99                    45

**Resident Commissioner to, the Congress.**

12. See also 185 A.L.R. Fed 155 (Originally published in 2003) *et. seq.*

13. The "Federal Office" is defined for the NVRA in 52 U.S.C. § 20502—Definitions (2) "the term "Federal Office" has the meaning stated in sections [52 U.S.C. §] **30101(3)** of this title."

14. Wherein, in 52 U.S.C. § 30101(3) "The term **"Federal office" means the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress;"** therein, as a matter of law[15] and the definition using "term" and "means" precludes all elections of any public Officer of the State of Alaska, *i.e.,* as there are NO elections held for any public Officers of the State of Alaska exercising the elective franchise or right of suffrage by the "citizens of Alaska," with Alaska being one of the several States.

**H. The "STATE OF ALASKA" Elections are Limited to Only "citizens of the United States" that Have No Right of the Elective Franchise or the Right of Suffrage PRECLUDING the "citizens of Alaska" from Exercising Right of the Elective Franchise and the Right of Suffrage.**

15. The SOA NVRA elections are limited to only "citizens of the United States" as found in the Constitution **for** the State of Alaska, Article 5, § 1; and, ©AS § 15.05.010 "A person may vote at any election who (1) is a citizen of the United States;";

---

[15] The Supreme Court of the United States *held* in *Celotex Corporation v. Catrett*, 477 U.S. 317, 317-318, 322-323 if "[T]here is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Page 330 "Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Complaint—Case: 3:19-cv-99        46

and, under ©AS § 15.07.060 (7) "a declaration that the applicant is a citizen of the United States."

16. As the SOA has is using the NVRA exclusively:

(1) ©AS § 15.07.130 (b)—Voter registration list maintenance;

(2) and, ©AS § 28.05.045 Voter registration;

(3) and, ©AS § 15.07.055 (d)—Voter registration agencies;

(4) and, ©AS § 15.10.105 (a)—Division of elections; personnel rules;

(5) and, ©AS § 44.29.020 (b) Duties of department;

(6) and, ©AS § 44.33.020 (a)(41)—Duties of department; regulations;

(7) and ©AS § 15.07.070 (a)—Procedure for registration.

17. It is an unassailable fact that only "citizens of the United States" can register to "vote" as found in the **Attach 6—NVRA Stat.** codified currently in 52 U.S.C. § 20501(a) "Findings—The Congress finds that—(1) the right of citizens of the United States is a fundamental right."[16]

18. And further, these ""Rights of the Citizens of the United States Enumerated"[17] for "citizens of the United States" are enumerated in the **Attachment 7—Congressional Record of January 13th, 1938 including the "[Senate. Views of the minority, No. 1956. 49th Cong., 2d sess.] In the Senate of the United States. February 25, 1887. Ordered to be printed," ("Attach 7—1938 Cong. Rec.") pg. 437.**

---

[16] The Fundamental rights of "citizens of the United States" is found in **Attach 7—1938 Cong. Rec.** pg. 437, January 13th, 1938.

[17] **1938 Cong. Rec.** pg. 439, January 13th, 1938.

19. The fundamental rights of "citizens of the United States" is found clearly articulated is the use of "citizen of the United States" as only a **prohibition**; and, **not positive law or not original rights**, which had application only to prohibit the several States Laws and prohibit the public officers of the several States, that do not exist today because of the **Attach 6—NVRA Stat.** that is codified in 52 U.S.C. §§ 20501-20511, and the employees clothed with authority one of the several States with an **Attach 7—1938 Cong. Rec.,"** excerpt from **Page 10**, to wit:

**RIGHTS OF CITIZENS OF THE UNITED STATES ENUMERATED**
They are as follows:

The right to come to the seat of Government to assert any claim he may have upon that Government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions.

The right of free access to its seaports, through which all operations of foreign commerce are conducted; to the substreasuries, land offices, **and courts of justice in the several States.**

The right to demand the care and protection of the Federal Government over his life, liberty, and property when on the high seas or within the jurisdiction of a foreign Government.

The right to peacefully assemble and petition (Congress) for a redress of grievances, and to the writ of habeas corpus.

The right to use the navigable waters of the United States however they may penetrate the territory of the several States.

The right to become a **citizen of a State** by residing In It. Then, proceeds the court,

"There are rights which pertain to a citizen in his **character of citizen of the United States,** and are therefore subject to Federal jurisdiction and power, which grow out of prohibitions in the Constitution of the United States on State action; of such is the right to be absolved from all the consequences of bills of attainder, ex post facto laws, and laws Impairing

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 55 of 104

the obligation of contracts enacted by the States; and the **right secured against prohibited State actions, as expressed In the three new amendments to the Constitution."**

\* \* \*

**It is now firmly settled that these provisions are directed solely against State laws and State action, through persons or agents clothed with State authority. It is also settled that the <u>power conferred on Congress to enforce these provisions is a power only to enforce the prohibition against State action.</u> That the rights conferred on persons under them are not positive, original rights, but the right only to exemption from, and protection against, <u>the prohibited State action</u>. And the power of Congress to interfere in any case is purely a power of correction, a power to give redress against a prohibited State action, that the exercise, the actual exercise of efficient power by Congress, under the amendments, <u>presupposes State action of the kind prohibited; and until there be such prohibited State action, the power of Congress is wholly dormant, and without such action really being taken, SOAewhere or at SOAe time, the power of Congress would sleep forever.</u>**

In no case under these amendments, so far as the present controversy is concerned, can the power of Congress be made to reach, either for punishment or correction, or redress in any way, civil or criminal, the acts of private individuals. On this last point, the controversy was long between a sectional majority in Congress and the Constitution, but in the end the Constitution triumphed fully, completely.

20.   This was well settled as evidenced holdings of the Supreme Court of the United States including *United States v. Cruikshank et al,* 92 U.S. 542, 554-555 (1875); and, *United States v. Reese et al.*, 92 U.S. 214 (1875) that is cited in the **Attach 7—1938 Cong. Rec.,"** *supra.*

21.   As the Power of correction is posited **only** in the Congress for corrections of State Law or State Actors in the Thirteenth, Fourteenth and Fifteenth Amendments evidenced in **Attach 7—1938 Cong. Rec.** *flows a fortiori* that the **SOA is has Zero Constitutional Authority have elections only for "citizens of the United States" and**

Complaint—Case: 3:19-cv-99                49

to be limiting the elections to a special class, being "citizens of the United States" that is posited only with Congress; and, precluding an elections for the "citizens of Alaska" under the Attach 6—NVRA Stat. that precludes any rights of the elective franchise or the right of suffrage in all elections.

## I. The "citizens of the United States" After the Fourteenth Amendment Flipped to where the Source of Citizenship if from being a "citizen of the United States" and not being one of the citizens of the several States.

1. Congress and the Courts started to use the mistaken idea that **source** of citizenship is from being a "citizen of the United States" instead of the many cases that state nothing changed with the Fourteenth Amendment. But this flipping to a National Federal citizenship is clearly stated in *United States v. Hall*, 26 F.Cas. 79, 81 (C.C., S.D.Ala. 1871), to wit:

> As we are of opinion that the fourteenth amendment has a vital bearing upon the question raised, it is well that we should look to its provisions. It declares that 'all persons, born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the state wherein they reside.' **By the original constitution citizenship in the United States was a consequence of citizenship in a state. United States was a consequence of citizenship in a state. By this clause this order of things is reversed.** **Citizenship in the United States is defined; it is made independent of citizenship in a state, and citizenship in a state is a result of citizenship in the United States**. So that a person born or naturalized in the United States, and subject to its jurisdiction, is, without reference to state constitutions or laws, entitled to all the privileges and immunities secured by the constitution of the United States to citizens thereof.

## J. Federal Enclaves such as the District of Columbia the Same as "Federal Areas" under the Buck Act of 1940 and 1946 for "citizens of the United States.

1. The purpose of the Buck Act Buck Act in 54 Stat. 1059-1061 of 1940 was to include "citizens of the United States" that are deemed to be found in "federal areas" be

treated the same as "citizens of the United States in the Federal Enclaves such as the

District of Columbia. This is found in *United States v. Lewisburg Area School Dist.* 539

F.2d 301, 308-309, to wit:

> **By the Buck Act, 4 U.S.C. ss 105-110, Congress in 1940 gave consent to the levy and collection of various taxes in Federal area**s. The School District concedes that the provisions of the Act cannot be construed to cover the per capita taxes contested here, but they argue that the **"occupation" tax at issue is in fact an income tax, as contemplated by the Buck Act and is covered by 4 U.S.C. s 106(a), which states**:

> **"No person shall be relieved from liability for any income tax levied by any State**, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a **Federal area** or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any **Federal area within such State to the same extent and with the same effect as though such area was not a Federal area**."\

> Income tax is defined in s 110 as "**any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.**" If the occupation tax is an income tax within the meaning of the Buck Act, then it "can be levied and collected within the **federal area, just as if it were not** a **federal area**." *Howard v. Commissioners of the Sinking Fund*, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953).

> **The purpose of the Buck Act was to equalize the liability for income tax between the officers and employees of the United States who reside within federal area**s **and those officers and employees, otherwise identically situated, who reside outside** a **federal area and who had become liable for state tax by the passage of the Public Salary Tax Act of 1939**. **A further reason was to equalize the position between federal employees who were residents of federal enclave**s **over which the United States had been granted exclusive jurisdiction and those residing in federal area**s **over which the granting state had retained concurrent jurisdiction, a practice which had been upheld by the Supreme Court** in *James v. Dravo Contracting Co.*, supra, in 1937.

> Federal Area" as defined in the Buck Act codified in 4 U.S.C. § 110(e), to wit:

> 2. The term **"Federal area"** means any lands or premises held or acquired

by or for the use of the United States or any department, establishment, or agency, of the United States; **and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State.**

## K. The Tenth Amendment Provides NO Protections to the several States or to the People of the several States Against the Statutory "citizens of the United States".

1. The Tenth Amendment[18] provides No Protections to the several States or to People of the several States[19] as to rights reserved against this statutory "citizen of the United States" in the New "State" definition codified in 52 U.S.C. § 20502—Definitions "(4) the term "**State**" means a **State of the United States** and the **District of Columbia**;" and, this is documented in great detail in this excerpt of *Validity, Construction, and Application of National Voter Registration Act, 42 U.S.C.A. §§ 1973 gg et seq.*, **185 A.L.R. 155 (Originally published in 2003)**, to wit:

> **§ 4. Tenth Amendment**
> The following authority adjudicated the validity of The National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) under the Tenth Amendment to the United States Constitution.[10]
> In Association of Community Organizations for Reform Now (ACORN) v. Ridge, 1995 WL 136913 (E.D. Pa. 1995), the court held that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) <u>is constitutional over the defendants' argument that the NVRA violates the Tenth Amendment to the United States Constitution.</u> In support of their argument, the defendants cited New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep.

---

[18] Tenth Amendment—The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, **are reserved to the States respectively, or to the people.**

[19] Article I Section 2. The House of Representatives shall be composed of Members chosen every second Year by the **People of the several States** and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), on remand to, 978 F.2d 705 (2d Cir. 1992), a case which, the court said, discussed the limits of congressional power under the Commerce Clause of the Constitution—a broad and general provision compared to the more specific terms of Article 1, § 4, see [§ 3]. The court said the defendants' **Tenth Amendment argument was based on their assertion that the power to regulate registration in the manner set forth in the NVRA was not delegated to the United States and thus exceeded Congress' constitutional grant of authority, <u>but the defendants pointed to no case which either directly or by analogy supported their position.</u>** As to the defendants' contention that NVRA law governs the qualifications of voters, a right specifically given to the states, <u>**the court emphasized that the NVRA does not establish who is entitled to vote, but rather establishes the method which an otherwise qualified voter must follow to exercise the right to vote**</u>. Finally, defendants raised the argument that the state would be burdened by the cost associated with implementation of the NVRA, but the court found no law to support the defendants' position that because a state must bear the cost, the legislation therefore fails to pass constitutional muster. The court remarked, in passing, that recent "unfunded mandate" legislation, in any event, has a much higher monetary threshold than what the state alleged it would have to bear in the instant case.

     **Rejecting the state of South Carolina's assertion that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) violates the Tenth Amendment to the United States Constitution, the court held** in Condon v. Reno, -9 (D.S.C. 1995)<u>**, that the Tenth Amendment provided no protection for South Carolina because of the powers granted to Congress under the provisions of the Fourteenth and Fifteenth Amendments of the United States Constitution**</u> (§ 5)<u>**. Since the Constitution specifically delegates to Congress the power to regulate federal elections** [§ 3]**, and the NVRA is limited to federal elections, the court reasoned, the Tenth Amendment is inapplicable by its own terms. Likewise, the court continued, Congress' powers under the Fourteenth Amendment are not limited by the Tenth Amendment**</u>. Specifically, South Carolina contended that the NVRA violated the Tenth Amendment because it compelled the state to expend its own funds, i.e., it was an "unfunded mandate." The court pointed out that no Supreme Court decision has applied the Tenth Amendment to invalidate congressional action on the ground that the action constituted an "unfunded federal mandate." Moreover, the court noted that Congress appropriated hundreds of millions of dollars to South Carolina to operate the very agencies involved under the NVRA, dollars which were permissibly used for administration of those agencies. It was well within the power of Congress to direct that SOAe of the money it appropriated be

spent on voter registration for federal elections, the court said. As to South Carolina's position that the means chosen by Congress to regulate federal elections under the NVRA are beyond its broad powers because Congress conscripted state employees to perform a federal function, the court found, to the contrary, that Congress acted in the least intrusive way to protect the integrity of federal elections. States already record and register their citizens to determine eligibility for certain state and federal programs and activities, including voting, the court observed, and Congress—addressing only the function of voting in a federal election—merely forbade the states from multiplying the burden on citizens. That is, the court stated, Congress determined that the information recorded by the states when citizens obtain drivers' licenses, food stamps, and certain other governmental services, was enough to register those citizens for voting. Opining that the elimination of wasteful, duplicative processes is sound policy in general, the court remarked that when that wasteful duplication deters people from voting, Congress has ample power and justification in not simply hoping for simplification, but in mandating it.

The Sixth Circuit in Association of Community Organizations for Reform Now v. Miller, 129 F.3d 833, 1997 FED App. 323P (6th Cir. 1997), upheld the constitutionality of the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) under the Tenth Amendment of the United States Constitution over the claims of Michigan that Congress overstepped its powers to regulate federal elections by compelling state legislation to effectuate a federal program, directing states to legislate toward a federal purpose, and forcing states to bear the financial burden of enacting a federal scheme. Michigan relied on the Supreme Court's statement in New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep. Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the states to require or prohibit those acts. The court distinguished the New York decision, which addressed a challenge to a congressional exercise of its power under the Commerce Clause of the United States Constitution, a power that enables Congress only to make laws, with the instant case, which addressed a challenge to a congressional exercise of its power to regulate federal elections under Article I, § 4 of the United States Constitution, a power that enables Congress to both make and alter laws affecting the states. Moreover, the court ruled, the express grant of congressional authority to force states to alter their regulations regarding federal elections under Article I, § 4 does not condition its grant of authority on federal reimbursement. When Congress forces the states to shoulder a burden that they rightfully should have accepted without congressional intervention, the court declared, Congress will not be

required to bear the cost of such intervention.

The argument of the State of Illinois that the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA) is invalid under the Tenth Amendment of the United States Constitution was held without merit by the court in Association of Community Organizations for Reform Now (ACORN) v. Edgar, 880 F. Supp. 1215 (N.D. Ill. 1995), aff'd as modified on other grounds, 56 F.3d 791 (7th Cir. 1995) opinion supplemented, 1996 WL 406652 (N.D. Ill. 1996). By definition, the court instructed, the Tenth Amendment does not apply to powers specifically vested in the United States Congress by the Constitution. The court referred to the express authority of Congress under Article I, § 4 of the United States Constitution to make or alter regulations prescribed by the states as to the times, places, and manner of holding federal elections. Furthermore, the court ruled, it was obvious that legislation such as the NVRA, **which implements the Fourteenth and Fifteenth Amendments—the latter prohibiting denial or abridgment of the right to vote by the United States or any state on account of race, color, or previous condition of servitude—cannot run afoul of the Tenth Amendment since the Fourteenth and Fifteenth Amendments were adopted after the Tenth Amendment.**

Affirming the judgment of the district court, which directed the State of California to comply with the National Voter Registration Act (42 U.S.C.A. §§ 1973gg et seq.) (NVRA), the Ninth Circuit in Voting Rights Coalition v. Wilson, 60 F.3d 1411 (9th Cir. 1995), held that Congress did not violate the Tenth Amendment to the United States Constitution in enacting the NVRA. The State of California relied on the Supreme Court's holding in New York v. U.S., 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120, 34 Env't. Rep. Cas. (BNA) 1817, 22 Envtl. L. Rep. 21082 (1992), which stated in relevant part, that Congress may not impose on the states the burden of exercising its power under the Constitution to regulate interstate commerce. The flaw in California's argument, the court instructed, was that it ignored Article I, § 4 which, unlike the commerce power in Article I, § 8, empowered Congress to impose on the states precisely the burden at issue. The court thus decided that Congress may conscript state agencies to carry out voter registration for the election of United States representatives and senators. Moreover, the court said, the exercise of that power by Congress is by its terms intended to be borne by the states without compensation. None of the authorities which recognized the exercise of Congress' power under Article I, § 4 have suggested, even remotely, the necessity of the United States Congress bearing the burden of any alteration it imposed, the court observed. That the actual cost of implementing the NVRA may be significant, the court remarked, did not change the principle embodied in Article I, § 4, but did dictate that the

implementation of the NVRA be done sensitively.

2. Of course to arrive at the ineffectiveness of the Tenth Amendment of today, *supra*, **Validity, Construction, and Application of National Voter Registration Act, 42 U.S.C.A. §§ 1973 gg et seq.**, 185 A.L.R. 155 **(Originally published in 2003),** therein the holdings of the Supreme Court of the United States evidenced in **Attach 7—1938 Cong. Rec. are ignored, to wit:**

**(1) [Pg. 10]** *United States v. Cruikshank et al,* 92 U.S. 542, 554-555 (1875); and, **(2) [Pg. 10]** *Minor v. Happersett,* 88 U.S. 162 (1874); and,
**(3) [Pg. 10]** *United States v. Reese et al.,* 92 U.S. 214 (1875); and,
**(4) [Pg. 10]** *Strauder v. West Virginia,* 100 U.S. 303 (1879) [*abrogated by Taylor            v. Louisiana,* 419 U.S. 522 (1975)) *on other issues*]; and,
**(5)** [Pg. 10]*Virginia v. Rives,* 100 U.S. 13 (1879); and,
**(6) [Pg. 10]** *Neal v. Delaware,* 103 U.S. 370 (1880); and,
**(7) [Pg. 10]** *United States v. Harris,* 106 U.S. 629 (1883).

### IV. Jurisdiction Is in the "District Court of the United States and NOT the "United States District Court"

1. Gladden is invoking the subject matter jurisdiction of this Habeas being filed into the bona fide "**District Court of the United States**"[20] **("the Court")** ordained and established in the Judiciary Act of 1789, 1 Stat. 73-93, arising under Article III Sections 1 and 2 of the Constitution of the United States exercising the" judicial Power of the United States" in all Cases, In Law and Equity; and, not *this Court* being the United States District Court ("**USDC**" or "*this Court*") of 1948 "Judicial Code and Judiciary," 62 Stat. 869-1009, codified in 28 U.S.C. § 132(c) exercising "the judicial power of a district court . . . may be exercised by a single judge."[21]

---

[20] The "District Court of the United States" arising under Article III Sections 1 and 2 was

Complaint—Case: 3:19-cv-99                    56

## A. District Court of the United States Means.

1. In *Wells, et al. v. United States et al.*, 214 F.2d 380, 382 (5ᵗʰ Cir. 1954), to wit:

Not content with this negative defense, the United States, taking the affirmative, conclusively demonstrates, we think, that by Section 1346, 'United States as Defendant', under the provisions of which appellants seek to maintain their suit, the United States has consented to waive its sovereign immunity from suit and permit actions to be brought against it for the recovery of internal revenue taxes only in the Court of Claims and in the district courts; and that, as used in Title 28, the **term 'district courts' means only those courts which are created under Article III of the Constitution** and which are constituted by Chapter 5 of Title 28. **FN6.**

**FN6.** *Mookini v. United States*, 303 U.S. 201 (1938); *International Longshoremen's, Etc., Union v. Wirtz*, 9 Cir., 170 F.2d 183 (1948); *Reese v. Fultz*, 96 F.Supp. 449(D.C. Territory of Alaska 1951); 28 U.S.C., Section 451, Appendix, infra.

In *Mookini et al. v. United States*, 303 U.S. 201, 205 (1938), to wit:

The term **'District courts of the United States,'** as used in the rules, without an addition expressing a wider connotation, has its historic significance. **It describes the constitutional courts created under article 3 of the Constitution. Courts of the Territories are legislative courts,** properly speaking, and **are not District courts of the United States. We have often held that vesting a territorial court with jurisdiction similar to that vested in the District courts of the United States does not make it a 'District court of the United States.'** *Reynolds v. United States*, 98 U.S. 145, 154 (1878); *The City of Panama*, 101 U.S. 453, 460 (1879); *In re Mills*, 135 U.S. 263, 268 (1941); *McAllister v. United States*, 141 U.S. 174, 182 (1891); *Stephens v. Cherokee Nation*, 174 U.S. 445, 476, 477 (1899); *Summers v. United States*, 231 U.S. 92, 101, 102 (1913); *United States v. Burroughs*, 289 U.S. 159, 163 (1933). Not only did the promulgating order

---

not abolished in 1948 when the USDC was created codified in 28 U.S.C. § 132. See *Wells, et al. v. United States et al.*, 214 F.2d 380, 382 (5ᵗʰ Cir. 1954); *Mookini et al. v. United States*, 303 U.S. 201, 205 (1938).

[21] Reviser's Notes of 28 U.S.C. § 132, "Subsection (c) is derived from section 641 of Title 48, U.S.C., 1940 ed., **which applied only to the Territory of Hawaii. The revised section, by extending it to all districts, merely recognizes established practice."**

use the term District courts of the United States in its historic and proper sense, but the omission of provision for the application of the rules to the territorial courts and other courts mentioned in the authorizing act clearly shows the limitation that was intended.

## B.  Subject Matter Jurisdiction.

1.  As held in *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) "It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."

2.  In *Statterlee v. Commissioner of Internal Revenue, et al.*, 195 F.Supp.3d 327 (Dist.Cir. 2016), to wit:

> Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 63 (D.D.C.2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C.Cir.2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement ... no action of the parties can confer subject-matter jurisdiction upon a federal court.' " *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C.Cir.2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

> When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). *333 Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.Supp.2d 18, 22 (D.D.C.2000), citing

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992); *see also*
*Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C.Cir.2005).

### C. "United States District Court" under 28 U.S.C. § 132 is NOT the "judicial Power of the United States" but the "judicial power of a district court."

1. ***This Court* ("USDC")** is not exercising the judicial Power of the United States and *this Court* does not Arise under Article III Section 1 and 2 exercising the judicial Power of the United States in all Cases in Law and Equity, but the United States District Court ("USDC") is operating with the codified authority of as evidenced by the Public Record of **Attachment 8—***Title 28, United States Code Congressional Service, New Title 28— and Judicial Procedure Pages 1487-2174, 80th Congress—2nd Session, Epochal Legislation, West Publishing 1948—*pg. I —*"augmented by expert revisers and consultants"—New Title 28, United States Code, Judiciary and Judicial Procedure With* **Official** *Legislative History and Reviser's Notes.* *Page 1521—28 U.S.C §* **132. Creation and composition of district courts ("Attach 8—28 U.S.C. § 132")**

2. This is an excerpt of **Attach 8—28 U.S.C. 132** of public record that *this Court* and **the Court** shall take judicial Notice thereof, to wit

    (a) There shall be in each judicial district a district court which shall be a court of record known as the **United States District Court for the district.**

    (b) Each district court shall consist of the district judge or judges for the district in regular active service. Justices or judges designated or assigned shall be competent to sit as judges of the court.

    (c) Except as otherwise provided **by law, or rule or order of court, the judicial power of a district court** with **respect to any action, suit or proceeding may be exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges.**

       *Page 1732—***Section 132—Revised [Reviser's Notes]**—Section 132-Section Revised

       Based on title 28, U.S.C., 1940 ed., § 1, and section 641 of title **48, U.S.C., 1940 ed., Territories and Insular Possessions** (Apr. 30, 1900, ch. 339, § 86, 31 Stat. 158; Mar. 3, 1909, ch. 269, § 1, 35 Stat. 838; Mar. 3,

Complaint—Case: 3:19-cv-99       59

1911, ch. 231, § 1, 36 Stat. 1087; July 30, 1914, ch. 216, 38 Stat. 580; July 19, 1921, ch. 42, § 313, 42 Stat. 119; Feb. 12, 1925, ch. 220, 43 Stat. 890; Dec. 13, 1926, ch. 6, § 1, 44 Stat. 19).

Section consolidates section 1 of title 28, U.S.C., 1940 ed., and section 641 of title 48, U.S.C., 1940 ed., with changes in phraseology necessary to effect the consolidation.

**Subsection (c) is derived from section 641 of title 48, U.S.C., 1940 ed. [Territories and Insular Possessions], which applied only to the Territory of Hawaii. The _revised_ section, by extending it to _all districts,_ merely recognizes established practice.**

Other portions of section 1 of title 28, U.S.C., 1940 ed., are incorporated in sections 133 and 134 of this title. The remainder of section 641 of title 48, U.S.C., 1940 ed., is incorporated in sections 91 and 133 of this title.

3.  An essential element of the "**judicial Power of the United States**" arises under Article III Section 1 "**The judicial Power of the United States**, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. . . . Section 2. The **judicial Power** shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority" irrevocably precludes "The **judicial power of a district court** [28 U.S.C. § 132(c), _ibid._] **[is derived from the Territory of Hawaii,** _ibid._] . . . may be exercised by a single judge," is merely codifying the use of an "inquisition" CON.

4.  See _Lawkowski v. Spellings_, 443 F.3d 930, 941 (7th Cir. 2006) It should not be undertaken in the absence of an actual claim for this form of relief and full briefing by the parties. _See McNeil v. Wisconsin,_ 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (" What makes a system adversarial rather than inquisitorial is ... **the presence of a judge who does not (as an inquisitor does) conduct the factual and**

**legal investigation himself,** but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

5. When, as here if in **this Court**, a matter is moot or the court otherwise lacked jurisdiction, the judgment and all actions amounts to an impermissible advisory opinion, a legal nullity, and is void.

6. In *Williamson v. Berry*, 49 U.S. 495, 541 (1850) "But if it [*this* court] act without authority, its judgments and orders are a nullity; they are not voidable, but simply void . . ."; *Elliott v. Peirsol's Lessee*, 26 U.S. 328, 329 (1828) ""But if it [*this* court] act without authority, its judgments and orders are a nullity; they are not voidable, but simply void . . ." See also *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 353, 354 (1920). In *Dynes v. Hoover*, 61 U.S. 65, 66 (1857) as follows:

> The following well-settled principles of law cannot be controverted: 'That when a court has jurisdiction, it has a right to decide every question before it; and if its decision is merely *erroneous*, and not *irregular and void*, it is binding on every other court until reversed. But if the subject-matter is not within its jurisdiction, or where it appears, from the conviction itself, that they have been guilty of an excess, or have decided on matters beyond and not within their jurisdiction, all is void, and their judgments, or sentences, are regarded in law as nullities. They constitute no justification; and all persons concerned in executing such judgments, or sentences, are trespassers, and liable to an action thereon.' (Numerous case cites omitted)

**D. Reviser's Notes**

1. As to reviser's notes, It is well settled that the reviser's notes are authoritative in interpreting the Code. See *United States v. National City Lines,* 337 U.S. 78, 81 (1949); *Stainback v. Mo Hock Ke Lok* Po, 336 U.S. 368 n. 12 (1949); *Aberdeen & Rockfish R. Co. v. Students Challenging Regulatory Agency*, 422 U.S. 289, 309 (1975);

*Western Pac. R. Corp. v. Western Pac. R. Co.*, 345 U.S. 247, 254-255 (1953); *Pope v. Atlantic Coast Line R.Co.*, 345 U.S. 379, 384 (1953); *Tivoli Realty v. Paramount Pictures*, 80 F.Supp. 278, 280 (D. Del. 1950); *United States v. Thompson*, 319 F.2d 665, 669 (1963) (2nd Cir. 1963); *United States ex rel. Almeida*, 195 F.2d 815 (3rd Cir. 1952); *Adamowski v. Bard*, 193 F.2d 578, 581 (3rd Cir. 1952); *United States ex rel. Auld v. Warden of New Jersey State Penitentiary*, 187 F.2d 615 n. 1 (3rd Cir. 1951); *Lake v. New York Life Ins. Co.*, 218 F.2d 394, 398 (4th Cir. 1955); *Government Nat. Mortg. Ass/n v. Terry*, 608 F.2d 614, 618 n. 5 (5th Cir. 1979); *Acron Investments, Inc. v. Federal Sav. & Loan Ins. Corp.*, 363 F.2d 236, 240 (9th Cir. 1966); *Ragsdale v. Price*, 185 F.Supp. 263, 265 (M.D. Tenn. 1960); *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748, 752 (9th Cir. 1964); *Stauffer et al. v. Exley*, 184 F.2d 962, 964 (9th Cir. 1950); *King v. United States*, 390 F.2d 894, 913 (Ct.Cl. 1968) [28 U.S.C. 2201-02]; *Matter of Contest of General election on Nov. 8, 1977*, 264 N.W.2d 401, 405-405 (Sup. Ct. Minn. 1978); *United States v. Klock*, 100 F.Supp. 230, 233 (N.D. N.Y. 1951); *State ex rel. v. Shoemaker*, 39 N.W.2d 524, 528 (Sup. Ct. S.D. 1949); *Glenn v. United States*, 129 F.Supp. 914, 917 (S.D. Cal. 1955

## E.  28 U.S.C. Organization of Court—Chapter 5—1948 Chapter 646—Pubic Law 773; and, 28 U.S.C. § 451 Definitions 1948 Chapter 646—Pubic Law 773

1.  This USDC established and derived from the "Territory of Hawaii" (See Reviser's Notes for 28 U.S.C. § 132(c)) in 28 U.S.C. § 132(c) evidenced in **Attach 8—28 U.S.C. § 132** unambiguous Statue of the United States that—"**[T]he judicial power of a district court** [this USDC] with **respect to any action, suit or proceeding may be**

exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges" *flows a fortiori* of an irrevocable estoppel that this USDC is precluded to even have an illusion to accept or to exercise the "Judicial Power of the United States" arising under Article III Sections 1 and 2 under any condition and that is an unassailable fact.

2. As evidenced by the excerpt of **Attachment 9—*Title 28, United States Code Congressional Service, New Title 28—and Judicial Procedure Pages 1487-2174, 80th Congress—2nd Session, Epochal Legislation, West Publishing 1948*—pg. i— "augmented by expert revisers and consultants"—*New Title 28, United States Code, Judiciary and Judicial Procedure With Official Legislative History and Reviser's Note.* (Attach 9—28 U.S.C. § 451") on pg. 11),** which this Court shall take judicial Notice thereof, to wit:

> The term **"court of the United States"** includes the Supreme Court of the United States, courts of appeals, district courts constituted **by chapter 5** of this title, including the district courts of the United States **for** the districts of Hawaii and Puerto Rico . . . The terms **"district court"** and **"district court of the United States" mean** the courts **constituted** by **chapter 5 of this title**.

3. The definition in 28 U.S.C. § 451 conflates "**district court**" with "**district court of the United States**" wherein *flows a fortiori* that all of the Courts listed in Chapter 5 are authorized and empowered exactly same and of course both a "district court" and "district court of the United States" are ONLY exercising the "judicial power of a district court" was found in the unambiguous codified Statute of the United States in 28 U.S.C. § 132(c); and, not the "judicial Power of the United States" arising under

Article III Sections 1 and 2.

4, And further, in the excerpt of **Attachment 10**—*Title 28, United States Code Congressional Service, New Title 28*—*and Judicial Procedure Pages 1487-2174, 80th Congress*—*2nd Session, Epochal Legislation, West Publishing 1948*—*pg.i*— **"augmented by expert revisers and consultants"**—*New Title 28, United States Code, Judiciary and Judicial Procedure With <u>Official</u> Legislative History and <u>Reviser's Note</u>.* **(Attach 10—28 U.S.C. Chapter 5") on pgs. 10-11),** we find the Territory of Hawaii at Section 81, the District of Columbia at Section 88 and Puerto Rico at Section 119.

5. As included in Chapter 5, being "Hawaii," which was still the Territory of Hawaii is in reality an Article IV court. In *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 64-65 (1982), to wit:

> Appellants first rely upon a series of cases in which this Court has upheld the creation by Congress of non-Art. III "**<u>territorial courts.</u>**" This exception from the general prescription of Art. III dates from the earliest days of the Republic, when it was perceived that the Framers intended that as to certain geographical areas, in which no State operated as sovereign, **Congress was to exercise the general powers of government.** For example, in *American Ins. Co. v. Canter,* 1 Pet. 511, 7 L.Ed. 242 (1828), the Court observed that **Art. IV bestowed upon Congress alone a complete power of government over territories not within the States that constituted the United States.** The Court then **<u>acknowledged Congress' authority to create courts for those territories that were not in conformity with Art. III.</u>** Such courts were "created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which **enables Congress to make all needful rules and regulations, respecting the territory belonging to the United States.** The jurisdiction with which they are invested ... is conferred by **Congress, in the execution of those general powers which that body possesses over the territories of the United States.** Although admiralty jurisdiction can be exercised in the states in those Courts, only, which are established in pursuance of the third article of the Constitution; the same limitation does not extend to the territories. **In legislating for them, Congress exercises**

the combined powers of the general, and of a state government." *1 Pet., at 546.*

The Court followed the same reasoning when it reviewed Congress' creation of non-Art. III courts in the District of Columbia. It noted that there was in the District "no division of powers between the general and state governments. Congress has the entire control over the district for every purpose of government; and it is reasonable to suppose, that in organizing a judicial department here, all judicial power necessary for the purposes of government would be vested in the courts of justice." *Kendall v. United States,* 12 Pet. 524, 619, 9 L.Ed. 1181 (1838). [FN16]

FN16. We recently reaffirmed the principle, expressed in these early cases, **that Art. I, § 8, cl. 17,** provides that Congress shall have power "[t]o exercise exclusive Legislation <u>in all Cases whatsoever, over" the District of Columbia.</u> *Palmore v. United States,* 411 U.S., at 397, 93 S.Ct., at 1676. See also *Wallace v. Adams,* 204 U.S. 415, 423, 27 S.Ct. 363, 365, 51 L.Ed. 547 (1907)(recognizing Congress' authority to establish legislative courts to determine questions of tribal membership relevant to property claims within Indian territory); *In re Ross,* 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581 (1891)(same, respecting consular courts established by concession from foreign countries). See generally 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice 46–49, 53–54 (1982). But see *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

In *Williams v. United States,* 289 U.S. 553, 565-566 (1933), to wit:
That **judicial power** apart from that article may be conferred by Congress upon <u>legislative courts</u>, as well as upon <u>constitutional courts,</u> is plainly apparent from the opinion of Chief Justice Marshall in *American Insurance Company et al. v. Canter,* 1 Pet. 511, 546, 7 L.Ed. 242, <u>dealing with the territorial courts. 'The jurisdiction,' he said, 'with which they are invested, is not a part of that judicial power which is defined in the 3d article of the Constitution</u>, but is conferred by Congress, in the execution of those general powers which that body possesses over the territories of the United States.' That is to say (1) that the courts of the territories (and, of course, **other legislative courts**) are invested with judicial power, **but (2)** *that this power is not conferred by the third article of the Constitution,* but by Congress in the execution of other provisions of that instrument. * * * . 'Thus,' he says, 'the authority granted to territorial courts to hear and determine controversies arising in the territories of the United States is judicial power. **But it is not a part of that judicial power**

**granted by section 1, and defined by section 2, of article 3 of the Constitution**. Nevertheless, under the constitutional grant to Congress of power to 'make all needful rules and regulations respecting the territory * * * belonging to the United States' (article 4, s 3), that body **may create territorial courts not contemplated or authorized by article 3 of the Constitution**, and may confer upon them **plenary judicial power,** because the establishment of such courts and the bestowal of such authority constitute appropriate means by which to exercise the congressional power to make needful rules respecting the territory belonging to the United States. * *

6. The Courts of the United States have held from the earlier cases in our Republic until now the unassailable fact that all courts in the Territories and Possessions do not exercise the "judicial Power of the United States" arising under Article III Sections and 2 by are Article IV "legislative courts" under the plenary Power of Congress as also are the Courts in the District of Columbia are courts of general jurisdiction under the plenary Power of Congress being different from limited jurisdiction of the "District Courts of the United States" within the Union of States, being the several States.

7. The Courts of the United States in the District of Columbia are clearly different that the District Courts of the United States as held in *Postum Cereal Co, Inc. v. California Fig Nut Co.,*, 272 U.S. 693, 700 (1927) cited *supra,* in FN12 in *Crowell v. Crowell*, 285 U.S. 22, 50-51 (1932), to wit:

> The distinction between the jurisdiction of this court which is confined to the hearing and decision of cases in the constitutional sense and that of administrative action and decision, power for which may be conferred upon courts of the District is shown in the case of *Keller v. Potomac Electric Company*, 261 U. S. 428, 440, 442, 443, 43 S. Ct. 445, 67 L. Ed. 731. There it is pointed out that, **while Congress in its constitutional exercise of exclusive legislation over the District may clothe the courts of the District, not only with the jurisdiction and powers of the federal courts in the several states, but also with such authority as a state might confer on her courts** (*Prentis v. Atlantic Coast Line Company*, 211 U. S.

Complaint—Case: 3:19-cv-99          66

210, 225, 226, 29 S. Ct. 67, 53 L. Ed. 150), and **so may vest courts of the District with administrative or legislative functions which are not properly judicial, it may not do so with this court, or any federal court established under article 3 of the Constitution**. Of the jurisdiction of this court, we said, at page 444 of 261 U. S. (43 S. Ct. 449):

'**Such legislative or administrative jurisdiction, it is well settled, cannot be conferred on this court either directly or by appeal.** The latest and fullest authority upon this point is to be found in the opinion of Mr. Justice Day, speaking for the court in *Muskrat v. United States*, 219 U. S. 346 (31 S. Ct. 250, 55 L. Ed. 246). **The principle there recognized and enforced on reason and authority is that the jurisdiction of this court and of the inferior courts of the United States ordained and established by Congress under and by virtue of the third article of the Constitution is limited to cases and controversies in such form that the judicial power is capable of acting on them,** and does not extend to an issue of constitutional law framed by Congress for the purpose of invoking the advice of this court without real parties or a real case, **or to administrative or legislative issues or controversies.**'
See, also, *Liberty Warehouse Co. v. Grannis*, 273 U. S. 70, 47 S. Ct. 282, 71 L. Ed. -, decided this day.
    With this limitation upon our powers, it is not difficult to reach a conclusion in the present case. We should have had no power to review the action of the District Court if it had heard the appeal and **taken administrative jurisdiction, and by the same token have now no power to review its action in refusing such jurisdiction.**

8. Clearly this conflating of the courts in territories and possessions with the courts within the District of Columbia with bona fide Courts of the United States arising under the Article III Sections 1 and 1 exercising the "judicial Power of the United States,' which "shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and treaties made, or which shall be made, under their Authority" into "Chapter 5" is totally *ultra vires* and total FRAUD and CON.

## F. "citizens of the United States" Can Be Tried Before a Non- Article III Section 1 and 2 Judge

1. There is no requirement for Congress to adjudicate any Case or Controversy arising under a bona fide Article III Court for "citizens of the United States" in "federal enclaves" and this has application to "Federal Areas" under the Buck Act in the overlay of the several States for "citizens of the United States;" and, this is affirmed by Supreme Court of the United States holdings and pronounced in *United States v. Jenkins*, 734 F.2d 1322, 1325-1326 (9th Cir. 1983), to wit:

> The Constitution grants Congress the authority over federal enclaves, by providing that Congress has the power to exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia], and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for Erection of Forts ... and other needful Buildings.

> U.S. Const. art. I, § 8, cl. 17. **The Congressional power under clause 17 is plenary.** *See Palmore v. United States*, 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973). When Congress legislates with respect to the **District of Columbia and federal enclaves** it acts as a state government with all the powers of a state government. *See id.; Paul v. United States*, 371 U.S. 245, 263, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963).

> In *Palmore*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Supreme Court considered "whether a defendant charged with a felony under the District of Columbia Code **may be tried by a judge who does not have protection with respect to tenure and salary under Art. III of the Constitution.**" *Id.* at 390, 93 S.Ct. at 1672. **The Court held that under clause 17 Congress could provide that such a defendant be tried before a non-Article III judge.** *Id.* at 390–91, 93 S.Ct. at 1672–73.

> **Because clause 17 does not distinguish between the District of Columbia and other federal enclaves,** we find *Palmore* **\*1326** indistinguishable from the instant case and controlling. *See Paul v. United States*, 371 U.S. at 263, 83 S.Ct. at 437 ("The power of Congress over federal enclaves that come within the scope of Art. I, § 8, cl. 17, is obviously the same as the power of Congress over the District of Columbia"). In addition, the reasoning of *Palmore* is fully applicable here.

Complaint—Case: 3:19-cv-99                68

**Under clause 17 Congress acts as a state government with total legislative, executive and judicial power.** *Palmore,* 411 U.S. at 397, 93 S.Ct. at 1676; *see Marathon Pipe Line Co.,* 102 S.Ct. at 2873–74 (discussing the rationale of *Palmore* ). **The Constitution does not require that all federal criminal law be enforced before Article III courts.** *Palmore,* 411 U.S. at 400, 93 S.Ct. at 1677; *see Swain v. Pressley,* 430 U.S. 372, 382–83, 97 S.Ct. 1224, 1230–31, 51 L.Ed.2d 411 (1977). Thus, the requirements of Article III are consistent with the establishment by Congress of non-Article III courts to enforce federal criminal laws in special **geographic areas** where, pursuant to clause 17, it functions as a state government. *Palmore,* 411 U.S. at 407–08, 93 S.Ct. at 1681–82; *see Marathon Pipe Line Co.,* 102 S.Ct. at 2874 (emphasizing Congress's unique power under Art. I, § 8, cl. 17, to legislate in certain geographic areas).

2. Remember that under the NVRA that the elections are for the unambiguous statute found in 107 Stat. 77-109 codified in 52 U.S.C. § 20502 (4) "the term "State" means a State of the United States and the District of Columbia," wherein this NOT the Alaska, being one of the several States.

## G. Inquisitions versus Adversarial

1. **Clearly the alleged Bench Trial in the SOA are merely inquisitions as they do not guarantee an Independent Judge as in the District of Columbia not even a bona fide Article III arising under Sections 1 and 2 is required remembering that SOA is equal to the "District of Columbia" as to the definition of "State" in the NVRA.**

2. his essential element of NO constitutional Court in the District of Columbia is explained in great detail in *United States v. Jenkins,* 734 F.2d 1322 (1983), to wit:

3. The Constitution grants Congress the authority over federal enclaves, by providing that Congress has the power

> to exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia], and to exercise like Authority over all Places purchased by the Consent of the Legislature of

the State in which the Same shall be, for Erection of Forts ...
and other needful Buildings.

U.S. Const. art. I, § 8, cl. 17. The Congressional power under clause 17 is
plenary. *See Palmore v. United States*, 411 U.S. 389, 397, 93 S.Ct. 1670,
1676, 36 L.Ed.2d 342 (1973). When Congress legislates with respect to the
District of Columbia and federal enclaves it acts as a state government with
all the powers of a state government. *See id.; Paul v. United States*, 371
U.S. 245, 263, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963).

In *Palmore*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the
Supreme Court considered "whether a defendant charged with a felony
under the District of Columbia Code may be tried by a judge who does not
have protection with respect to tenure and salary under Art. III of the
Constitution." *Id.* at 390, 93 S.Ct. at 1672. The Court held that under clause
17 Congress could provide that such a defendant be tried before a non-
Article III judge. *Id.* at 390–91, 93 S.Ct. at 1672–73.

Because clause 17 does not distinguish between the District of
Columbia and other federal enclaves, we find *Palmore* *1326
indistinguishable from the instant case and controlling. *See Paul v. United
States*, 371 U.S. at 263, 83 S.Ct. at 437 ("The power of Congress over
federal enclaves that come within the scope of Art. I, § 8, cl. 17, is
obviously the same as the power of Congress over the District of
Columbia"). In addition, the reasoning of *Palmore* is fully applicable here.
Under clause 17 Congress acts as a state government with total legislative,
executive and judicial power. *Palmore*, 411 U.S. at 397, 93 S.Ct. at 1676;
*see Marathon Pipe Line Co.*, 102 S.Ct. at 2873–74 (discussing the rationale
of *Palmore* ). The Constitution does not require that all federal criminal law
be enforced before Article III courts. *Palmore*, 411 U.S. at 400, 93 S.Ct. at
1677; *see Swain v. Pressley*, 430 U.S. 372, 382–83, 97 S.Ct. 1224, 1230–
31, 51 L.Ed.2d 411 (1977). Thus, the requirements of Article III are
consistent with the establishment by Congress of non-Article III courts to
enforce federal criminal laws in special geographic areas where, pursuant to
clause 17, it functions as a state government. *Palmore*, 411 U.S. at 407–08,
93 S.Ct. at 1681–82; *see Marathon Pipe Line Co.*, 102 S.Ct. at 2874
(emphasizing Congress's unique power under Art. I, § 8, cl. 17, to legislate
in certain geographic areas).

4.   Therein the **SOA is in reality an Inquisition** as stated In *Laskowski v.*

*Spellingings*, 443 F.3d 930, 941 (7th Cir. 2006), wherein the Seventh Circuit distinguishes

the difference between an adversarial system and an inquisitorial system concerning

plaintiff taxpayers with an inquisitor, to wit:

> It should not be undertaken in the absence of an actual claim for this form
> of relief and full briefing by the parties. *See McNeil v. Wisconsin,* 501 U.S.
> 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (" **What makes a
> system adversarial rather than inquisitorial is ... the presence of a judge
> who does not (as an inquisitor does) conduct the factual and legal
> investigation himself,** but instead **decides on the basis of facts and
> arguments pro and con adduced by the parties.**").

5. In *Miller v. Fenton,* 374 U.S. 104, 110 (1985) "[T]he court's analysis has

consistently been animated by the view that "ours is a accusatorial and not an

inquisitorial system. *Roberts v. Richmond,* 385 U.S. 534, 541 (1961)."

6. In *Rogers .v Richmond,* 365 U.S. 534, 540-541, to wit:

> Our decisions under that Amendment have made clear that convictions
> following the admission into evidence of confessions which are
> involuntary, i.e., the product of coercion, either physical or psychological,
> cannot stand. This is so not because such confessions are unlikely to be
> *541 true but because the methods used to extract them offend an
> underlying principle in the enforcement of our criminal law: **that ours is an
> accusatorial and not an inquisitorial system**—a system in which the
> State must establish guilt by evidence independently and freely secured and
> may not by coercion prove its charge against an accused out of his own
> mouth. See *Chambers v. State of Florida,* 309 U.S. 227, 60 S.Ct. 472, 84
> L.Ed. 716; *Lisenba v. People of State of California,* 314 U.S. 219, 236, 62
> S.Ct. 280, 289, 86 L.Ed. 166; *Rochin v. People of California,* 342 U.S. 165,
> 172—174, 72 S.Ct. 205, 209—210, 96 L.Ed. 183; *Spano v. People of State
> of New York,* 360 U.S. 315, 320—321, 79 S.Ct. 1202, 1205—1206, 3
> L.Ed.2d 1265; *Blackburn v. State of Alabama,* 361 U.S. 199, 206—207, 80
> S.Ct. 274, 279—280, 4 L.Ed.2d 242. And see *Watts v. State of Indiana,* 338
> U.S. 49, 54—55, 69 S.Ct. 1347, 1350, 1357, 93 L.Ed. 1801. To be sure,
> confessions cruelly extorted may be and have been, to an unascertained
> extent, found to be untrustworthy. But the constitutional principle of
> excluding confessions that are not voluntary does not rest on this
> consideration. Indeed, in many of the cases in which the command of the
> Due Process Clause has compelled us to reverse state convictions involving
> the use of confessions obtained by impermissible methods, independent

corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees.

7. In *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991), to wit:

What makes a system **adversarial rather than inquisitorial** is not the presence of counsel, much less the presence of counsel where the defendant has not requested it; but rather, the presence of a judge who does not (as an **inquisitor does) conduct the factual and legal investigation himself,** but instead decides on the basis of facts and arguments pro and con adduced by the parties.

8. See also *In re United Air Lines, Inc.*, 438 F.3d 720, 738 (7th Cir. 2006);

*Sanchez-Liamas v. Oregon*, 548 U.S. 331, 357 (2006); *United States v. Loughner*,

672 F.3d 731, 773 (9th Cir. 2012), to wit:

As he recognized, "[w]hat makes a system adversarial rather than inquisitorial is not the presence of counsel ... but rather, the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin,* 501 U.S. 171, 181, n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). In Loughner's *Harper* hearings, the **presiding psychiatrist**, Dr. Tomelleri, **acted as an inquisitor.**

9. In *Dietrz v. Blould*, 794 F.3d 1093,1102, 1103 (9th Cir. 2015), to wit:

Our system of justice is an adversarial one. "What makes a system adversarial rather than inquisitorial is not the presence of counsel," but "the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the bases of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin,* 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Consistent with this principle, our court has never required district court judges develop—**by interrogation of witnesses—the record on which they**

Complaint—Case: 3:19-cv-99                72

**render judgments; instead, we require district court judges to make specific findings based on the evidence that the parties place in the record.**

In *United States v. Bendolph*, 409 F.3d 155, 172 (3rd Cir. 2005), to wit:

Underlying the *Scott* and *Nardi* decisions is the rule that generally it is not appropriate for a court to *sua sponte* raise non-jurisdictional defenses not raised by the parties. *See Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir.2000) ("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties."); *cf. Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir.1969) **(holding that a court may not raise the defense of lack of personal jurisdiction—a non-jurisdictional defense because it does not concern the power of the court to entertain the suit—once the defendant has waived the issue by appearing).** This rule exists because ours is an adversarial system, which relies on advocacy by trained counsel. *Cf. United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring) ("The rule that points of law not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, **distinguishes our adversary system of justice from the inquisitorial one.").** In an adversarial system, it is not for the courts to bring to light the best arguments for either side; that responsibility is left to the parties themselves. *McNeil v. Wisconsin,* 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ("What makes a system adversarial rather than inquisitorial is ... the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con *adduced by the parties*.") (emphasis added). As the Supreme Court has explained, "[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

10. In *Brown v. United States*, 2011 WL 2470732, *2 (E.D. N.C. 2011), to wit:

The IRS's " 'summons power should ... be liberally construed in light of the purposes it serves.' " *Uhrig v. United States,* 592 F.Supp. 349, 352 (4th Cir.1984) (quoting *Godwin v. United States,* 564 F.Supp. 1209, 1212 (D.Del.1983)). As noted above, the IRS possesses the "**power of inquisition**" to investigate possible **unpaid tax liabilities, and its inquisitory powers need not be supported by probable cause that wrongdoing has occurred.** *Powell,* 379 U.S. at 57; *see also United States v. Bisceglia,* 420 U.S. 141, 146 (1975) (**"The purpose of the [summons] statutes is not to accuse, but to inquire."**). **Although a court will not**

enforce a summons that appears to be a groundless fishing expedition through **taxpayer** records, the IRS need only convince the court that it **"has a 'realistic expectation rather than an idle hope that SOAething may be discovered.'** " *United States v. Richards,* 631 F.2d 341, 345 (4th Cir.1980) (quoting *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir.1968)). "This standard generally will be satisfied where the summons pertains to 'a legitimate investigation of an ascertainable target.' " *United States v. O'Shea,* 662 F.Supp.2d 535, 541 (S.D.W.Va.2009) (quoting *Tiffany Fine Arts, Inc. v. United States,* 469 U.S. 310, 320 (1985)). **"Provided that the four good faith elements are satisfied, no greater justification is required."** *Id.*

11. In *United States v. Central National Bank,* 1980 WL 1515m •7 *(N.D.

Ohio 1980), to wit:

12. The teaching of *Powell* militates against approval of the Magistrate's reasoning and result. **The taxpayer in *Powell*,** who had previously been examined by the IRS, challenged a summons directed at tax years as to which, unless fraud was proved, the statute of limitations had run. The **taxpayer** asserted that the IRS should bear the burden of showing a basis for suspecting fraud as a prerequisite to the enforcement of the summons, relying on 26 U. S. C. § 7605(b), which precludes "unnecessary examination or investigations." The Court firmly rejected this argument [FN8] and ruled that probable cause need not be shown to obtain enforcement of a section 7602 summons.

FN8. It has the **power of inquisition**, if one chooses to call it that, **which is not derived from the judicial function**. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not. [*United States v.* Powell] 379 U. S. at 57. This analogy further supports the court's conclusion that inquiry into the basis for an IRS investigation should not be allowed as a matter of course. See *United States v. Newman, supra,* 441 F. 2d at 174-74.

13. In *United States v. Newman,* 441 F.2d 165, 174 (5th Cir. 1971), to wit:

An important factor back of this approach is of course the fact that if accusatory proceedings are begun the person concerned 'will be accorded **all the traditional judicial safeguards at a subsequent adjudicative proceeding * * *.'** [*Hannah v.* Larche] 363 U.S. at 446 [1980]. And this

applies in the context of an IRS summons situation as Donaldson makes clear.

14. In *United States v. O'Shea*, 662 F.supp.2d 535, 539 (S.C. W.Va. 2009), to wit:

> Furthermore, the IRS possesses the **"power of inquisition"** to investigate possible unpaid tax liabilities, and its **inquisitory powers** need **not be supported by probable cause that wrongdoing has occurred.** *Powell,* 379 U.S. at 57, 85 S.Ct. 248; *see also United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975) ("The purpose of the [summons] statutes **is not to accuse, but to inquire.**"). If the Government meets its burden of demonstrating that the summons was issued in good faith, **"it is entitled to an enforcement order unless the <u>taxpayer</u> can show that the IRS is attempting to abuse the court's process."** *Conner,* 434 F.3d at 680 (quoting *United States v. Stuart,* 489 U.S. 353, 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989)).

15. *United States v. O'Shea*, 662 F.Supp.2d 535, 539 (S.D.W.Va. 2009)

"[T]he IRS possesses the **"power of inquisition"** <u>to investigate</u> possible unpaid tax liabilities . . . the purpose . . . **is not to accuse, but to inquire** . . . unless the [I am a] **taxpayer.**"

## V. Parties.

### A. David Gary Gladden ("Gladden")

1. Gladden is a "citizen of Alaska" domiciled in Alaska, being one of the several States as evidenced by **Attachment 1—Certificate of Political Status, Citizenship and Allegiance Recorded in Palmer, Alaska Recording District 311 number "2015-012507-0" ("A1—Status").**

2. And further, Gladden is a "National of the United States" as defined in 8 U.S.C. § 1101(a)(22)(B) ",or **(B) a person who, though <u>not a citizen of the United</u>**

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 82 of 104

<u>States</u>, **owes permanent allegiance to the United States.**" Remembering that in—

"(A) a citizen of the United States."

3. And further, he who declares to be a "citizen of the United States" had best have real evidence as it is a felony as codified in 18 U.S.C. § 911 if you do not have real evidence.

4, Gladden is not an "individual" as defined in 5 U.S.C. 522a(a)(2) "the term "individual" means a citizen of the United States or an alien lawfully admitted for permanent residence."

5. After "Actual Notice" to **REIGH,** she has NOT provided one scintilla of evidence that Gladden is a "citizen of the United States."

6. Gladden is bringing this Case in the "character of a "citizen of the United States."

## B. CHRISTINA L. REIGH ("REIGH")

1. **REIGH** is a "citizen of the United States."

2. **REIGH** is not a "citizen of Alaska" domiciled in Alaska (not a resident of Alaska) and also a "citizen of the United States."

3. **REIGH** is required by the Constitution **for** the State of Alaska Article IV Section 4 to be "citizens of the United States and the State" if **REIGH** is to be a bona fide Judge of the State of Alaska with an "office" established by the Legislature of the State of Alaska."

4. **REIGH** does not have in the public records any evidence of being in compliance with Article IV Sections 4 on being a "citizen of the States and the State" if

Complaint—Case: 3:19-cv-99          76

**REIGH is to** actually be a bona fide Judge of the State of Alaska if one is to use the Constitution **for** the State of Alaska, but it does not exist.

5. **REIGH** is to be appointed by the Governor under Article IV Section 5[22].

6. **REIGH** has no evidence of ever being Appointed to any constitutional Public Office as an public Officer of any of the several States in the public record.

7. **REIGH** is mandated to have a "Civil Commission" signed by the Governor of Alaska codified in ©AS 39.05.035—Civil Commission "After each appointment of a state officer, the <u>governor shall execute a commission, which states that the person to whom it is issued is appointed and sets out the office to and the term for which the officer is appointed</u>. The attorney general shall prescribe the form of the commission."

8. The STATE OF ALASKA does not have any "Civil Commissions" for any judges or justices (judicial officers) as evidenced by **Attachment 11—Letter of no Civil Commissions for Judicial Officers ("Attach 11—Civil Commission Letter").**

9. A bona fide "Civil Commission" is evidenced by **Attachment 12—Civil Commission ("Attach 12—Civil Commission").**

10. **REIGH** has refused to produce a "Civil Commission" or to even address the demand by Gladden for her "Civil Commission" in Case No. 3DI-18-2, Dillingham, Alaska.

11. **REIGH** is aware that the Governor issues BOGUS "Appointment Letters" where the Governor congratulates Judges for "accepting" the appointment (whom is

---

[22] **SECTION 5. NOMINATION AND <u>APPOINTMENT</u>.** The governor shall fill any vacancy in an office of supreme court justice or superior court judge by **<u>appointing</u>** one of two or more persons **nominated by the judicial council.**

doing is appointment is mystery) but the Governor is mandated to do the "Appointment" according to Article IV Section 5 and © AS 39.05.035—Civil Commissions.

12. **REIGH** has refused to even produce her "Appointment Letter" presumably from SOAe Governor.

13. Gladden has included as a sample of **SOA BOGUS** Appointment Letters for a Venessa White (Palmer) and a Fred Torissi (Dillingham – semi-retired I think) is evidenced by **Attachment 14—Appointment Letter for White and Torissi ("Attach 13—Appointment Letters").**

14. Gladden has many, many more of these Bogus "Appointment Letters" for judicial Officers (sic) in Alaska.

15. Gladden has demanded that **REIGH** provide the evidence of the public record of an "Oath of Office as a public Officer" as mandated by Article XII Section 5, to wit:

> **SECTION 5. OATH OF OFFICE.** All public officers, before entering upon the duties of their offices, shall take and subscribe to the following oath or affirmation: **"I do solemnly swear (or affirm) that I will support and defend the <u>Constitution of the United States</u> and the <u>Constitution of the State of Alaska</u>, and that I will faithfully discharge my duties as . . . . . . . to the best of my ability."** The legislature may prescribe further oaths or affirmations.

16. ladden has demanded that **REIGH** provide the evidence of the public record of an "Oath of Office as a public Officer" as mandated by ©AS 39.05.045 Oaths for other employees, to wit:

> A **public officer** or employee of the state, before **<u>entering upon the duties</u>** of office, **shall take and sign the following oath or affirmation:**
>
> "I do solemnly swear (or affirm) that I will support and defend the **Constitution of the United States** and the Constitution of the State of

Alaska, and that I will faithfully discharge my duties as .......... to the best of my ability."

17. **REIGH** has not provided any "Oath of Office as a public Officer" to date in compliance with Article XII Section 5 or ©AS 39.05.045.

18. Gladden is supplying copies of two "judges" (sic) that have an "Oath" being **Attachment 14—Oaths of John Suddock and Fred Torissi. (Attach 14—Oaths").**

19. The Court is to take judicial Notice that neither Suddock or Torissi have "Oaths" with the forty-one (41) words a mandated that is in quotation marks to alleviate any deviation and deception, but that did not stop Suddock or Torissi *flows a fortiori* that **REIGH will have a matching "Oath" if REIGH can be made to produce it.**

20. Both Torissi and Suddock inserted "**Constitution of the United States of America**" instead of "**Constitution of the United States."**

21. They are NOT the same thing as it an unassailable fact that the name is only the "Constitution of the United States." See the Preamble to the "Constitution of the United States" and the Oath of Office of the President of the United States. [23] This unassailable FACT can be documented many, many times.

22. Both Torissi and Suddock inserted "**for** the State of Alaska" instead of

[23] We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this **Constitution for the United States of America**: and,

Article II Section 1 Clause 8 "Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:--``I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the **Constitution of the United States**."

"judicial officer **of** the State of Alaska."

### a. "For" means on "Behalf of" or for the "Benefit of" or "Representing" the "STATE OF ALASKA" ("SOA")

1. As evidenced by the this excerpt from Blacks Law Dictionary Fourth Edition 1968, Pgs. 772 and 773 the definition of "for" is on "behalf of" or for the "benefit of" or "representing" the interests of the **SOA**.

**2.** It is an unassailable FACT that is **REIGH** is using "**For**" in any Oath or Alaska Bar Court Administrative District that **REIGH is NOT an independent judge.**

### b. Warning of NOT having "Independent Judges" by Chief Justice Marshall

1. Chief Justice Marshall, in the course of the debates of the Virginia State Convention of 1829--1830 (pp. 616, 619), used the following strong and frequently quoted language:

> 'The **Judicial Department comes home in its effects to every man's fireside; it passes on his property, his reputation, his life, his all.** Is it not, to the last degree important, **that he should be rendered perfectly and completely independent, with nothing to influence or control him but God and his conscience?** * * * I have always thought, from my earliest youth till now, **that the greatest scourge an angry Heaven ever inflicted upon an ungrateful and a sinning people, was an ignorant, a corrupt, or a dependent Judiciary.**'

> In a very early period of our history, it was said, in words as true today as they were then, that '**if they (the people) value and wish to preserve their Constitution, they ought never to surrender the independence of their judges.**' *O'Donoghue v. United States,* 289 U.S. 516, 532 (1933).

### c. "Behalf of" meaning

1. The meaning of "Behalf of" is evidenced in the following case, *i.e.* Concerning "behalf" as found in *Meyers v. State,* 105 S.W. 48, 49 (Tex.Civ.App. 1907), to wit:

In the case of *State v. Eggerman*, 81 Tex. 569, 16 S. W. 1067, the Supreme Court, in passing upon whether a suit was "in **behalf** of the state," adopts the following definition: "The word **'behalf'** means in **the name of,** on **account of, benefit, advantage, interest, profit, defense, vindication**; and in any of these senses this is evidently within the meaning of the Constitution a suit in behalf of the state."

2. In *United States v. Payne*, 30 F.2d 960, 961-962 (W.D.Northern Div.Wash. 1929), to wit:

The phrase, **'except when on behalf of the United States,'** was significantly used, and has a restricted application, **but has no application in a proceeding where the United States is a party.** It has application to actions **prosecuted or defended by instrumentalities of the United States, or others, on its behalf.** Suit may be brought <u>**by one in authority for the benefit or advantage of the United States**</u>, and, so brought, **would be in its behalf.** See *Georgia v. Brailsford*, 2 Dall. 402, (1792); *State v. Eggerman*, 81 Tex. 569, 16 S.W. 1067 (1891); *Hill County v. Atchison* (Tex.Civ.App.) 49 S.W. 141. **For suit when instrumentality was a party,** see *United States v. Clallam County* (W.D.Wash.) 283 F. 645 (1922) (affirmed 263 U.S. 341) (1923)<u>**, which was an action in which an agency or instrumentality of the United States defended.**</u> See, also, *Weeks, Secretary of War, et al. v. Goltra* 7 F.2d 838 (8th Cir. 1925).

There are corporate entities used by the United States as its instrumentalities and officers who prosecute and defend actions. Such actions would be on its behalf. The provision, 'except when on behalf of the United States,' **refers not to suits by the United States, but on its behalf by instrumentalities or officers,** the object being not to do the idle thing of collecting fees for the United States from its instrumentalities or officers, etc. The law must be construed, if possible, with a consistency to accomplish its purpose. *In re Ayers*, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887).

Case 3:19-cv-00099-SLG   Document 5   Filed 05/01/19   Page 88 of 104

## C.  "State of Alaska," being one of the several States with "Districts."

### a.  "Districts" established the Venue and "Offices" of "judicial Officers."

1.  The "**Third District**" was established for the Superior Court of the State of Alaska by the "**Legislature of the State of Alaska**" as evidenced by **Attachment 16—SLA 1959, ch. 50, § 16 ("Attach 16—SLA 1959 ch. 50, § 16").**

**2.**  The use of "In the Superior Court **of** the State of Alaska" and the "Third District" is evidenced by **Attachment 17—"In the Superior Court of the State of Alaska" and "Third District" ("Attach 17—"In the Superior Court of the State of Alaska" and "Third District")** consisting of **twenty-one separate documents** with "**In the Superior Court of the State of Alaska**" in the "**Third District**" of which many, many more example exist in the Archives of the Alaska Court System in Anchorage.

3.  Therein *flows a fortiori* that **Attach 17—"In the Superior Court of the State of Alaska" and "Third District" is in accord with Attach 16—SLA 1959 ch. 50, § 16** enacted by the "**Legislature of the State of Alaska.**"

4.  The Court shall take judicial Notice that Notice was given to **REIGH** on each Pleading filed by Gladden using "**Superior Court of the State of Alaska**" and the "**Third District**" which **RIEGH** ignored and refused to Address.

### b.  "STATE OF ALASKA" ("SOA") Used by REIGH that has NO "Office" Enacted by the "Legislature of the State of Alaska."

1..As evidenced by the ORDERS of **REIGH** in *David Gary Gladden v. JAMES HENRY BINGMAN, SR.*, 3DI-18-0002CI in Dillingham used exclusively "**IN THE**

SUPERIOR COURT **FOR** THE STATE OF ALASKA, **THIRD JUDICIAL DISTRICT AT DILLINGHAM"** are as follows:

### 1. ORDER One of REIGH.

1. Order One is evidenced by **Attachment 18—Order of REIGH of 10-26-18 ("Attach 18—Order One.")**

### 2. ORDER Two of REIGH

1. Order Two is evidenced by **Attachment 19—Order of REIGH of 10-26-18 ("Attach 19—Order Two").**

### 3. ORDER Three of REIGH

1. Order Three is evidenced by **Attachment 20—Order of REIGH of 09-04-18 ("Attach 20—Order Three").**

### 4. ORDER Four of REIGH

1. Order Four is evidenced by **Attachment 21—Order of REIGH of 10-08-18 ("Attach 20—Order Four").**

### 5. ORDER Five of REIGH

1. Two Orders Five is evidenced by **Attachment 22—Two Orders of REIGH of 10-24-18 ("Attach 22—Order Five").**

### 6. ORDER Six of REIGH

1. Order—Judgment Six is evidenced by **Attachment 23—Order/Judgment of REIGH of 01-22-19 ("Attach 23—Order Six").**

## 7.  ORDER Seven of REIGH

1. Order—Judgment Seven is evidenced by **Attachment 24—Order/Judgment of REIGH of 02-22-19 ("Attach 24—Order Seven").**

## 8.  ORDER Seven of REIGH

Writ of Assistance Eight is evidenced by **Attachment 25—Writ of Assistance of REIGH of 04-02-19 ("Attach 25—Order Seven").**

## 9.  Source of REIGH's "Third Judicial District" is the Alaska Bar Association Bylaws, Art. I, Section 6 "CREATED" the "Third Judicial District", not the "Legislature of the State of Alaska."

1. The Alaska Bar Association "**created**" the "**Third Judicial District**" as an "**administrative district**" as evidenced in **Attachment 26—State Bar Bylaws, Art. I ("Attach 26—State Bar Bylaws, Art. I"),** to wit:

> **Section 6. Administrative Districts.** For the purpose of the **administration** of the Act, these Bylaws, the Rules, and the Policies and Regulations promulgated under them, **four administrative districts, based in part upon the judicial districts existing in 1973, are created** as follows:
>
> (1) The First Judicial District of Alaska;
> (2) The Second and Fourth Judicial Districts of Alaska combined;
> (3) **The Third Judicial District of Alaska;** and
> (4) Any jurisdiction or geographical area outside the State.

2. And further the definition of "District" by the Alaska Bar Association is evidenced in the State Bylaws, Art. XIII (5) "District" means an **administrative district** of Alaska, as defined in Article I, Section 6 being **Attachment 27—Definition of "District" by the Alaska Bar ("Attach 27—Definition of "District" by the Alaska Bar").**

3. Is an unassailable **FACT** that the "**Alaska Bar Association**" "**created**" the

Complaint—Case: 3:19-cv-99          84

"Third Judicial District" as an "Administrative District" and not the "Legislature of the State of Alaska" or by the Constitution for the State of Alaska.

4.  It is an unassailable FACT that REIGH uses exclusively the this "Third Judicial District" in her Orders  - See Attachments 18-25.

5.  It is an unassailable FACT that there is not "Office" created by the Constitution for the State of Alaska or by the Legislature of the State of Alaska.

6.  It is an unassailable FACT that there is no "Office" established either *de jure* or *de facto* by Legislature of the State of Alaska or the Constitution for the State of Alaska for the "Third Judicial District."

7.  It is an unassailable FACT that "In the Superior Court for the State of Alaska" is NOT the same as "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA *flows a fortiori* that the Jurisdictional Heading by REIGH is "for" the Benefit or Representing the SOA wherein in the "Third Judicial District" there is no "office" created by the Legislature of the State of Alaska or the Constitution for the State of Alaska as that is evidenced that it was "created" by Alaska Bar Association.

### 10.  Venessa White (Superior Court Judge – Palmer) signed an Order Stating She was merely an "Undersign Jurist" When Pressed to Produce Her "Oath of Office as a Public Officer and her "Civil Commission

1.  Gladden in Case No. 3DI-12-36CI was pressing a Vanessa H. White, Superior Court Judge to produce here "Oath of Office as a public Officer" and a "Civil Commission" signed an Order on 08-13-12 "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA, THIRD JUDICIAL DISTRICT" that she was merely an

Complaint—Case: 3:19-cv-99          85

"undersigned jurist" the other issues were without "merit" being evidenced by **Attachment 28—White Admits Just an "undersigned jurist." ("Attach 28— Undersigned Jurist").**

2. **REIGH** has the same title "Superior Court Judge" therein *flows a fortiori* that **RIEGH** is also just an merely "undersigned jurist."

### 11. All of these Alleged Judges are merely Employees of the SOA

1. Gladden has included an example of these alleged "judges" who are all merely employees of the **SOA.** Amazingly they can get the 41 words of the "Oath" exactly correct. This is evidenced by **Attachment 29—Employee Affidavit of Vanessa H. White ("Attach 29—White Employee Affidavit").**

2. These are extremely difficult to obtain today as but many, many examples exist that Gladden has access to at the present time. **REIGH** would not provide a copy of her "Employee Affidavit" to Gladden but it does exist as required by ©AS § 39.05.045.

### 12. REIGH has a Rule 5 with Oath and a Rule 64 Filed in the Alaska Bar Association

1. **REIGH** has filed in the Alaska Bar Association a Rule 5 with Oath and a Rule 64 evidenced by **Attachment 30—Rule 5, Oath, Rule 64 of REIGH ("Attach 30— REIGH Rule 5, Oath, Rule 64").**

2. Upon examination of **Attach 30—REIGH Rule 5, Oath, Rule 64** establishes an unassailable FACT that **RIEGH** owes her total Allegiance and Duty to the Alaska Bar Association.

3. In **Attach 30—REIGH Rule 5, Oath, Rule 64** "Oath" states "I will support the Constitution of the United States and the Constitution of the State of Alaska" is a BOGUS worthless Oath as "support" does not rise to "support and defend" or "support and defend against all enemies foreign and domestic."

4. In **Attach 30—REIGH Rule 5, Oath, Rule 64** "Oath" states to **"improve both the law** and the administration of justice" wherein *flows a fortiori* that the Legislature of the State of Alaska enacts the Laws of Alaska and that **REIGH if she had an "Office" is to only interpret and enforce the Laws as written.**

### 13. Jacobs Corrected by T.E. Tomlins in 1811.

1. T.E. Tomlins in 1811 Corrected and Enlarged the English Common Law **"The LAW-DICTIONARY: explaining the Rise, Progress, and the Present State, of the English Law; Defining and Interpreting The Terms Or Words of Art; and Comprising Copious Information on the Subjects of LAW, TRADE, AND GOVERNMENT Originally Compiled by Giles Jacob; Corrected and Greatly Enlarged, by T.E. Tomlins, of the Inner Temple, Barrister at Law—The first American from the second London edition"** ("English Common Law—Tomlins") adapted to the several States in the Union of States.

2. The several States of the Union of States have adopted the English Common Law with modifications for America as a Rule of Law.

3. As evidenced in excerpt **Attachment 31—English Common Law—Tomlins Definition of Office (Attach 31—English Common Law—Office"),** with just a couple of examples of the **GREAT** importance of **"Office**,", to wit:

Complaint—Case: 3:19-cv-99      87

[Pg. 2] It is said, that the word *officium* principally implies a duty, and in the next place the charge of such duty; and that it is a rule, **that where one man hath to do with the another's affairs against his will, and without his leave,** that this is an Office, and he who is in it is an officer.

[Pg, 7] It is laid down in general, that if an **officer acts contrary to the nature and duty of his Office, or if he refused to act at all,** that in these cases the **Office is forfeited.**

[Pg, 8] **As to refusal, he says, that in all cases where an officer is bound upon request to exercise his Office, if he does not do it upon request, he forfeits it."**

[Pg. 9] All officers are punishable for corruption and oppressive proceedings, according to the nature of the offence, either by indictment, attachment, **action at the suit of the party injured, loss of their Office.**

4. Gladden filed in the ONLY remedy available in the Courts of Alaska requesting that **REIGH "act"** as a bona fide "public Officer" in the "Superior Court of Alaska" in the "Third District" even though **RIEGH is merely a Black Robed Alaska Bar Member with her ONLY allegiance to the Alaska Bar.**

5. Gladden gave **REIGH "Actual Notice" several times during the CON of the very first Complaint and subsequent filing in the "alleged" Bench Trial of REIGH's** "clear absence of all jurisdiction," but she just proceeded unchanged and did not recuse herself either.

**14. Oath of Office for all Public Officers of the of the several States.**

1. Jurisdiction arises under 1 Stat. 1 (1789) as the very first Statue of the United States **mandates** with this unambiguous statue limited to only **public Officers** of the "several States" to hold public Office as evidenced by this excerpt being "**all** executive and **judicial offers of the several States**" . . . "**before they proceed to execute their duties of their respective offices, take the foregoing oath** or affirmation" and "**shall**

**cause a record or certificate** thereof to be made . . . or they shall be directed to **record and certify the oath**" as evidenced **Attachment 31—1 Stat. 1—An Act to regulate the Time and manner of administering certain Oath" ("Attach 6—Oaths")**, to wit:

> And the members of the **several State** legislatures, and **all executive and judicial officers of the several States**, who shall be chosen or appointed after the said first day of August, shall, **before they proceed to execute the duties of their respective offices, take the foregoing oath or affirmation**, which shall be administered by the person or persons, who by the law of the State shall be authorized to administer the **oath of office;** and the person or persons so administering the oath hereby required to be taken, **shall cause a record or certificate thereof to be made**, in the same manner, as, **by the law of the State**, he or **they shall be directed to record or certify the oath of office**.

## VI. The "United States" is also the same as the "United States of America is a sovereign body politic."

1. has been extremely patient in his attempt to resolve these Constitutional violations (an overthrowing of our Republic by the United States and the **SOA** and the— **"United States of America is a sovereign body politic"** as evidenced in **public record** being **Attachment 33—Palmer Record District 311 "United States of America is a sovereign body politic." ("Attach 33—USA Sovereign Body Politic")** and more in the territorial boundaries of Alaska by the SOA regime but Gladden is filing this instant Case into the "District Court of the United States" that was not repealed in 1948 court changes, with the establishment of the United States District Court ("USDC") but at this point the "deep state" of the SOA and the "UNITED STATES OF AMERICA" a sovereign body politic is so entrenched that it will probably not self-correct or expose itself.

2. And further, Gladden has researched the United States Federal Court of Claims (a bona fide Article I Court that is the entry into the United States Federal Circuit Court

Complaint—Case: 3:19-cv-99          89

of Appeals being a bona fide Article III Section 1 and 2 Court of the United States), wherein the United States Federal Circuit Court of Appeals is the ONLY bona fide Article III Section 1 and 2 Court that was established in 96 Stat. 25-58 (1982) as evidenced in **Attachment 34—Senate Report 96-304 of August 3, 1979 ("Attach 34— Sen.Rpt. 96-304")** will be for the "**United States**" (See Rule 4 United States Federal Court of Claims Rules—Not the "UNITED STATES OF AMERICA" as used in the "District Courts of the United States" since the passage of the Seventeenth Amendment in 1913 and in the new USDCs of 1948 established and codified in 28 U.S.C. § 132 to present); and further; "The Court of Appeals for the Federal Circuit differs from other Federal courts of appeals, however in that **its jurisdiction is defined in terms of subject matter rather than geography.**" See Attach 34—Sen.Rpt. 96-304, pgs. 825-845, **especially 832-839.**

3. And further the SOA and "UNITED STATES OF AMERICA a sovereign body politic a/k/a/ "United States" has perpetuated a FRAUD upon the "citizens of Alaska" while using the Social Security Act of 1935 49 Stat. 620-648—"[E]very **employer** (as defined in Section 907) shall pay for each calendar year an **excise tax, with respect to having individuals in his employ . . .**" (pg. 639). As evidenced in **Attachment 35— Legislative History of Social Security Act of 1935 in 49 Stat. 620-648 in Senate Report No. 628, May 13, 1935 ("Attach 35—Sen.Rpt. No. 628"), pg. 25** "(1) an **income tax** upon employees [retirement], and (2) an **excise tax** upon employers based upon **wages** [26 U.S.C. § 3402 [Subtitle C]] paid." * * * (pg. 46) "Section 901: an

annual <u>excise</u> tax is imposed on **each employer** (as defined in sec. 907) **on the privilege** of having <u>individuals</u> in his employ."

    **4.** Then to get the "**individuals**" being "citizens of the United States" defined in 5 U.S.C. § 552a(a)(2) to complete a withholding certificate known was "**W4**" to volunteer for this CON styled "**Election of the employer,**" which is found 26 U.S.C. 3402 [chapter 24. **Collection of Income tax at Source on <u>Wages</u>**] on "<u>wages</u>" in **Subtitle C** that precludes any Notice of Deficiencies for **<u>Subtitle C</u>** and all of Title 26, which is found in **26 U.S.C. § 6211—Definition of Deficiency**; and, **26 U.S.C. § 6212—Notice of Deficiency.** Therein to conclusively preclude Title 26 for any and all withholding the "term" definition "means" is in "withholding agents" that are required to **<u>withhold for any tax</u>** is **<u>only for Subtitle A</u>** evidenced in 26 U.S.C. § 7701(a)(16)—**"Withholding agent.--The term "withholding agent" <u>means</u> any <u>person required to deduct and withhold any tax</u> under the provisions of section 1441 [Subtitle A—Non Resident Aliens], section 1442 [Subtitle A—Foreign Corporations], section 1443 [Subtitle A—Foreign Organizations], or section 1461 [Subtitle A Hold Harmless Clause].** That the returns are limited to only **Subtitle A** is found in 26 U.S.C. § 6012—Person required to make returns of **income "(a) General Rule.—Returns with respect to income tax under <u>subtitle A shall be made by the following</u>:"**

    5. And further evidence of **Returns** is only for **Subtitle A** is found in **26 U.S.C. § 6011—General requirement of return, statement, or list**—(e)(3)(C) "**(C) Individual income tax return.**--For purposes of this paragraph, the term **"individual income tax return" <u>means</u> any return of the tax <u>imposed by Subtitle A on individuals</u>,** estates, or

trusts."

6. Then the **SOA** and "UNITED STATES OF AMERICA" CON couples this with the Buck Act in 54 Stat. 1059-1061 of 1940, pg. 1060 "The term **"income tax"** means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts" coupled with the term definition of **"Federal Area** means . . . which is located within the **exterior boundaries of any State shall be deemed** to be a Federal Area located within such State."

7. Then the **SOA** and "UNITED STATES OF AMERICA" to bypass the holding of term definition of **"income"** for **"Federal Income Tax"** as held in *Merchants' Loan & Trust Co. v. Smietanka*, 255 U.S. 509 (1921) "profit gained through sale or conversion of capital assets" within the meaning of The Corporation Excise Tax of 1909 (36 Stat. 11, 112) also precluding the Sixteenth Amendment **has receded** as evidenced in *United States v. City and County of Denver*, 573 F.Supp. 686, 687 (D.Col. 1983) **"4 U.S.C. § 106(a).   As to "income taxes" [not "Federal Income Tax"], the United States, through the Buck Act, has receded jurisdiction to the <u>states</u> and <u>other local taxing authorities</u>."** Codification of the Buck Act is found in **4 U.S.C. 104-110** and **Consent to taxation of Federal Employees in 4 U.S.C. § 111**, which of course is Howell, Gast and Berry precluding Gladden .

8. And further evidence of **<u>retrocession to the states</u>** is found in *Annexations of Military Reservation by Political Subdivisions*, 11 Mil. L. Rev. 99, 103 (1961) to wit:

> A **retrocession statute** of major importance was enacted by Congress in 1940. This law, commonly known as the **"<u>Buck Act</u>"**, **<u>retroceded</u> to the states** and to their **<u>duly constituted taxing authorities jurisdiction to levy</u>**

**and collect sales, use, and income taxes within federal areas**. The federal government and its instrumentalities were exempted from the operation of the Act.

9.    This **retrocession statue** is found on **"Federal Areas"** for "federal employment" is codified in **5 U.S.C. § 5517—Withholding State Income Taxes** (a) ""[w]ho are **residents of the State** with which the **agreement** is made" for "whose **regular place of Federal employment** is within the **State with which the agreement** is made."

10.    Then in this **CON,** money collected is donated as a **"gift or bequest"** to the United States as evidenced in **31 U.S.C. § 321(d)(2) "For purposes of the Federal income, estate, and gift taxes, property accepted under paragraph (1) shall be considered as a gift or bequest to or for the use of the United States."**

11.    This **Complex CON is being perpetuated upon Gladden by the SOA** and the **"UNITED STATES OF AMERICA" by Star Chamber tactics, which Gladden finds himself entangled within this WEB of FRAUD and DECEIT using only the "civil rights" of "citizens of the United States" precluding Gladden s's "political rights" for "citizens of Alaska" with Alaska being one of the several States.** This overview demonstrates the extremely difficult task to document the CON by the "UNITED STATES OF AMERICA" in conjunction with the **SOA as a "State of the United States"** as found in the NVRA.

### FIRST CAUSE OF ACTION

The Plaintiff repleads the facts and allegations contained in the Previous Sections and all subsections that **REIGH** did proceed in the Instant Case of *David Gary Gladden*

Complaint—Case: 3:19-cv-99              93

*v. JAMES HENRY BINGMAN, SR.*, 3DI-18-0002CI ("Superior Court of Alaska" "Third District" Dillingham, Alaska) with a "clear absence of all jurisdiction,"

## SECOND CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the First Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative District knows as "Third Judicial District" instead of the "Third District" established by the Legislature of the State of Alaska in 1959.

## THIRD CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Second Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court knows as "IN THE SUPERIOR COURT FOR THE STATE OF ALASKA" instead of the "Superior Court of the State of Alaska" established by the Legislature of the State of Alaska in 1959.

## FOURTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Third Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court as merely an "undersigned jurist.

## FIFTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Fourth Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court with No "Oath of Office as a public Officer" in the public record.

Complaint—Case: 3:19-cv-99        94

## SIXTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Fifth Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court having never been appointed by the Governor of Alaska with a bona fide "Civil Commission" as mandated by both statute of Alaska and the Constitution of Alaska.

## SEVENTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Sixth Cause of Actions that **REIGH** did preside of an Alaska Bar Administrative Court being "Actual Notice" more that once, ignoring all "Actual Notices."

## EIGHTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Seventh Cause of Actions that **REIGH** is not a *de jure* Officer of any of the several States.

## NINTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Eighth Cause of Actions that **REIGH** is not a *de facto* Officer of any of the several States.

## TENTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Ninth Cause of Actions that **REIGH** has no "Office" wherein she is not a *de jure Officer or a de facto officer*.

## ELEVENTH CAUSE OF ACTION

The Plaintiff repleads the facts and allegations of the Tenth Cause of Actions that **REIGH** has no "Office" wherein she is not a *de jure Officer or a de facto officer* that is knowingly and intentionally operating in "clear absence of all jurisdiction."

Complaint—Case: 3:19-cv-99                95

## DAMAGES

**WHEREFORE,** the Plaintiff seeks damages as follows from **REIGH for her proceeding forward against with a "clear absence of all jurisdiction" in Case 3DI-18-00002CI** in Dillingham, Alaska and is neither a *de jure Officer or a de facto officer* as there is not "office" established by the Legislature of the State of Alaska or the Constitution <u>for</u> the State of Alaska:

A) Actual damages of $22,404.60 to date minus interest and other fees.

B) General damages in the amount to be determined later; and,

C) Compensatory Damages in the amount to be determined later; and,

D) Special Damages in the form of filing fees, mailing, and process fees; and,

E) Punitive Damages in the sum of two million dollars and to be adjusted by jury of my peers being "citizens of Alaska" or by a bona fide Article III Judge of the United States" if a Bench Trial for the intentional, willful, and malicious actions against Gladden in "clearly absence of all jurisdiction" and damage to the reputation of Gladden future work on Airplanes by **REIGH**; and,

F) All other just relief as the Court may deem appropriate.

My Hand,

David Gary Gladden